## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER CHANDLER,** | |
| **Plaintiff,** | **No.1:18-cv-02136-APM** |
| v | **Hon. Amit P. Mehta** |
| **DONALD BERLIN,** *et al.*, | |
| **Defendants.** | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION TO STRIKE, SEAL, AND ORDER PLAINTIFF TO FILE AN AMENDED COMPLAINT

Moving defendants respectfully submit the following Reply in Support of their Emergency Motion to Strike, Seal, and Order Plaintiff to Amend the Complaint ("Motion"). (Dkt. 4).

## INTRODUCTION

This case is about Plaintiff Christopher Chandler, a foreign billionaire, attempting to intimidate a small businessman by threatening him, his livelihood, and his wife into providing a false retraction for Mr. Chandler to use in the United Kingdom. The intimidation began on September 11, 2018, when an unidentified individual abruptly shoved the Blackmail Letter and attachments, with Mr. Berlin's mugshot on top, into Mrs. Berlin's hands at her place of business – Compassionate Beginnings, LLC. He directed her to "give this to your husband and have him call us." Later, when the documents were delivered to Mr. Berlin and his counsel with a demand that he sign a false retraction in 48 hours, Mr. Berlin requested a week to respond. Plaintiff denied his request, allowing only an additional 24 hours, until 4 p.m. on

Friday, September 14th, for Mr. Berlin to sign the retraction or suffer the consequences, thus depriving him and counsel of sufficient time to investigate the allegations in the Letter and the Complaint.

Among other things, the Blackmail Letter demanded Mr. Berlin sign a false retraction, an unspecified affidavit, and never speak of these matters without Plaintiff's counsel's permission. (Opposition Ex. B at 2). Undersigned counsel explained that the retraction could not be signed because it falsely claimed that Mr. Berlin had personal knowledge of the statements therein. Counsel offered a truthful declaration, (Opposition Ex. C), that Plaintiff rejected it out of hand.

The Complaint is the next step in Plaintiff's effort to use this Court to intimidate Mr. Berlin and harm his and his wife's businesses. As discussed in Defendant's Motion and this Reply, Rule 12(f) does not permit Plaintiff to fill a complaint with irrelevant and scandalous allegations. Furthermore, because Plaintiff intends to use the Complaint for an improper purpose – releasing the allegations to the media – those allegations should not only be stricken but the original complaint and Plaintiff's Opposition should be sealed. *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980).

## SUMMARY OF ARGUMENT

This Reply sets out four arguments in response to Plaintiff's Opposition. (Dkt. 12). First, Motions to Strike are not "time wasters." To the contrary, the Judges of this Court routinely grant Rule 12(f) motions where, as here, the Plaintiff's complaint alleges immaterial, impertinent, and scandalous matters. Second, Plaintiff's justifications for making the improper allegations lack legal or factual support. Third, Plaintiff's statement that only false allegations

are scandalous is not true. Fourth, Plaintiff has also misrepresented the law applicable to sealing documents that might otherwise be publicly available.

Because Plaintiff has made his improper allegations to threaten Defendants and Mrs. Berlin with personal and professional damage based on libelous and scandalous publicity, Supreme Court and D.C. Circuit authority require the Complaint and Opposition to be sealed.

## I.   THIS MOTION IS ANYTHING BUT A "TIME WASTER."

Citing *Cobell v. Norton,* 224 F.R.D. 266, 282 (D.D.C. 2004), plaintiff derides Rule 12(f) motions as "time wasters." (Dkt. 12 at 1).[1] Although Judge Lamberth in *Cobell* quoted that description of Rule 12(f) motions from Moore's Federal Practice, he did not summarily deny the Rule 12(f) motion before him as a waste of time. As shown in Defendants' memorandum in support of this motion, (Dkt. 4-1), Judges of this Court, including Judge Lamberth, do not summarily deny Rule 12(f) motions on that ground; on the contrary, they routinely exercise the discretion granted by Rule 12(f) to eliminate unnecessary and prejudicial material from pleadings if those pleadings satisfy Rule 12(f)'s requirements. *Williams v. Chu,* 2010 U.S. Dist. LEXIS 152749 at *7-8 (D.D.C. 9/30/2010); *Judicial Watch v. United States Department of Commerce,* 224 F.R.D. 261, 264 (D.D.C. 2004) (Lamberth, J.) (opinion immediately preceding *Cobell* in Volume 224 of Federal Rules Decisions); *Pigford v. Veneman,* 215 F.R.D. 2, 4-6 (D.D.C. 2003); *Wiggins v. Philip Morris, Inc.,* 853 F. Supp. 457, 458 (D.D.C. 1994) (Lamberth, J.). In fact, *Alexander v. FBI,* 186 F.R.D. 21 (D.D.C. 1998), cited by plaintiff, is a decision by Judge Lamberth granting a Rule 12(f) motion, not denying the motion as a "time waster." *Id.* at 53.[2]

---

[1] Plaintiff incorrectly cites *Cobell* as a D.C. Circuit case.

[2] Plaintiff also incorrectly cites *Alexander* as a D.C. Circuit case. Moreover, Plaintiff creates the misleading impression that the *Cobell* decision was "citing" *Alexander* for the proposition

Rule 12(f) motions are not "time wasters;" quite the opposite, their purpose is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citation omitted). That is the result Defendants seek here. Granting the Rule 12(f) motion will eliminate the burden and expense of discovery and trial about unrelated events occurring up to 34 years ago, and at least 9 years before or 11 years after Mr. Berlin's preparation of the Limited Report.

## II.   PLAINTIFF'S ALLEGATIONS ARE "TIME WASTERS;" THE COURT WILL BE REQUIRED TO DECIDE MATTERS UNRELATED TO THE MERITS OF THIS CASE THAT OCCURRED YEARS AGO AND YEARS BEFORE AND AFTER DEFENDANTS' ALLEGED CONDUCT.

Plaintiff waits until the final pages of his Memorandum in Opposition before even attempting to demonstrate the materiality of the allegations that are the subject of this motion. That effort is unsuccessful. His primary argument is that the challenged allegations "are highly probative of the Defendants' state of mind and standard of care" when the Limited Report was prepared. (Dkt. 12 at 8.)  But why?  Plaintiff grudgingly concedes that "fault in publishing is measured at the time of publication," (*id.* at 9), but offers no argument, no authority, and no facts to support his claim that events far removed in time from the preparation of the Limited Report have any bearing on Mr. Berlin's state of mind or standard of care when he wrote the Limited Report in 2003.

How are never-proven **allegations** in a civil case about Mr. Berlin's obtaining data in 1984 on behalf of Chicago's Mayor and Corporation Counsel, in defense of a reverse-

---

that Rule 12(f) motions are "time wasters." (Dkt. 12 at 1). *Cobell* cites 2 Moore's Federal Practice – Civil, § 12.37(3), not *Alexander,* for that proposition.  In the current version of Moore's, that phrase does not appear anywhere in §12.37, the section that discusses Rule 12(f).

discrimination case, probative of Mr. Berlin's standard of care when he prepared the Limited Report 19 years later? Why do his actions in 1994 (acquiring a credit report for the former Deputy Superintendent and Chief of Detectives of the Chicago Police Department who was involved, unbeknownst to Mr. Berlin, in illegal activities) have anything to do with his state of mind in 2003? Mr. Berlin was not even charged with a crime, let alone convicted, as the result of those actions.[3]

Eleven years after preparation of the Limited Report, Mr. Berlin's misdemeanor conviction (for which he received a suspended sentence, a $500 fine, and an order of restitution in the amount of $35) demonstrates nothing about what he was thinking or how carefully he prepared the Limited Report.[4] And how does Mr. Berlin's present-day lack of a "social media presence," combined with the absence of any mention of ICI in his wife's Facebook profile, (Dkt. 12 at 4), tell us anything about the preparation of the Limited Report more than 15 years ago?[5]  Plaintiff offers nothing more than his *ipse dixit* in response.

To be sure, District of Columbia law says that a jury may consider all the facts and circumstances when deciding whether a defendant had the requisite mental state, but they must be "facts and circumstances **surrounding the case.**" *Washington Medical Center, Inc. v. Holle,* 573 A2d 1269, 1284 (D.C. 1990) (emphasis added.) Far from focusing the jury's attention on "circumstances surrounding the case," plaintiff's allegations would result in discovery

---

[3] And why does that one 1994 incident justify the repeated phrase "Mafia connected?"

[4] In his Memorandum, Plaintiff concedes that Mr. Berlin received a suspended sentence, Dkt. 12 at 6, although that concession is missing from the body of the Complaint, which simply refers to a jail sentence.  (Dkt. 1 at ¶ 33).

[5] Persons like Mr. Berlin who maintain high level security clearances typically have little or no social media presence. As Plaintiff's investigation undoubtedly found, Mr. Berlin has no Linked In, Instagram, Facebook or other social media footprint.

about, and the jury's consideration of: 34-year-old allegations from a civil suit about researching several Chicago police officers, even though those allegations were never proven; the 24-year-old decisions of the FBI and the United States Attorney not to even call Mr. Berlin as a witness in connection with the jewelry matter, much less charge him with any crime; the contents of Mrs. Berlin's Facebook page and its connections to the events of 2003 when the Limited Report was prepared; and Mr. Berlin's misdemeanor conviction, which occurred 11 years after his preparation of the Limited Report.  All this in the name of denying Defendants' motion as a "time waster."

Alternatively, plaintiff claims that his allegations regarding Mr. Berlin's so-called "criminal activities" are relevant to his credibility as a witness. The only criminal activity alleged in the Complaint is Mr. Berlin's single misdemeanor conviction in 2014. The 1984 research regarding police officers was the subject of a civil, not a criminal, claim against Mr. Berlin and there never was a finding of liability. Also, Mr. Berlin was never accused of any crime in relation to the 1994 robbery allegations.

This is not the time to argue a motion *in limine* directed at the admissibility of Mr. Berlin's misdemeanor conviction if he testifies at trial.  At this juncture, it is sufficient to note that pleading impeachment evidence is improper in a complaint, which is limited to a "short and plain statement of the claim," not a recitation of matters that might be used to attempt to impeach a witness if that witness testifies. Rule 8(a)(2). Courts have struck allegations about a defendant's criminal record from complaints for that reason.

For example, in *National Savings & Loan Assoc. v. St. Paul Fire & Marine Ins. Co.*, 84 F.R.D. 425 (E.D. Wis. 1979), the court granted a motion to strike allegations about the disposition of criminal charges against some of the defendants. The court recognized that the

allegations might be admissible for impeachment purposes, but struck the allegations as improper evidentiary pleadings under Rule 8. *Id.* at 428.

In *Morse v. Weingarten*, 777 F. Supp. 312 (S.D.N.Y. 1991), a securities fraud case, one of the defendants was Michael Milken, the famous "junk bond king" who had been convicted of securities law violations. Plaintiffs in a civil securities fraud case included allegations about Milken's convictions in their complaint, although their fraud claims apparently arose out of different transactions than the ones forming the basis for the criminal convictions. The court granted a Rule 12(f) motion to strike the allegations about Milken's convictions, finding "no reason to allow those references to remain in the complaint." *Id.* at 319.

> The complaint's reference to Milken's criminal conviction and his income level are immaterial and impertinent to this case, and may be "scandalous." Neither Milken's income nor the outcome of his celebrated criminal prosecution bears remotely on the merits of this case. Reference to those matters serves no purpose except to inflame the reader.

*Id.*

The authorities cited by plaintiff on this point do not hold otherwise. The two cases cited in the Reply – *Gordon v. United States,* 383 F.2d 936 (D.C. Cir. 1967) and *United States v. Lewis,* 626 F.2d 940 (D.C. Cir. 1980) – are both criminal cases discussing the **admissibility at trial** of a testifying defendant's prior convictions. Those decisions say nothing about the whether it is appropriate to include allegations about a party's prior misdemeanor conviction in a **pleading in a civil case.**

Plaintiff's allegations about spelling and grammar fare no better. Citing *Pearce v. E.F. Hutton Grp., Inc.* 664 F. Supp. 1490, 1510 (D.D.C. 1987), he claims that litigating spelling and grammar issues could lead to evidence of negligence, which can be an element of a defamation

claim. (Dkt. 12 at 8.)  That argument is unavailing for two reasons: First, Plaintiff does not dispute that he is a public figure and therefore will not succeed in this case merely by proving negligence.[6] Instead, he must prove that Defendants either knew that statements in the Limited Report were false or were reckless about the truth of those statements. *See, e.g., Jankovic v. Int'l Crisis Grp.,* 822 F.3d 576, 584 (D.C. Cir. 2016). Plaintiff recognizes that he bears this higher burden. (Dkt. 1, ¶¶ 68-69, 83-84). Evidence of negligence, therefore, is insufficient, and Plaintiff cites no authority to show that spelling and grammar have any bearing on this constitutional issue.

Second, in any event, Rule 8(a)(2) requires a "short and plain statement of the claim," not the pleading of evidence, and courts have relied on Rule 12(f) in conjunction with Rule 8(a)(2) to strike allegations of mere evidence. *E.g., Nextel of New York, Inc. v. City of Mount Vernon,* 361 F. Supp. 2d 336, 339-40 (S.D.N.Y. 2005) (striking evidentiary items such as expert reports and exhibits from complaint); *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 339 (E.D. Pa. 1994) (striking allegations about the anticipated testimony of plaintiff's witnesses; "courts usually delete evidentiary matters when they are pled by plaintiff in the complaint") (citing *Windsor v. A Federal Executive Agency,* 614 F. Supp. 1255, 1257 (M.D. Tenn. 1983) *aff'd,* 767 F.2d 923 (6th Cir. 1985); *National Savings & Loan Assoc. v. St. Paul Fire & Marine Ins. Co.*, *supra,* 84 F.R.D. at 428 ("Evidentiary pleadings, however, are still considered improper").

---

[6] The voluminous news articles incorporated into the Complaint (Dkt. 1 at Ex. 10) demonstrate conclusively that plaintiff is a public figure.

## III.   CONTRARY TO PLAINTIFF'S ASSERTION, AN ALLEGATION NEED NOT BE PROVEN FALSE IN ORDER TO BE STRICKEN AS SCANDALOUS.

Defendants' motion shows that an allegation is "scandalous" within the meaning of Rule 12(f) if it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," or casts "a cruelly derogatory light on a party or other person." (Dkt. 4-1 at 10) (citations and internal quotation marks omitted). Plaintiff does not dispute these standards, nor does he argue with Defendants' showing that the complaint's allegations squarely fit those criteria. His sole argument is that allegations can be scandalous only if they lack evidentiary support. (Dkt. 12 at 7).

Plaintiff relies exclusively on *Cobell v. Norton,* 224 F.R.D. 266, 282 (D.D.C. 2004), and not on the language of Rule 12(f), for that proposition. When ruling on Rule 12(f) motions, courts sometimes discuss whether the allegations are true, *see Cobell*, 224 F.R.D. at 282 and cases cited, but this does not mean that only false or unsupported allegations may be stricken as scandalous. Such a rule would defeat the purpose of Rule 12(f), which is to avoid the waste of time and resources devoted to "litigating spurious issues," *Whittlestone,* 618 F.3d at 973, such as whether unproven 30-year-old allegations are true.

Decisions cited both in Defendants' motion and this Reply have stricken allegations that meet the above definitions of "scandalous" without even considering whether those allegations are true. *Williams v. Chu,* 2010 U.S. Dist. LEXIS 152749 at *7-8 (D.D.C. 9/30/2010) (striking allegations about criminal conduct of plaintiff's colleague as scandalous because they "have the potential to unnecessarily do harm to the reputation of this individual;" court did not discuss whether or not the allegations had evidentiary support); *Wiggins v. Philip Morris, Inc.,* 853 F. Supp. 457, 458 (D.D.C. 1994) (allegations about a fellow employee's drug use were

stricken without any determination of evidentiary support); *Morse*, 777 F. Supp. 312 (true allegations about Michael Milken's criminal convictions stricken).

Moreover, as should be obvious from both Defendants' motion (Dkt 4-1 at 6-7) and this Reply, Defendants vigorously dispute the evidentiary support for plaintiff's claims of "mafia connected" activity in 1994, improper research regarding police officers in 1984, and any relationship between either Mr. Berlin's misdemeanor conviction or Mrs. Berlin's Facebook page and the events of 15 years ago concerning the Limited Report. Plaintiff has identified no legitimate purpose for those allegations, which "unnecessarily reflect[] on the moral character of [Mr. and Mrs. Berlin], . . . [use] repulsive language that detracts from the dignity of the court," and cast "a cruelly derogatory light" on Mr. and Mrs. Berlin. They are scandalous and should be stricken.

## IV.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO SEAL THE IDENTIFIED RECORDS; PLAINTIFF MISREPRESENTS PURPORTED AUTHORITY TO THE CONTRARY.

Plaintiff's statement that that "[d]ocuments that are already publicly available do not qualify for sealing," (Dkt. 12 at 7), is false. Every case on which Plaintiff relies states only that public availability is a factor to consider. *See U.S. ex rel. Schweizer v. Oce, N.V.*, 577 F. Supp. 2d 169, 173 (D.D.C. 2008) ("the extent certain sealed materials are already in the public domain, this factor favors unsealing those materials"); *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 58–59 (D.D.C. 2009) ("The fact that a document was accessible to the public prior to being sealed 'may weigh in favor of subsequent access.'") (citing *Hubbard*); *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 936 (D.D.C. 2003) (citing *Hubbard*, noting that documents already

available to the public are entitled to "less protection").[7] That a document may be publicly available is not dispositive of or even of exceptional importance to the decision whether to seal a court record.[8]

Furthermore, Plaintiff's argument ignores that allegations of the Complaint go well beyond the scope and substance of the documents to which he refers. For instance, the repeated allegation that Mr. Berlin is "mafia-connected" based on one newspaper article pertaining to a matter in which Mr. Berlin was never formally accused of wrongdoing would be libelous if not judicially privileged. Pursuant to the correct authority, Plaintiff's attempt to blackmail Mr. Berlin, which Plaintiff does not deny, and Plaintiff's explicit threat to use the disputed evidence to publicly damage him, his career, and his family are reason enough to grant the within motion.[9]

---

[7] Plaintiff's lack of candor extends to the two Fourth Circuit opinions he cites. Those cases do not inform the issues before this Court. In *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004), the state sought to protect from the press information identifying suspects and evidence in an ongoing criminal investigation. **However, the state police had already identified both the suspects and the evidence in a public memorandum.** Accordingly, the court found the Commonwealth had failed to sustain its burden of showing a compelling interest sufficient to overcome the plaintiff's First Amendment right to the documents. In *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014), another First Amendment case, the court never even discussed documents that had previously been made public.

[8] The right of public access to judicial documents may derive from one of two sources: the First Amendment and common-law. While a Constitutional right of access yields only to a compelling government interest, the common law presumption is more easily overcome and is "best left to the sound discretion of the trial court…." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978). Plaintiff makes only a common-law, not a Constitutional, argument.

[9] Plaintiff's assertion that his counsel's threats were intended to "mitigate" his damages is not credible. Informing Mr. Berlin's past and present clients of plaintiff's baseless claims does

Pretrial judicial documents are routinely sealed, either temporarily or permanently, "to protect private as well as public interests…" *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980). Indeed, judges often publish standard protective orders permitting litigants to designate pretrial documents as "confidential" and requiring their filing under seal.[10]

Where the parties dispute sealing documents, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978). The Court further stated:

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. **Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.** For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case.… **Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption** … or as sources of business information that might harm a litigant's competitive standing.

*Id.* at 598 (internal quotations and citations omitted, emphasis added). *See Hubbard*, 650 F.2d at 315 (same); *In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 613 (D.C. Cir. 1981) (same). **In the instant case, Plaintiff has expressly stated his intention to use the court filings for**

---

nothing to mitigate Plaintiff's alleged damages. Plaintiff asserts damage to his reputation but identifies no past or present client of Mr. Berlin's who has any knowledge of Plaintiff or his reputation.

[10] *See, e.g.,* Standard Protective Order of Judge Andrew Guilford, United States District Court for the Central District of California. (Ex. 1).

**improper purposes – to "leverage [counsel's] media contacts" to damage Mr. Berlin, his business, and his family. This is reason enough to seal the stricken statements and exhibits.** Plaintiff's allegations are expressly intended to "promote public scandal" and "serve as reservoirs of libelous statements for press consumption" and are properly stricken. *Nixon*, 435 U.S. at 598.

The D.C. Circuit in *Hubbard* states the proper considerations to determine whether sealing a pretrial document is appropriate. 650 F.2d at 317-324. The *Hubbard* factors do not outweigh Plaintiff's improper purposes or otherwise favor leaving the Complaint unsealed. First, there is no compelling need for public access to the original complaint and exhibits. Second, although some of the exhibits are in the public domain, such as the decision in *Maloney* denying the defendants' motion to dismiss, they have been misrepresented by the Plaintiff in the Complaint. Third, Defendants have objected to disclosure. Fourth, the strength of Mr. Berlin's property and privacy interests are significant. The material is highly inflammatory, consists of "evidence" of dubious probative value, and its publication would cause Mr. Berlin and his wife irreparable harm. Fifth, as noted above, the material was introduced for patently improper purposes. Lastly, Plaintiff will not be prejudiced by sealing the disputed material – he can attempt to introduce the evidence if the case goes to trial.

*Hubbard* also looks to particularized interests that may affect public access to court documents. 650 F.2d at 323-326. Here those interests strongly favor sealing. As noted at the outset of this Reply, the allegations in the Complaint are expressly intended to "serve as reservoirs of libelous statements for press consumption" and should be sealed. *Id.* at 315 (quoting *Nixon*, 435 U.S. at 598).

## **<u>CONCLUSION</u>**

Accordingly, we respectfully ask the Court to grant Defendants' Motion to Strike, order Plaintiff to file an amended complaint and seal the Complaint. Because Plaintiff's Opposition attaches the Complaint, we also request the Court to order that Plaintiff's Opposition be sealed. Defendants respectfully request oral argument, whether by telephone or in person.

October 8, 2018                                    Respectfully submitted,

**/s/ Steven M. Oster**
John P. Dean
D.C. Bar No. 362904
Steven M. Oster
D.C. Bar No. 376030

**OSTER LAW FIRM**
1320 19th Street N.W., Suite 601
Washington, D.C. 20036
(202) 596-5291 (p)
(202) 747-5862 (f)
steve@osterlawfirm.com

*Counsel to Moving Defendants*

## CERTIFICATE OF SERVICE

I certify that I filed the attached document using the Court's electronic filing system, thereby serving Plaintiff's counsel of record.

October 8, 2018                                   **/s/ Steven M. Oster**
                                                 Steven M. Oster

EXHIBIT ONE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE ANDREW J. GUILFORD**

**STANDING PROTECTIVE ORDER**

1. **PURPOSE AND LIMITS OF THIS ORDER**

Discovery in this action is likely to involve confidential, proprietary, or private information requiring special protection from public disclosure and from use for any purpose other than this litigation. Thus, the Court enters this Protective Order. This Order does not confer blanket protections on all disclosures or responses to discovery, and the protection it gives from public disclosure and use extends only to the specific material entitled to confidential treatment under the applicable legal principles. This Order does not automatically authorize the filing under seal of material designated under this Order. Instead, the parties must comply with L.R. 79-5.1 if they seek to file anything under seal. This Order does not govern the use at trial of material designated under this Order.

1

## 2.   DESIGNATING PROTECTED MATERIAL

**2.1.   Over-Designation Prohibited.** Any party or non-party who designates information or items for protection under this Order as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE" (a "designator") must only designate specific material that qualifies under the appropriate standards. To the extent practicable, only those parts of documents, items, or oral or written communications that require protection shall be designated. Designations with a higher confidentiality level when a lower level would suffice are prohibited. Mass, indiscriminate, or routinized designations are prohibited. Unjustified designations expose the designator to sanctions, including the Court's striking all confidentiality designations made by that designator. Designation under this Order is allowed only if the designation is necessary to protect material that, if disclosed to persons not authorized to view it, would cause competitive or other recognized harm. Material may not be designated if it has been made public, or if designation is otherwise unnecessary to protect a secrecy interest. If a designator learns that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that designator must promptly notify all parties that it is withdrawing the mistaken designation.

**2.2.   Manner and Timing of Designations.** Designation under this Order requires the designator to affix the applicable legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY," or "HIGHLY CONFIDENTIAL - SOURCE CODE") to each page that contains protected material. For testimony given in deposition or other proceeding, the designator shall specify all protected testimony and the level of protection being asserted. It may make that designation during the deposition or proceeding, or may invoke, on the record or by written notice to all parties on or before the next business day, a right to have up to 21 days from the deposition or proceeding to make its designation.

**2.2.1**   A party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has identified which material it would like copied and produced. During the inspection and before the designation, all material shall be treated as HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY. After the inspecting party has identified the documents it wants copied and produced, the producing party must designate the documents, or portions thereof, that qualify for protection under this Order.

**2.2.2**   Parties shall give advance notice if they expect a deposition or other proceeding to include designated material so that the other parties can ensure that only authorized individuals are present at those proceedings when such material is disclosed or used. The use of a document as an exhibit at a deposition shall not in any way affect its designation. Transcripts containing designated material shall have a legend on the title page noting the presence of designated material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated, and the level of protection being asserted. The designator shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of the 21-day period for designation shall be treated during that period as if it had been designated HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY unless otherwise agreed. After the expiration of the 21-day period, the transcript shall be treated only as actually designated.

**2.3.   Inadvertent Failures to Designate.** An inadvertent failure to designate does not, standing alone, waive protection under this Order. Upon timely assertion or correction of a designation, all recipients must make reasonable efforts to ensure that the material is treated according to this Order.

**3.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

All challenges to confidentiality designations shall proceed under L.R. 37-1 through L.R. 37-4.

**4.    ACCESS TO DESIGNATED MATERIAL**

**4.1.    Basic Principles.** A receiving party may use designated material only for this litigation. Designated material may be disclosed only to the categories of persons and under the conditions described in this Order.

**4.2.    Disclosure of CONFIDENTIAL Material Without Further Approval.** Unless otherwise ordered by the Court or permitted in writing by the designator, a receiving party may disclose any material designated CONFIDENTIAL only to:

**4.2.1**  The receiving party's outside counsel of record in this action and employees of outside counsel of record to whom disclosure is reasonably necessary;

**4.2.2**  The officers, directors, and employees of the receiving party to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.3**  Experts retained by the receiving party's outside counsel of record to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.4**  The Court and its personnel;

**4.2.5**  Outside court reporters and their staff, professional jury or trial consultants, and professional vendors to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A);

**4.2.6**  During their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the Agreement to Be Bound (Exhibit A); and

**4.2.7**  The author or recipient of a document containing the material, or a custodian or other person who otherwise possessed or knew the information.

**4.3.**   Disclosure of HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY and HIGHLY CONFIDENTIAL - SOURCE CODE Material Without **Further Approval.** Unless permitted in writing by the designator, a receiving party may disclose material designated HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL - SOURCE CODE without further approval only to:

**4.3.1**  The receiving party's outside counsel of record in this action and employees of outside counsel of record to whom it is reasonably necessary to disclose the information;

**4.3.2**  The Court and its personnel;

**4.3.3**  Outside court reporters and their staff, professional jury or trial consultants, and professional vendors to whom disclosure is reasonably necessary, and who have signed the Agreement to Be Bound (Exhibit A); and

**4.4.**   The author or recipient of a document containing the material, or a custodian or other person who otherwise possessed or knew the information. **Procedures for Approving or Objecting to Disclosure of HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL - SOURCE CODE Material to In-House Counsel or Experts.** Unless agreed to in writing by the designator:

**4.4.1**  A party seeking to disclose to in-house counsel any material designated HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY must first make a written request to the designator providing the full name of the in-house counsel, the city and state of such counsel's residence, and such counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine present or potential involvement in any competitive decision-making. In- house counsel are not

5

authorized to receive material designated HIGHLY CONFIDENTIAL - SOURCE CODE.

**4.4.2**  A party seeking to disclose to an expert retained by outside counsel of record any information or item that has been designated HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL - SOURCE CODE must first make a written request to the designator that (1) identifies the general categories of HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL - SOURCE CODE information that the receiving party seeks permission to disclose to the expert, (2) sets forth the full name of the expert and the city and state of his or her primary residence, (3) attaches a copy of the expert's current resume, (4) identifies the expert's current employer(s), (5) identifies each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise (including in connection with litigation) in the past five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation where the expert has offered expert testimony, including by declaration, report, or testimony at deposition or trial, in the past five years. If the expert believes any of this information at (4) - (6) is subject to a confidentiality obligation to a third party, then the expert should provide whatever information the expert believes can be disclosed without violating any confidentiality agreements, and the party seeking to disclose the information to the expert shall be available to meet and confer with the designator regarding any such confidentiality obligations.

**4.4.3**  A party that makes a request and provides the information specified in paragraphs 4.4.1 or 4.4.2 may disclose the designated material to the identified in- house counsel or expert unless, within seven days of

delivering the request, the party receives a written objection from the designator providing detailed grounds for the objection.

**4.4.4**  All challenges to objections from the designator shall proceed under L.R. 37-1 through L.R. 37-4.

## 5.  SOURCE CODE

**5.1.  Designation of Source Code.** If production of source code is necessary, a party may designate it as HIGHLY CONFIDENTIAL - SOURCE CODE if it is, or includes, confidential, proprietary, or trade secret source code.

**5.2.  Location and Supervision of Inspection.** Any HIGHLY CONFIDENTIAL — SOURCE CODE produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the designating party's counsel or another mutually agreeable location. The source code shall be made available for inspection on a secured computer in a secured room, and the inspecting party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The designator may visually monitor the activities of the inspecting party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

**5.3.  Paper Copies of Source Code Excerpts.** The inspecting party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, other papers, or for deposition or trial. The designator shall provide all such source code in paper form, including Bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE."

**5.4.  Access Record.** The inspecting party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper

form, and shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The inspecting party shall not convert any of the information contained in the paper copies into any electronic format other than for the preparation of a pleading, exhibit, expert report, discovery document, deposition transcript, or other Court document. Any paper copies used during a deposition shall be retrieved at the end of each day and must not be left with a court reporter or any other unauthorized individual.

6.    **PROSECUTION BAR**

Absent written consent from the designator, any individual who receives access to HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL — SOURCE CODE information shall not be involved in the prosecution of patents or patent applications concerning the field of the invention of the patents-in-suit for the receiving party or its acquirer, successor, predecessor, or other affiliate during the pendency of this action and for one year after its conclusion, including any appeals. "Prosecution" means drafting, amending, advising on the content of, or otherwise affecting the scope or content of patent claims or specifications. These prohibitions shall not preclude counsel from participating in reexamination or *inter partes* review proceedings to challenge or defend the validity of any patent, but counsel may not participate in the drafting of amended claims in any such proceedings.

7.    **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

**7.1.    Subpoenas and Court Orders.** This Order in no way excuses non-compliance with a lawful subpoena or court order. The purpose of the duties described in this section is to alert the interested parties to the existence of this Order and to give the designator an opportunity to protect its confidentiality interests in the court where the subpoena or order issued.

**7.2.    Notification Requirement.** If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY, or HIGHLY CONFIDENTIAL - SOURCE CODE, that party must:

> **7.2.1**  Promptly notify the designator in writing. Such notification shall include a copy of the subpoena or court order;

> **7.2.2**  Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Order. Such notification shall include a copy of this Order; and

> **7.2.3**  Cooperate with all reasonable procedures sought by the designator whose material may be affected.

**7.3.    Wait For Resolution of Protective Order.** If the designator timely seeks a protective order, the party served with the subpoena or court order shall not produce any information designated in this action as CONFIDENTIAL, HIGHLY CONFIDENTIAL - ATTORNEY EYES ONLY or HIGHLY CONFIDENTIAL - SOURCE CODE before a determination by the court where the subpoena or order issued, unless the party has obtained the designator's permission. The designator shall bear the burden and expense of seeking protection of its confidential material in that court.

8.    <u>UNAUTHORIZED DISCLOSURE OF DESIGNATED MATERIAL</u>

If a receiving party learns that, by inadvertence or otherwise, it has disclosed designated material to any person or in any circumstance not authorized under this Order, it must immediately (1) notify in writing the designator of the unauthorized disclosures, (2) use its best efforts to retrieve all unauthorized copies of the designated material, (3) inform the person or persons to whom unauthorized

1   disclosures were made of all the terms of this Order, and (4) use reasonable efforts

2   to have such person or persons execute the Agreement to Be Bound (Exhibit A).

3   **9.**   **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE**

4        **PROTECTED MATERIAL**

5        When a producing party gives notice that certain inadvertently produced

6   material is subject to a claim of privilege or other protection, the obligations of the

7   receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

8   This provision is not intended to modify whatever procedure may be established in

9   an e-discovery order that provides for production without prior privilege review

10  pursuant to Federal Rule of Evidence 502(d) and (e).

11  **10.**   **FILING UNDER SEAL**

12       Without written permission from the designator or a Court order, a party may

13  not file in the public record in this action any designated material. A party seeking to

14  file under seal any designated material must comply with L.R. 79-5.1. Filings may

15  be made under seal only pursuant to a court order authorizing the sealing of the

16  specific material at issue. The fact that a document has been designated under this

17  Order is insufficient to justify filing under seal. Instead, parties must explain the

18  basis for confidentiality of each document sought to be filed under seal. Because a

19  party other than the designator will often be seeking to file designated material,

20  cooperation between the parties in preparing, and in reducing the number and extent

21  of, requests for under seal filing is essential. If a ***receiving party's*** request to file

22  designated material under seal pursuant to L.R. 79-5.1 is denied by the Court, then

23  the receiving party ***may file the material in the public record*** unless (1) ***the***

24  ***designator*** *seeks* reconsideration within four days of the denial, or (2) as otherwise

25  instructed by the Court.

26

27

28

**11.**   **FINAL DISPOSITION**

Within 60 days after the final disposition of this action, each party shall return all designated material to the designator or destroy such material, including all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any designated material. The receiving party must submit a written certification to the designator by the 60- day deadline that (1) identifies (by category, where appropriate) all the designated material that was returned or destroyed, and (2) affirms that the receiving party has not retained any copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the designated material. This provision shall not prevent counsel from retaining an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain designated material. Any such archival copies remain subject to this Order.

IT IS SO ORDERED.

DATED: _____          _____

United States District Judge/Magistrate Judge

11

## EXHIBIT A

## AGREEMENT TO BE BOUND

I, _____[print or type full name], of ____

_____[print or type full address], declare

under penalty of perjury that I have read in its entirety and understand the Protective

Order that was issued by the United States District Court for the Central District of

California on _____[date] in the case of _____[**insert

formal name of the case and the number and initials assigned to it by the

court].** I agree to comply with and to be bound by all the terms of this Protective

Order, and I understand and acknowledge that failure to so comply could expose me

to sanctions and punishment for contempt. I solemnly promise that I will not

disclose in any manner any information or item that is subject to this Protective

Order to any person or entity except in strict compliance with this Order.

I further agree to submit to the jurisdiction of the United States District Court

for the Central District of California for the purpose of enforcing this Order, even if

such enforcement proceedings occur after termination of this action.

I hereby appoint _____[print or type full name] of

_____ [print or type full address and telephone

number] as my California agent for service of process in connection with this action

or any proceedings related to enforcement of this Order.


Date: _____


City and State where Sworn and Signed: _____

Printed name: _____
                    [printed name]


Printed name: _____
                    [printed name]

12