**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CHRISTOPHER CHANDLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-02136 (APM) |
| | ) | |
| **DONALD BERLIN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.     INTRODUCTION

Defendant Donald Berlin is a private investigator who, in February 2003, prepared what Plaintiff Christopher Chandler terms a "Pitch." According to Plaintiff, the Pitch is a 134-page document that contains a host of false assertions, accusing Plaintiff and his brother of engaging in various criminal activities, such as money laundering and having ties to organized crime in Russia and Russian intelligence. Apparently, for well over a decade, the contents of the Pitch did not see the light of day. But then in November 2017 the person who received Berlin's work in 2003, Robert Eringer, sent a portion of the Pitch to members of the British media. This disclosure caused a firestorm of negative press accounts, reporting that Plaintiff was involved in money laundering for Russian interests and espionage. In this action for libel per se, Plaintiff alleges that Berlin and his various affiliated companies are liable for the harm caused by their presenting the Pitch to Eringer in 2003, as well as Eringer's republication of portions of the Pitch in 2017.

Defendants now move to dismiss or, in the alternative, for summary judgment. Treating Defendants' motion as one for summary judgment, the court grants the motion insofar as Plaintiff claims that Defendants are liable for the harm arising from the 2017 republication by Eringer.

Defendants could not have reasonably foreseen in 2003 that Eringer would republish the Pitch fourteen years later in 2017. With respect to the original publication of the Pitch in 2003, on the present record the court cannot find that such claim is time barred. There remains a genuine dispute of material fact as to when Plaintiff reasonably could have discovered the alleged libelous matter in the Pitch and Defendants' role in its creation. The court, therefore, declines to enter summary judgment in Defendants' favor as to the original publication of the Pitch in 2003.

The court, however, will not allow complete discovery on the merits to proceed at this time. Instead, the parties may take limited discovery on the narrow issue of when Plaintiff reasonably could have learned about Defendants' creation of the Pitch, so as to commence the one-year limitations period. The court wishes to satisfy itself that Plaintiff's libel claim as to the 2003 publication of the Pitch is timely before permitting full discovery.

## II.    BACKGROUND

### A.    Factual Background[1]

#### 1.    The Pitch and Its Publication

In 2003, Defendant Donald Berlin, doing business through his investigative services company, Defendant Investigative Consultants, Inc. ("ICI"), compiled a 134-page background document about Plaintiff Christopher Chandler. *See* Compl., ECF No. 20 [hereinafter Compl.], ¶¶ 4, 20–24; *see* Defs.' Mot., ECF No. 21, Defs.' Mem., ECF No. 21-1 [hereinafter Defs.' Mem.] (not controverting facts). Berlin prepared the document—which Plaintiff refers to as the "Pitch"— for one Robert Eringer, a resident of Monaco who had ingratiated himself with Prince Albert II of

---

[1] This matter comes before the court before the taking of any discovery. Nevertheless, the parties have offered evidence to support their respective positions, and Plaintiff has responded to Defendants' statement of material facts. *See* LCvR 7(h)(1). For purposes of Defendants' motion, the court treats as true any fact that is undisputed, any asserted fact that Plaintiff did not specifically dispute, *see* Fed. R. Civ. P. 56(e)(2), and any allegation in the Complaint that Defendants have not specifically contested, *see* Fed. R. Civ. P. 8(b)(6).

Monaco. Eringer had told the Prince that he could help investigate people living in Monaco who were suspected of engaging in financial improprieties, including Plaintiff and his brother. *See id.* ¶¶ 3, 35, 62; *see* Defs.' Mem. (not controverting facts). Plaintiff prepared the Pitch and gave it to Eringer no later than February 23, 2003. The Pitch contained allegations that Plaintiff and his brother were involved in, among other things, money laundering, organized crime, and espionage for Russia. *See* Compl., ECF No. 20-1 [hereinafter Pitch], at 1–34. The header of every page of the Pitch, except the first, included the words "Confidential Memorandum to File." *See id.*

In November 2004, Eringer took the information in the Pitch and incorporated it into what Plaintiff calls the "Eringer Report." Compl. ¶¶ 54–56. At some point thereafter, Eringer took the Eringer Report to create what Plaintiff terms the "Fake Dossier," which Eringer disclosed to members of the British media in November 2017. *See id.* ¶ 57; *see also* Pl.'s Decl., ECF No. 22-2 [hereinafter Pl.'s Decl.], ¶¶ 6–11. The next month, the British media began running articles about Plaintiff containing allegations stemming from the Fake Dossier. *See* Pl.'s Decl. ¶¶ 6–9. At the time, Plaintiff was active in the public debate around "Brexit," thus making the Fake Dossier's allegations newsworthy. *See* Compl. ¶ 58 n.31; Defs.' Mem. (not controverting fact). In an effort to rebut the press reports, Plaintiff sat down with a reporter in May 2018, who showed him a copy of the Fake Dossier, which included the Pitch. The Pitch itself references ICI. *See* Pl.'s Decl. ¶¶ 10–12. Plaintiff had not seen the Pitch or heard of ICI before May 2018. *Id.* ¶ 12.

Berlin asserts that he did not "give permission, authorize, [or] know" that Eringer would disclose the Pitch to the Prince of Monaco or any other third party. *See* Berlin Decl., ECF No. 21-9 [hereinafter Berlin Decl.], ¶¶ 7–8. Plaintiff offers no facts to dispute that contention. *See* Pl.'s Mem. in Opp'n to Defs.' Mot, ECF No. 22 [hereinafter Pl.'s Opp'n], Pl.'s Objs. and Resp. to Defs.' Facts, ECF No. 22 at 38–42 [hereinafter Pl.'s Resp. to Facts], ¶ 18. Berlin also contends that he

did not "foresee" that Eringer would disclose the Pitch. *See* Berlin Decl. ¶¶ 7–8. Plaintiff attempts to rebut that assertion with evidence. Specifically, Plaintiff cites a litany of publicly available information about Eringer that pre-dates the creation of the Pitch in 2003, including the fact that Eringer was a tabloid writer, to show that Berlin reasonably should have foreseen that Eringer would republish the Pitch's accusations. *See* Pl.'s Resp. to Facts ¶ 18.

### 2. Related Eringer Publications

Before 2017, Eringer published the false allegations contained in the Pitch in various ways. In 2009, Eringer brought a lawsuit in California against Prince Albert. The complaint in that action mentioned Eringer's investigation of Plaintiff and accused Plaintiff of doing unregistered, unlawful business in Monaco. *See* Pl.'s Resp. to Facts ¶ 8; *see also* Defs.' Mem., ECF No. 21-7, ¶ 13. In 2014, Eringer published a book titled the "Spymaster of Monte Carlo," which repeated many of the accusations of criminal wrongdoing contained in the Pitch. *See* Defs.' Facts ¶¶ 9–10; Pl.'s Resp. to Facts ¶¶ 9–10; *see also* Pl.'s Opp'n, Exhibit F, ECF No. 22-12, at 17–19, 53–54, 70. Then, in 2016, Eringer created a website posting called "The Art of the Ruse: Richard and Christopher Chandler," which appears to contain excerpts from the "Spymaster of Monte Carlo" relating to Plaintiff. *See* Defs.' Facts ¶ 11; Pl.'s Resp. to Facts ¶ 11; *see also* Defs.' Mem., Exhibit 3, ECF No. 21-4. The lawsuit, book, and website posting did not mention Berlin or ICI. *See* Defs.' Mem., Exhibits 2, 3, and 6, ECF Nos. 21-3, 21-4, and 21-7.

## B. Procedural Background

Plaintiff filed suit on September 14, 2018, against Berlin and various entities bearing the name ICI. After the court granted in part Defendants' Motion to Strike, *see* Order, ECF No. 14, Plaintiff filed a redacted Complaint. *See* Compl.

On October 25, 2018, Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. The Motion advances two arguments. As to Eringer's 2017 republication, Defendants assert that such action was not reasonably foreseeable in 2003 and therefore Defendants cannot be held accountable for Eringer's republication. *See* Defs.' Mem. at 8–10, 12–13. As for the initial disclosure of the Pitch to Eringer in 2003, Defendants argue that the claim is time barred insofar as Plaintiff, through the exercise of reasonable diligence, could have learned about Berlin's authorship of the Pitch long before he filed this case. *See id.* at 10–11, 13–18.

## III.  LEGAL STANDARD

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). But because both parties have presented matters outside the pleadings, the court "must . . . treat" Defendants' Motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

In assessing a motion for summary judgment, the court considers all relevant evidence presented by the parties. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). The court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court determines "no reasonable jury could reach a verdict in [his] favor," then summary judgment is appropriate. *Wheeler v. Georgetown University Hosp.*, 812 F.3d 1109, 1113

(D.C. Cir. 2016). Courts are "not to make credibility determinations or weigh the evidence." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

## IV. DISCUSSION

Plaintiff pleads that Defendants are legally responsible for two libelous publications: (1) the 2003 publication of the Pitch that Defendants "privately sent" to Eringer and (2) the 2017 republication of the Pitch that Eringer sent to members of the British media. *See* Compl. ¶¶ 62, 76–77. The court takes these in reverse order, first analyzing the 2017 republication before turning to the 2003 original publication.

### A. Defendants' Liability for 2017 Republication

"The maker of a [defamatory] statement may be held accountable for its republication if such republication was reasonably foreseeable." *Tavoulareas v. Piro*, 759 F.2d 90, 136 n.56 (D.C. Cir. 1985); *see also Ingber v. Ross*, 479 A.2d 1256, 1269 (D.C. 1984) (stating that a person can be held liable for a republication if "the repetition was reasonably to be expected").[2] Here, Plaintiff argues that Eringer's republication in 2017 was reasonably foreseeable to Defendants in 2003 based on then-publicly available information about Eringer's activities and character. Specifically, Plaintiff cites various books written by Eringer dating back to 1980, a Salon.com article from 2001 that described Eringer as a "prolific author" "mostly on espionage-related subjects," and a D.C. Circuit decision from 1984 that characterized Eringer's allegations in that case as "scurrilous."[3] *See* Pl.'s Opp'n at 7–8. Plaintiff claims that this publicly available information made it reasonably foreseeable that Eringer would republish the Pitch and its allegations. *See id.*

---

[2] The parties largely rely on District of Columbia law, so the court does the same.

[3] This is the only evidence cited by Plaintiff to support his claim of reasonable foreseeability. Notably, Plaintiff did not file a Rule 56(d) declaration stating that he needed to take discovery on this issue, which presumably would have included a deposition of Berlin. *See* Pl.'s Opp'n; *see also Convertino v. U.S. Dept. of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("To obtain Rule 56[d] relief, the movant must submit an affidavit which states with sufficient particularity . . . why additional discovery is necessary.") (internal citations and quotations omitted).

The court disagrees.  For multiple reasons, no reasonable juror could find that Defendants in 2003 could have reasonably foreseen Eringer's republication in 2017.

First, and most importantly, fourteen years lapsed between Defendants' initial publication and Eringer's republication.  *See* Pl.'s Resp. to Facts ¶ 16 (Plaintiff not controverting fact that Berlin gave the Pitch to Eringer no later than February 23, 2003); *see also* Compl. ¶ 57 (alleging Eringer gave the Pitch to British media in 2017); Defs.' Mem. at 8 n.6 (Defendants not contesting this fact at this stage).  Plaintiff does not offer a single case in which a court has found a defendant liable for a republication made so many years after the original publication.  That is not surprising. Courts have held, in combination with other factors, that republication after three years was not reasonably foreseeable, *see Geraci v. Probst*, 15 N.Y.3d 336, 343 (N.Y. 2010); that republication after five years was not reasonably foreseeable, *see HV Assocs. LLC v. PNC  Bank, N.A.*, No. 17-8128 (SRC), 2018 WL 1731346, at *6 (D. N.J. Apr. 10, 2018); and that republication after seven years was not reasonably foreseeable, *see Founding Church of Scientology of Washington, D.C. v. American Medical Ass'n*, 377 N.E.2d 158, 161 (Ill. App. Ct. 1978).  One court recently rejected reasonable foreseeability after 19 years.  *See Bryan v. News Corporation*, 2018 WL 720057, at *11–13 (Cal. Ct. App. Feb. 6, 2018) ("As a temporal equation, no case cited by defendants extends reasonable foreseeability outwards of 19 years.");[4] *cf. Foretich v. Glamour*, 753 F. Supp. 955, 958–59 (D.D.C. 1990) (holding original publisher responsible for republication that occurred just six weeks later).  It would take extraordinary facts to find that a republication occurring fourteen years after the original publication was reasonably foreseeable.  Such extraordinary facts are not present here.

---

[4] The court recognizes that, under California Court Rules, the *Bryan* case is unpublished and therefore may not be relied upon by parties or courts in California state cases.  *See* Cal. Ct. Rule 8.1115.  The court nevertheless finds the case illustrative and therefore cites it here.

Second, Defendants did not widely disseminate the Pitch in 2003, which weighs against finding that Eringer's republication in 2017 was reasonably foreseeable. "[I]f the originator has himself widely disseminated the defamation and thus intimated to those who heard it that he is not unwilling to have it known to a large number of people, the fact may be taken into account in determining whether there were grounds to expect the further dissemination." Restatement (Second) of Torts § 576 (1977). "On the other hand, the defamation may have been published under such circumstances or to such persons as to give reasonable assurance it would go no further." *Id.* Here, according to Plaintiff's own allegation, Defendants "*privately* sent the Pitch to Eringer." Compl. ¶ 76 (emphasis added); Defs.' Mem. (not controverting facts). And Plaintiff concedes that Berlin "performed no work for anyone other than Eringer concerning [the] Chandlers." *See* Defs.' Facts ¶ 4; Pl.'s Resp. to Facts ¶ 4. Thus, nothing about the manner of publication in 2003—a confidential transmission between Berlin and Eringer—provides grounds to reasonably expect republication by Eringer fourteen years later.

Third, in addition to privately sending the Pitch to Eringer, Berlin marked on every page but the first the designation "Confidential Memorandum to File." *See* Pitch at 2–34. Such a designation is evidence that the document's author intended for it to remain confidential. *Cf. Meyers v. Levinson*, 2005 U.S. Dist. LEXIS 42799, at *78 (E.D. Va. July 26, 2005) (finding no foreseeability because contract to write report said report would be "strictly confidential"), aff'd *Meyers v. Levinson*, 185 Fed. Appx. 224 (4th Cir. 2006). Thus, by including a confidentiality designation, the Pitch on its face expressed "reasonable assurance [that it] would go no further." Restatement (Second) of Torts § 576 (1977).

Finally, Defendants did not have any indication in 2003 that the information contained in the Pitch would become newsworthy nearly a decade-and-a-half later. Eringer sent the Pitch to

the British media only after Plaintiff became involved in public debate about "Brexit." *See* Compl. ¶¶ 57–58; *see also* Pl.'s Opp'n, ECF No. 22-4, Decl. of Daniel P. Watkins ¶ 16 (detailing the many articles written about Plaintiff during the Brexit debate). In 2003, Defendants could not have predicted that Plaintiff would involve himself in such a high-profile issue, such that negative information about him would be of interest to the public. It was not reasonably foreseeable, therefore, that Eringer would have reason to republish the information fourteen years after he received it.

Although reasonable foreseeability is typically a question for the jury, *see Tavoulareas*, 759 F.2d at 136, the fourteen-year gap—in combination with the Pitch's limited initial distribution, its designation as "confidential," and the serendipity of Plaintiff becoming involved in one of the world's significant geopolitical stories—makes it such that no reasonable juror could find Eringer's republication to the British media reasonably foreseeable. The public information about Eringer available before 2003 upon which Plaintiff relies—the books, the Salon.com article, and the D.C. Circuit decision—is not sufficient to create a genuine dispute of fact as to reasonable foreseeability. Accordingly, the court grants summary judgment to Defendants on the 2017 republication.

### B. Defendants' Liability for the 2003 Original Publication

Defendants argue the 2003 publication is barred by the one-year statute of limitations, even if the court applies the discovery rule to the accrual date. *See* Defs.' Mem. at 10–11.[5] Defendants aver that Plaintiff should have known about the Pitch based on three events occurring between

---

[5] Although the District of Columbia Court of Appeals has not explicitly applied the discovery rule to a defamation case, the court believes the discovery rule would apply here because the 2003 publication was "inherently undiscoverable, because it was published secretly." *McFadden v. Wash. Met. Area Transit Auth'y*, 949 F. Supp. 2d 214, 221 (D.D.C. 2013) (quoting *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 299 n.5 (D.C. 2001)); *see also Associated Producers, LTD v. Vanderbilt University*, 76 F. Supp. 3d 154, 172 (D.D.C. 2014) (applying discovery rule for defamatory statements sent via email and telephone calls to a select number of people).

2003 and 2017: (1) Eringer's filing of a lawsuit in 2009 against Prince Albert in federal court in California; (2) Eringer's publication of a book in 2014 titled the "Spymaster of Monte Carlo" that repeated allegations from the Pitch; and (3) Eringer's creation of a website posting in 2016 called "The Art of the Ruse: Richard and Christopher Chandler" that included excerpts from the "Spymaster of Monte Carlo" regarding Plaintiff. *See* Defs.' Mem. at 15–18; *see also* Defs.' Mem., ECF Nos. 21-3, 21-4, and 21-7. Defendants contend that, even though none of these publications expressly mention Berlin or ICI, had Plaintiff exercised reasonable diligence after discovering these libelous publications he could have sued Eringer and, by so doing, would have learned about the Pitch and Defendants well before he filed this suit. *See* Defs.' Mem. at 17–18 (citing *Fitzgerald v. Seamans*, 553 F.3d 220, 229 (D.C. Cir. 1977)).

Though Defendants' argument has some appeal, it rests on a predicate assumption for which there is no evidentiary support on the present record—namely, that Plaintiff actually knew about any of the three publications in question or that circumstances dictated that he should have known about them. Plaintiff does not concede that he had such knowledge. *See* Pl.'s Resp. to Facts ¶¶ 12–13. Thus, without more, the court cannot conclude, as a matter of law, that had Plaintiff "exercise[d] . . . reasonable diligence under all of the circumstances," he would have uncovered Defendants' creation of the Pitch. *Diamond v. Davis*, 680 A.2d 364, 383 (D.C. 1996).

Although the court declines to enter summary judgment in Defendants' favor on the 2003 publication, that does not mean the court will permit full factual discovery to proceed at this time. The court recognizes that discovery in a case such as this one will be time consuming and expensive. Thus, to avoid incurring great costs to conduct discovery that may never become relevant, the court will allow an initial, limited phase of discovery as to whether Plaintiff's claim with respect to the original publication of the Pitch in 2003 is time barred. If Defendants are unable

to convince the court that Plaintiff's claim is untimely, the court then will allow further discovery to proceed.

## V.     CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted in part and denied in part.  Defendants shall answer the Complaint no later than April 17, 2019. Thereafter, the court will issue a scheduling order for further proceedings consistent with this Memorandum Opinion and Order.

Dated:  April 3, 2019

Amit P. Mehta
United States District Court Judge