**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTOPHER CHANDLER,** | |
| Plaintiff, | No.1:18-cv-02136-APM |
| v | Hon. Amit P. Mehta |
| **DONALD BERLIN, et al.,** | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGEMENT

This case began with Plaintiff threatening Mr. Berlin and his wife with financial ruin, and notwithstanding the Plaintiff threatening the Court with reversal, it should end now. In his attempt to evade his own admissions and the Court's April 3, 2019 Order, Plaintiff abandons the theory of his Complaint, urges an incorrect interpretation of District law, and makes statements that are neither explained nor true, such as that he is suing for a "different harm" than that which he knew about at least as early as 2010.

This Court has already ruled Plaintiff has no claim against Defendants for any alleged defamation other than the publication of the Limited Report to Eringer sixteen years ago. Thus the question before the Court is whether Plaintiff was on inquiry notice of the allegedly defamatory statements of which he now complains prior to September, 2017 (one year before filing suit).

As Judge Gessell stated in *Fitzgerald*, "[i]mplicit in the statute of limitations is the notion that any case or controversy must eventually be allowed to die a natural death through the passage of time." 384 F. Supp. 688, 698 (D.D.C. 1974). Plaintiff's own admissions and acts

require the conclusion that his claims against Defendants died years ago, when he knew about the allegedly defamatory allegations and that Eringer was their source but affirmatively declined to initiate litigation.

That decision may have been perfectly reasonable – indeed people frequently decide not to sue although they believe they have been wronged – but it has consequences, one of which is he cannot now bring an action based on the same alleged wrongs against Mr. Berlin and his company, whose identities would have been revealed had Plaintiff timely filed suit against Eringer. Plaintiff's argument that he only found out about Defendants when he finally took action in 2018 completely misses the point of *Fitzgerald*. Had he acted when the claim indisputably arose, he would have discovered Eringer's employment of Mr. Berlin at least as quickly as he did in 2018. Therefore, the within case must be dismissed.

**I. Defendants Have Shown That They and Eringer Were "Closely Connected." Nothing More Is Required To Dismiss Plaintiff's Remaining Claim**.

The parties agree that the disposition of this motion is governed by *Diamond v. Davis*, 680 A.2d 364 (D.C. 1996), and *Fitzgerald v. Seamans*, 553 F.2d 220 (D.C. Cir. 1977). Plaintiff, however, misreads both cases.

Citing *Fitzgerald*, the court in *Diamond* established the following principle:

> [P]laintiff's knowledge of wrongdoing on the part of one defendant [does] not cause accrual of his action against another, unknown defendant responsible for the same harm unless the two defendants were closely connected, **such as in a superior-subordinate relationship.**

680 A.2d at 380 (emphasis added).

Plaintiff contends that Mr. Berlin "is not a subordinate of Eringer" and therefore may not receive the benefit of the rule announced in *Diamond*. (Dkt. 34 at 6-7). This is incorrect as

a matter of law and undisputed fact. The *Diamond* rule is not **limited** to superiors and subordinates. It applies to all parties who are "closely connected." The Court's use of the phrase "such as" shows that a superior-subordinate relationship is **but one example of a close connection**, **not an inflexible requirement**.

For that reason, courts routinely give parties the benefit of the *Diamond* rule even when no superior-subordinate relationship exists. *E.g.*, *Nader v. Democratic National Comm.*, 567 F.3d 692, 702 (D.C. Cir. 2009) (Plaintiff's knowledge of claims against the Democratic National Committee started accrual of claims against the Kerry-Edwards Campaign); *Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 161-62 (D.D.C. 2018) (plaintiff's knowledge of claim against manufacturer of one component of a medical device started accrual of claims against manufacturer of another component of that device); *Gardel v. SK&A Structural Engineers PLLC*, 286 F. Supp. 3d 120, 125-27 (D.D.C. 2017) (Plaintiff's knowledge of claim against building owner started accrual of causes of action against engineering firm and construction company that did work at the building); *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 115-16 (D.D.C. 2015) (Plaintiff's knowledge of claim against law firm started accrual of cause of action against the firm's bank). Thus, the proper inquiry under District of Columbia law is not whether Mr. Berlin was Eringer's subordinate but simply whether they were closely connected.

The undisputed record leaves no doubt about the close connection between Eringer and the Defendants. Mr. Berlin was not some independent researcher whose work Eringer somehow stumbled upon. As Plaintiff himself admits, Eringer hired the Defendants to prepare the Limited Report. (Response to Defendants' Statement of Undisputed Facts No. 1, (Dkt. 34 at 15)). Moreover, as Defendants have pointed out (and Plaintiff does not dispute)

the basis of Plaintiff's complaint in this case is the allegation that Eringer and Mr. Berlin worked together to defraud Prince Albert by means of a "Pitch." *See, e.g.*, Redacted Complaint, Dkt. 20, ¶ 3: "Berlin attempted to defraud Prince Albert II of Monaco (through Robert Eringer)."

Far from being a "person of influence in a different center of power," like the White House aide in *Fitzgerald*, Mr. Berlin performed services directly for Eringer, like the engineering firm and construction company in *Gardel* and the bank in *Sandza*. Contrary to plaintiff's characterization, Mr. Berlin, who supplied information to Eringer, is exactly like the Air Force officials in *Fitzgerald*, who supplied information to the other Air Force defendants in that case.[1]

Even assuming, *arguendo,* that Plaintiff's crabbed interpretation of *Fitzgerald* is correct, the result is the same. Plaintiff has conceded that Eringer employed Defendants to prepare the Limited Report and has alleged that he and Mr. Berlin acted "in concert." (Responses to Statement of Undisputed Facts Nos. 1 and 2, (Dkt. 34 at 15-16); Redacted Complaint, Dkt. 20, ¶¶ 3, 38)). Nothing in *Fitzgerald* limits its application to individuals working for the same employer as opposed to individuals employed as contractors by a known defendant. Defendants, therefore, have established that they are entitled to the benefit of the "closely connected" rule in *Diamond* and *Fitzgerald*.

---

[1] Plaintiff's reliance on *Richards v. Mileski,* 662 F.2d 65 (D.C. Cir. 1981), is misplaced. In that case, the statute of limitations was tolled because the plaintiff had no information at all about who had defamed him until he filed a Freedom of Information Act request. The case is irrelevant to the question presented here under *Diamond* and *Fitzgerald:* whether Plaintiff's awareness of his claims against one potential defendant was sufficient to start the running of the statute of limitations against another, closely related defendant.

## II. BECAUSE HE ALLOWED THE STATUTE OF LIMITATIONS TO RUN AGAINST ERINGER, PLAINTIFF FAILED TO UNDERTAKE A REASONABLE INVESTIGATION THAT WOULD HAVE REVEALED THE LIMITED REPORT.

Plaintiff does not dispute that the statute of limitations has expired for any claims arising out of Eringer's prior publications. Nor does he dispute that he would have discovered the Limited Report if he timely sued Eringer. In particular, he has no answer to our showing that discovery in any such suit would have revealed the Limited Report. (Dkt. 32-2 at 11-14). Instead, he asserts that he had no basis for investigating Defendants before May 2018. (Dkt. 34 at 8). That argument ignores consistent case law holding that, in appropriate cases, a reasonable investigation of an unknown defendant includes discovery in a lawsuit against a known defendant.

*Fitzgerald* establishes that a plaintiff who fails to file a timely action against one defendant is deemed to have inquiry notice of what would have been revealed in such an action had he filed on time. "The matter would stand differently if appellant had proceeded with diligence within the 3-year period by suing those conspirators known to him at the time, and later sought to add other participants whose identity he learned in the course of that suit." 553 F.2d at 229. As we have shown, discovery in an action against one defendant often will reveal information identifying additional individuals who may be liable to the plaintiff, and the plaintiff's failure to act on that information in a timely manner will cause the statute of limitations to run against the newly-revealed defendant. (Dkt. 32-2 at 10-11 (citing *Kubicki* and *Gardel*)). This is nothing more than an application of the general rule that "[t]he critical question in assessing the existence *vel non* of inquiry notice is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever

-5-

information was available to him." *Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000), citing *Diamond*, 680 A.2d at 376-81.

Plaintiff himself recognized that a suit against Eringer was the best way to investigate the source of Eringer's claims. (Dkt. 32-4 (Plaintiff wonders whether to sue Eringer "to force him to prove the comment or retract it")).[2] Instead of diligently acting, Plaintiff did the opposite, electing to "carry on with our lives and leave the curiosity to others." (Dkt. 32-6). There is nothing wrong with declining to prosecute a claim against a known defendant. But that decision has consequences not only for the known defendant but also for any other person whose participation in the alleged wrongdoing would be revealed through discovery. When a putative plaintiff knows of an injury, its cause in fact and some evidence of wrongdoing, he must file suit within the statute of limitations period. *Diamond*, 680 A.2d at 379. That lawsuit, including the discovery process, constitutes a reasonable investigation of the matter, including an investigation of who may have contributed to the harm. Failure to conduct that investigation through the legal process means that all persons "closely connected" to the known defendant are entitled to the benefit of the statute of limitations. *Id.* at 380; *Fitzgerald*, 553 F.2d at 229.

Defendants are not contending that filing a lawsuit is the only way to fulfill the "duty to investigate matters . . . with reasonable diligence" recognized in *Diamond*. 680 A.2d at 381. But if a cause of action has accrued under the *Diamond* standard, the prospective plaintiff

---

[2] Plaintiff speculates about whether Eringer would have responded to inquiries about his publications, (Dkt. 34 at 9), but does not dispute that discovery in a lawsuit would have revealed the Limited Report and Defendants' role in its preparation. In any event, any uncertainty about what would have happened in a lawsuit against Eringer is the result of Plaintiff's own failure to diligently pursue his claims against Eringer.

must file a timely action or suffer the consequences. Those consequences include the loss of all time-barred causes of action against known defendants as well as any others who are closely connected with those defendants and who would have been revealed in discovery.

Plaintiff's attorneys suggest that he would have acted differently if only he knew that Eringer's charges were backed up by an investigation by someone else. (Dkt. 34 at 10). The record unequivocally refutes that suggestion. The evidence shows that Eringer described several people who contributed to his efforts to investigate Plaintiff. Eringer's book refers to "we" when discussing intelligence gathering activities about Plaintiff, (Dkt. 22-12 at 16-19), and notes that his deputy attended at least one meeting with the Prince when Plaintiff was discussed. (*Id.* at 16). The book also says that Eringer had a spy within Plaintiff's company, (*id.* at 53), that he had recruited someone to observe comings and goings at the company by posing as an artist painting a landscape, (*id.* at 18), and that he sent a deputy to Switzerland to meet with Ivo Hoppler, an investigating magistrate who supplied information to the deputy. (*Id.* at 18-19). Eringer's lawsuit against Prince Albert also stated that he had documents to support his claims about Plaintiff. (Dkt. 21-7, ¶13).

Eringer, therefore, did not present his findings as the solitary musings of a self-published author but as the result of a collaborative effort involving several other people. This was more than sufficient to put Plaintiff on notice that Eringer claimed to have both documentary and eyewitness evidence that would be revealed if and when Plaintiff decided to make Eringer "prove . . . or retract" his charges by filing a lawsuit.[3]

---

[3] To be sure, Eringer's publications do not refer to Defendants' work. But Eringer's references to some of the sources for his work, including references to other people who were investigating Plaintiff, refute the claim of Plaintiff's attorneys that Plaintiff might have gone

Allowing Plaintiff to evade the consequences of his decision to "carry on with our lives and leave the curiosity to others" would be an anomalous result. As discussed above, in cases such as *Kubicki* and *Gardel*, plaintiffs who diligently filed suit against known defendants but failed to take timely action against others whose involvement was, or could have been, revealed in discovery are barred from recovery against those new defendants. In this case, Plaintiff took no action, diligent or otherwise, against Eringer. His failure to take advantage of an "opportunity to clear his name," (Dkt. 34 at 11), should not put him in a better position than other plaintiffs who at least took some timely action to vindicate their rights.

Because Plaintiff's claims against Eringer arose no later than 2015, a reasonable investigation of Eringer would have included a lawsuit (*i.e.*, an effort to have Eringer "prove . . . or retract" his charges), and because discovery in such a lawsuit would have revealed Defendants' preparation of the Limited Report, Plaintiff had inquiry notice of the Report and that Defendants authored the Report. The statute of limitations for claims arising out of the publication of the Limited Report, therefore, expired well before Plaintiff filed this action.

III. **PLAINTIFF'S ASSERTIONS THAT HE IS LITIGATING A "DIFFERENT HARM" CAUSED BY A "DIFFERENT PERSON" IN A "DIFFERENT PUBLICATION" ARE NOT MATERIAL FACTS PRECLUDING DISMISSAL.**

Plaintiff's final argument, that the Limited Report is a "different publication" by a "different person" that caused a "different harm" is meritless and may be dealt with quickly. To begin with, that Mr. Berlin is a "different person" than Eringer is not a material fact – all of the individuals given the benefit of the statute of limitations under *Fitzgerald*, *Diamond*, and

---

after Eringer if only Plaintiff knew that Eringer's claims were backed up by something more than Eringer's say-so.

the other cases cited above were different individuals or entities from the person or entity known to the plaintiff. For the reasons discussed above, given his relationship with Eringer and Plaintiff's knowledge of his claims in 2015, Mr. Berlin (and his companies) are entitled to the protections of *Diamond* and *Fitzgerald*.

Plaintiff then argues that Mr. Berlin's disclosure to Eringer constitutes a "different harm" because the Limited Report "has all the appearance of a professional investigative report" and the "gravitas" of a professional investigator. (Dkt. 34 at 10). This is the same document Plaintiff described as "disorganized, written at a high school level, and riddled with spelling and grammatical errors that would have been caught by an educated person with a rudimentary understanding of the spellcheck and grammar check tools available on Word processing platforms." (Dkt. 1, ¶ 32). More to the point, Plaintiff attributes to the Limited Report the very same allegedly defamatory statements that Eringer published in 2010, 2015, and 2018. (Redacted Complaint, Dkt. 20, ¶¶ 4, 13; Responses to Defendants' Statement of Undisputed Facts Nos. 1-6 (Dkt. 34 at 15-17)). Furthermore, there is no evidence that a lack of "gravitas" influenced Plaintiff's decision not to initiate litigation against Eringer prior to 2018, even though he was on notice that Eringer had relied on several named and unnamed sources.

Lastly, Plaintiff makes a halfhearted effort at arguing Eringer's 2018 publication of the allegedly defamatory statements in the Limited Report constitutes a separate harm from Defendants' publication of the Limited Report to Eringer. (Dkt. 34 at 11-12). However, claims against Defendants arising out of Eringer's 2018 publication have already been dismissed. (Order, Dkt. 24, at 8-9). If Plaintiff is attempting to argue that Eringer's disclosures in 2018

constitute a new publication, that is of no help to him vis-à-vis Defendants. Once his claim against Eringer indisputably arose in 2015, Plaintiff's opportunity to rely on the discovery rule that would have led him to Defendants came and went within one year.

There is no authority for the assertion that actions by Eringer in 2018 gave rise to a new claim based on "new harm" from the 2003 publication. In fact, the authority is to the contrary. *Colbert v. Georgetown Univ.,* 641 A.2d 469, 473-74 (D.C. 1994) (*en banc*) (plaintiff was at least on inquiry notice of her claim; "[w]e know of no precedent for the position that a plaintiff whose action has accrued, and who has already suffered grievous injury, may defer suit until further complications develop"); *Nelson v. American Nat. Red Cross,* 26 F.3d 193, 197 (D.C. Cir. 1994) (quoting *Colbert's* "no precedent" language); *Estate of Grant v. Armour Pharm. Co.,* 2007 U.S. DIST LEXIS 4574 (D.D.C. 1/23/07) at *12-13 (plaintiff's decedent was on inquiry notice of her claim; "the discovery rule 'does not permit a plaintiff who has information regarding a defendant's negligence and who knows that she has been significantly injured, to defer institution of suit and wait and see whether additional injuries come to light.' ") (quoting *Colbert,* 641 A.2d at 473); *Hendel v. World Plan Exec. Council,* 705 A.2d 656, 661 (D.C. 1997) (plaintiff was on inquiry notice of her claim; "[t]he discovery rule does not, however, give the plaintiff *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm.")

Simply put, Plaintiff had actual notice of his claims against Eringer no later than 2015, and consequently was on inquiry notice of any claims against Defendants. *Diamond,* 680 A.2d at 372. He had one year to sue Defendants but chose to do nothing. Therefore, the case should be dismissed.

## CONCLUSION

Plaintiff's attempt to limit *Fitzgerald* and *Diamond* to persons in a superior-subordinate position does not withstand even the slightest scrutiny, and even were that not the case, it is undisputed that Eringer hired Defendants to prepare the Limited Report. Thus there is no legal or factual basis to exclude Defendants from the rule of those cases. Plaintiff's remaining arguments as to what influenced him in 2015 are unsupported by **any** evidence and therefore cannot create a genuine issue of material fact. Counsel's strained attempt to characterize as "different harms" the very same alleged reputational damage supposedly caused by the Limited Report in 2003 and its publication by Eringer in 2018 is pure sophistry. Accordingly, this case should be dismissed.

September 12, 2019                                                  Respectfully submitted,

*/s/ Steven Oster*

John P. Dean
D.C. Bar No. 362904

Steven M. Oster
D.C. Bar No. 376030

**OSTER McBRIDE, PLLC**
1320 19th Street, N.W., Suite 601
Washington, DC 20036
(202) 596-5291 (p)
(202) 747-5862 (f)
soster@ostermcbride.com

Counsel to Defendants

-12-

## **CERTIFICATE OF SERVICE**

I certify that I filed the attached Reply in Support of Summary Judgment using the Court's CM/ECF system and thereby served counsel of record for the Plaintiff.

September 12, 2019 */s/ Steven M. Oster*