## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER CHANDLER** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**DONALD BERLIN, et al.,** )<br><br>**Defendants.** ) | **Case No. 18-cv-02136 (APM)** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are two motions for sanctions filed by Defendants Donald M. Berlin and certain of his businesses against Plaintiff Christopher Chandler and his counsel. The first seeks sanctions pursuant to Federal Rule of Civil Procedure 11 on the ground that "the complaint in this case was filed 'for [an] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" Defs.' Mem. of P. & A. in Supp. of Their Mot. for Sanctions Under Fed. R. Civ. P. 11, ECF No. 39-1 [hereinafter Defs.' Rule 11 Mot.], at 1 (alterations in original) (quoting Fed. R. Civ. P. 11(b)(1)). The second seeks sanctions pursuant to 28 U.S.C. § 1927 and this court's inherent authority on similar grounds, and the additional ground that Plaintiff's counsel allegedly misled the court. *See* Defs.' Mem. of P. & A. in Supp. of Their Mot. for Sanctions Pursuant to 28 U.S.C. § 1927 & This Court's Inherent Authority, ECF No. 40-1 [hereinafter Defs.' 1927 Mot.], at 1. For the reasons that follow, the court denies both motions.

### I. Background

#### A.    Factual Background

Defendant Donald Berlin is a private investigator who, in February 2003, prepared what Plaintiff terms a "Pitch" for a client, Robert Eringer. *See* Mem. Op. & Order, ECF No. 24.

[hereinafter First Mem. Op.], at 1. According to Plaintiff, the Pitch contains a host of false assertions, accusing Plaintiff and his brother of engaging in various criminal activities, such as money laundering and having ties to organized crime in Russia and Russian intelligence. *Id.* More than a decade later, in November 2017, after Plaintiff had become active in the public debate around "Brexit," Eringer sent a portion of the Pitch to members of the British media, who began running articles about Plaintiff containing these allegations. *Id.* at 3. Sometime later, Plaintiff learned that Berlin was behind the Pitch. *See* Decl. of Christopher Chandler, ECF No. 22-2, ¶ 10.

This revelation prompted Plaintiff to send a prelitigation demand letter and a draft copy of a complaint to Defendants demanding that Berlin (1) sign a letter stating that he was the "source of the false accusations of money laundering, organized crime, and Russian espionage that have been made about Christopher Chandler in recent months"; (2) schedule an interview with Plaintiff's counsel; (3) "agree to provide an affidavit concerning these matters," and (4) notify counsel of any inquiries relating to the matter. *See* Defs.' Rule 11 Mot., Ex. 3, ECF No. 39-4 [hereinafter Demand Letter]. Plaintiff's counsel stated in the letter that if Berlin failed to comply within 48 hours:

> [W]e will sue you and [Berlin's businesses, Investigative Consultants, Inc. ("ICI")] in federal court by filing the attached complaint . . . . And, we will take all appropriate steps and leverage our contacts in the media to mitigate the harm you have unfairly caused to our client's reputation with your false accusations, to put your prior clients on notice regarding ICI's fraudulent business model, and to prevent you from defrauding others with fake reports in the future.

*Id.* The "attached complaint" included various allegations involving Berlin's purported criminal activity and associations, his writing capabilities, and his wife's attitudes toward Berlin, in addition to allegations surrounding Berlin's alleged defamatory statements. *See generally* Order, ECF No. 14 [hereinafter Rule 12 Order].

Berlin refused to sign the retraction letter on the ground that it required him to refute allegations made by Eringer, which were beyond the scope of his knowledge. *See* Reply in Supp. of Defs.' Rule 11 Mot. & Defs.' 1927 Mot., ECF No. 44 [hereinafter Defs.' Reply], at 9–10. But he offered an alternative declaration confirming that the public databases he used to produce the Pitch had "inherent deficits," and that the information should not have been relied on "except where confirmed by secondary sources." *Id.*, Ex. 2, ECF 44-2, ¶ 5. That counteroffer was evidently unsatisfactory to Plaintiff, and this litigation commenced.

### B.     Procedural Background

In September 2018, Plaintiff filed this suit against Defendants, asserting two counts of libel *per se*. *See generally* Redacted Compl. & Demand for Jury Trial, ECF No. 20 [hereinafter Redacted Compl.]. Plaintiff asserted that Defendants were liable for the harm caused by their publication of the allegedly defamatory material in 2003, as well as the republication of that material in 2017. *See id.* ¶¶ 60–88. Shortly after Plaintiff initiated the lawsuit, the court struck various "immaterial, impertinent, [and] scandalous" allegations in his Complaint pursuant to Federal Rule of Civil Procedure 12(f), finding that the stricken passages sought "to cast Berlin in a sinister and pernicious light," "create a caricature of Berlin as devious and deceitful," and to "gratuitously take a swipe at Berlin's spouse." Rule 12 Order at 2–4.

After an initial round of briefing, the court granted summary judgment to Defendants regarding the 2017 republication claim, holding that Berlin could not have reasonably foreseen the republication at the time he published the Pitch in 2003. First Mem. Op. at 9. The court did not enter summary judgment as to the initial 2003 publication because a genuine question of material fact remained regarding whether the Plaintiff's claim was time-barred. *See id.* at 10–11. Following limited discovery on that issue, the court found that Plaintiff's claim as to the initial 2003 publication was time-barred and entered summary judgment in Defendants' favor on that issue.

*See* Mem. Op., ECF No. 37 [hereinafter Second Mem. Op.].   Defendants' two motions for sanctions followed thereafter.

## II.  Discussion

### A.      Defendants' Rule 11 Motion

"By presenting to the court a pleading, written motion, or other paper," an attorney or unrepresented party "certifies that" the filing "is not being presented for any improper purpose," and that "the claims, defenses, and other legal contentions are warranted."  Fed. R. Civ. P. 11(b). "If . . . the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction" for the violation.  Fed. R. Civ. P. 11(c).  "[T]he central purpose of Rule 11 is to deter baseless filings."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  "Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings, or that are filed to harass another party."  *In re Carvalho*, 598 B.R. 356, 363 (D.D.C. 2019) (cleaned up).

Defendants assert that the Complaint was filed for the improper purpose of "blackmail[ing] the Defendants into, *inter alia*, signing a false statement proclaiming Mr. Berlin knew that Plaintiff was not guilty of money laundering, espionage, and other misdeeds."  Defs.' Rule 11 Mot. at 1–2. Defendants identify four points that they say evince this improper purpose.  First, they point to the prelitigation demand letter, which they say constitutes "criminal blackmail" and demonstrates that "Plaintiff and his lawyers' purpose was to use this Court as leverage, with their inflammatory complaint as a fulcrum, to further their scheme of intimidation and character assassination against Mr. Berlin."  *See id.* at 3–4, 9.  Second, they contend that Plaintiff's service of that letter on Berlin's spouse, Kimberley Berlin, at her place of business is "additional evidence that Plaintiff and his counsel were not seeking a lawful resolution of their claims but rather hoped to scare both Mr. Berlin and his wife into accepting a resolution on Plaintiff's terms."  *Id.* at 5–6, 9.  Third, they

argue that because this court "struck [inappropriate] allegations pursuant to Rule 12(f), they are sanctionable under Rule 11(b)(1)'s prohibition of filings for an improper purpose." *Id.* at 5–6, 8–9.  And fourth, they contend that "Plaintiff's filing of a non-meritorious complaint evidences that some purpose other than recovering on a deserving claim was at the heart of this action." *Id.* at 9–10.  The court considers each argument in reverse order.

### 1. Plaintiff's Non-Meritorious Complaint.

Defendants argue that "the Complaint's lack of merit . . . demonstrates Plaintiff['s] improper purpose" in bringing this action. *Id.* at 9 (cleaned up).  Not so.  In particular with respect to the 2003 publication of the Pitch, the parties vigorously debated whether the District of Columbia's discovery rule tolled the statute of limitations regarding the 2003 publication, and Plaintiff advanced colorable (though ultimately unsuccessful) arguments to this effect.  *See* Second Mem. Op. at 6–15.  Plaintiff's contentions, which he has taken on appeal, *see* Not. of Appeal, ECF No. 42, were a far cry from frivolous.  Indeed, Defendants do not even argue as much.  *See* Defs.' Rule 11 Mot. at 10 ("[W]e do not seek sanctions under Rule 11(b)(2) or (3) for unsupported factual or legal claims . . . .").  Simply prevailing in an action is no basis to impute improper motives for the filing of a complaint.

### 2. Allegations Struck Pursuant to Rule 12(f).

Next, Defendant argues that "[b]ecause the Court struck [the allegations] pursuant to Rule 12(f), they are sanctionable under Rule 11(b)(1)'s prohibition of filings for an improper purpose." *Id.* at 9.  However, Rule 11's safe harbor provision requires that the non-movant be given notice and 21 days to withdraw the challenged filing before a sanctions motion may be filed, and the motion "must not be filed" if the challenged paper is withdrawn or "appropriately corrected" within that timeframe.  *See* Fed. R. Civ. P. 11(c)(2).  Defendants did not serve their motion on Plaintiff until November 2, 2018, well after the court struck the allegations pursuant to Rule 12.  *See* Defs.'

Rule 11 Mot. at 1 n.1; Rule 12 Order.  Accordingly, the allegations were already "appropriately corrected" by the time Defendants served their motion on Plaintiff, and so Defendants cannot seek sanctions for these allegations.

> 3. *Service of the Prelitigation Demand Letter on Ms. Berlin.*

Next, Defendants take umbrage with Plaintiff's decision to serve the prelitigation demand letter on Defendant Berlin's spouse, Kimberley Berlin, at her place of business.  *See* Defs.' Rule 11 Mot. at 5–6, 9.  According to Ms. Berlin, a licensed social worker, she was seeing a patient in her Leesburg, Virginia office when the session was interrupted by "incessant banging" on the office door.  *Id*, Ex. 1, ECF No. 39-2, ¶¶ 3–4.  When she opened the door, "a man . . . appeared from the shadows in a basement area," handed her the prelitigation demand letter, and told her in an "extremely aggressive and intimidating" tone to give the papers to her husband, ominously forecasting that they likely contain "things about him that I am sure you did not know."  *Id.* ¶¶ 5–7.

Defendants argue that this "cruel[] and deliberate[] . . . ambush delivery" was "no mere messenger delivery, but a despicable effort to intimidate, scare, and embarrass an innocent woman and disrupt her business."  Defs.' Rule 11 Mot. at 5–6.  However, Plaintiff only served the papers on Ms. Berlin after unsuccessfully attempting to serve them on Defendants' place of business and Berlin's personal residence.  *See* Pl.'s Opp'n to Defs.' Mot. for Sanctions, ECF No. 41 [hereinafter Pl.'s Opp'n], at 10–11; *see also id.*, Decl. of Daniel Watkins, ECF No. 41-4, ¶ 4; *id.*, Decl. of Ise Tiapula, ECF No. 41-5, ¶¶ 4–5, 7.  Furthermore, Ms. Berlin is an officer of Defendant Investigative Consultants, Inc., *see* Defs.' Reply at 8, and Virginia law permits "personal service on any officer, director, or registered agent of such corporation," Va. Code § 8.01-299.  Though Defendants note that provision of the Virginia Code applies only to formal legal process, *see* Defs.' Reply at 8, there is no basis for Defendants' assertion that a prelitigation demand letter should be held to a

different, more polite standard.  *See id.* (arguing that "Plaintiff has given no reason why delivery of the letter to Mr. Berlin by Fed Ex or email was insufficient.").  As for the process server's allegedly "aggressive and intimidating" behavior, even accepting as true Ms. Berlin's somewhat theatrical recount of events, such conduct is not a basis to impute an improper motive to Plaintiff's filing of his complaint.

### 4.    *Plaintiff's Prelitigation Demand Letter.*

Finally, Defendants point to the prelitigation demand letter itself as evidence of Plaintiff's improper purpose in filing the Complaint.  They note that the letter included a draft of the Complaint, including the same allegations which the court later struck pursuant to Rule 12, *see* Defs.' Rule 11 Mot. at 3, and highlight that "[i]f Mr. Berlin did not agree to their demands, Plaintiff's counsel threatened not only to file the complaint, but also to 'leverage [their] contacts in the media' to damage or destroy Mr. Berlin's business by publicizing their scandalous, irrelevant and baseless allegations to Mr. Berlin's past and prospective clients," *id.* at 4.  In Defendants' view, these threats demonstrate Plaintiff's and his lawyers' "obvious motivation to use this Court as part of a scheme to commit criminal blackmail."  *Id.*  Plaintiff retorts that "sending a pre-litigation demand letter does not evidence an 'improper purpose,' even when the letter airs grievances, threatens litigation, and predicts the adverse consequences," and that such letters are particularly appropriate in defamation cases such as this one in which Defendants' refusal to publish a retraction may provide evidence of actual malice.  *See* Pl.'s Opp'n at 8–9.  The court agrees with Plaintiff.

First, the court cannot conclude that Plaintiff and his counsel filed the Complaint with an improper purpose simply because they included the draft Complaint along with the prelitigation demand letter.  "[P]relitigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do not suffice to show an

improper purpose if nonfrivolous litigation is eventually commenced." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995). Although, in this case, the court ultimately concluded that various allegations in the Complaint were included for improper purposes, *see* Rule 12 Order,[1] it does not follow that the Complaint *itself* was filed for an improper purpose. To the contrary, the fact that Plaintiff's Complaint raised non-frivolous claims is strong evidence that it was not filed for improper purposes. *See Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.3d 178 (D.C. Cir. 1980) (observing that "the presence of merit in a claim or defense may well negate any notion of bad faith in its filing"); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc) (noting that "evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose").[2] Furthermore, the court has already stricken the allegations that Defendants bemoan, *see* Rule 12 Order, and so they cannot be sanctioned under the safe harbor provision of Rule 11. *See* Fed. R. Civ. P. 11(c)(2). It would amount to an impermissible workaround of that provision to sanction Plaintiff for including the allegations in an unpublished draft of his Complaint when the filed allegations themselves cannot be sanctioned.

That leaves Plaintiff's counsel's threats to "take all appropriate steps and leverage our contacts in the media . . . to put your prior clients on notice regarding ICI's fraudulent business model, and to prevent you from defrauding others with fake reports in the future." Demand Letter. This, too, is not sanctionable. "Mere warnings by a party of its intention to assert nonfrivolous claims, with predictions of those claims' likely public reception, are not improper." *Sussman*, 56

---

[1] Portions of the court's Rule 12 Order arguably suggest that some of Plaintiff's motivations for filing the Complaint may have also been improper, but that was not an issue that was before the court at the time.

[2] Indeed, several circuits have interpreted Rule 11 to prohibit sanctioning a person for filing a complaint that raises non-frivolous claims, even if "one of [the plaintiff's] multiple purposes in seeking that relief may have been improper." *See Sussman*, 56 F.3d at 459; *see also Townsend*, 929 F.2d at 1362; *Nat'l Ass'n of Gov't Emps, Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 224 (5th Cir. 1988); *Burkhart v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988).

F.3d at 459.  As discussed, Plaintiff asserted at least one colorable claim of defamation, which was largely premised on the factual assertions regarding Defendants' business practices outlined in the Demand Letter.  *Compare* Demand Letter (asserting that "we have concluded that you and your web of corporate entities doing business as Investigative Consultants, Inc. ("ICI") have systematically and deliberately defrauded clients into purchasing worthless background reports containing fake accusations about targeted individuals"), *with* Redacted Compl. ¶¶ 2–3, 14, 68 (making similar allegations in the context of Plaintiff's libel claims).  Thus, it was not improper for Plaintiff to threaten to publicize these allegations and predict their "likely . . . reception" with Defendants' clients, particularly given that Plaintiff never directly contacted Defendants' clients or otherwise interfered with Defendants' businesses.  *Sussman*, 56 F.3d at 459; *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 81 (2d Cir. 2000) (reversing the district court's finding that counsel's "threat[] to interfere with the Firm's other clients provide[d] a basis for sanctions" in part because counsel never directly contacted the clients (cleaned up)); *cf. Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 324–25 (S.D.N.Y. 2016) (holding that a plaintiff's counsel's "references to potentially embarrassing litigation" in a prelitigation demand letter and email were not extortionary where they were "part of a larger endeavor to obtain recompense for a perceived wrong" (cleaned up)).

Defendants contend that "counsel's letter is no mere prediction of what the press will do," but rather is "an express statement that counsel themselves, on behalf of Plaintiff, will publicize the facts asserted in the complaint."  Defs.' Reply at 6.  But there is no meaningful legal distinction between "mere predictions" about the consequences of filing a colorable action, and active communications with the press, coupled with such predictions.  *See Revson*, 221 F.3d at 80–81 (holding that "[g]iven that at least some of [the plaintiff's] claims were colorable, [plaintiff's counsel's] threat to make the claims public, *and his speaking to a reporter about them*, did not

provide a basis for sanctions" (emphasis added)).  Indeed, "unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications."  *Sussman*, 56 F.3d at 459.  Accordingly, apart from the stricken allegations (which the court has already determined are not sanctionable), there was nothing improper about Plaintiff's counsel's "express statement" that they would "publicize the facts asserted in the complaint."  Defs.' Reply at 6.

Therefore, the court denies Defendants' Motion for Rule 11 Sanctions.

## B.    Defendants' § 1927 and Inherent Authority Motion

Defendants separately seek sanctions under 28 U.S.C. § 1927 and the court's inherent authority.  *See generally* Defs.' 1927 Mot.  Their arguments largely overlap with their Rule 11 motion, *see id.* at 2, 8–9, and the court rejects them for the same reasons already discussed.

Defendants' motion offers one unique argument for § 1927 sanctions against Plaintiff's counsel:  that counsel allegedly misled the court in the course of the initial round of summary judgment briefing.  *Id.* at 4–7.  The problem, as Defendants see it, was with Plaintiff's counsel's responses to two of Defendants' statements of material facts not in dispute, in which Defendants asserted that Plaintiff was previously aware of two of Eringer's previous publications that included allegations derived from the Pitch.  *See* Defs.' Stmt. of Material Facts, ECF No. 21-8 [hereinafter Defs.' SOMF], ¶¶ 12–13.  These assertions were relevant to the question of whether Plaintiff's claim for libel stemming from the initial 2003 publication of the Pitch was barred by the one-year statute of limitations.  Instead of confirming or denying that Plaintiff was aware of the publications, however, Plaintiff's counsel responded that there was "[c]ontroverting [e]vidence," noting that neither publication "mention[s] Berlin, Investigative Consultants, Inc. or ICI."  *See* Pl.'s Objections & Responses to Defs.' Asserted Facts, ECF No. 22 [hereinafter Pl.'s Resp. to Defs.'

SOMF], at PDF pp. 40–41 ¶¶ 12, 13.

Based upon these representations, the court initially held that it could not conclude as a matter of law that Plaintiff's claim arising from the Defendants' 2003 publication of the Pitch was time-barred, because "Plaintiff does not concede" that he "actually knew about any of the [Eringer] publications in question." First Mem. Op. at 10.  After a "limited phase of discovery" on this issue, *id.*, Plaintiff confirmed that he was indeed aware of Eringer's publications, *see* Pl.'s Resp. to Defs.' Requests for Admission, ECF No. 32-3, at 1–2, and following a second round of summary judgment briefing, the court ultimately concluded that Plaintiff's claim was time-barred, *see* Second Mem. Op.

Defendants now assert that Plaintiff's counsel's "evasive and false assertion that there was controverting evidence" regarding Defendants' statements of undisputed material fact needlessly precipitated a second round of summary judgment briefing and caused Defendants to expend an additional $50,000 to litigate the issue.  Defs.' 1927 Mot. at 4 (cleaned up).  Plaintiff's counsel, on the other hand, insist that Plaintiff's "position in his summary judgment briefing was truthful and clear:  Eringer's previous publications did not identify Defendants."  Pl.'s Opp'n at 3–4.  While Plaintiff's counsel appear to be mistaken about the form and function of statements of undisputed material facts, that mistake does not justify sanctions under 28 U.S.C. § 1927.

A court may assess attorney's fees against "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  "While the District of Columbia has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be recklessness or the more stringent bad faith, an attorney's behavior must be at least reckless to be sanctionable."  *Lima Lucero v. Parkinson Constr. Co., Inc.*, No. CV 18-515 (RC), 2020 WL 4464497, at *6 (D.D.C. Aug. 4, 2020) (internal quotation marks omitted) (quoting

*LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998)).  Recklessness in this context is a "high threshold," which only encompasses "repeated or singularly egregious" behavior.  *United States v. Wallace*, 964 F.2d 1214, 1219–20 (D.C. Cir. 1992).  A court should not "use Section 1927 to penalize an attorney who might be guilty of no more than a mistake in professional judgment" or "even negligent conduct."  *Huthnance v. District of Columbia*, 793 F. Supp. 2d 177, 181 (D.D.C. 2011) (cleaned up).

 Plaintiff's counsel's actions do not rise to the level of reckless.  In Plaintiff's response to Defendants' Statement of Material Facts, his counsel did not affirmatively deny that Plaintiff was aware of Eringer's previous publications.  Indeed, Defendants themselves noted in their reply in support of their initial motion for summary judgment that "Plaintiff does not dispute that he knew or should have known of Eringer's allegedly false claims more than a year before he filed suit." Defs.' Reply in Supp. of Their Mot. to Dismiss or in the Alternative for Summary Judgment, ECF No. 23, at 22.  Rather, counsel simply offered a different, "[c]ontroverting," fact—that Eringer's publications did not mention Berlin or his companies, Pl.'s Resp. to Defs.' SOMF at PDF pp. 40–41 ¶¶ 12–13—in support of Plaintiff's argument that a "plaintiff's knowledge of wrongdoing on the part of one defendant does not cause accrual of his action against another, unknown defendant responsible for the same harm," *see* Pl.'s Opp'n at 3–4 (cleaned up).

 Plaintiff's counsel should have either admitted or refuted Defendants' factual assertions, reserving Plaintiff's separate factual assertions for his own statement of material facts, and his legal arguments for his brief.  *See* Fed. R. Civ. P. 56(c) (detailing the procedures for responding to assertions of undisputed material facts); *Pitts v. Howard Univ.*, 111 F. Supp. 3d 9, 13 (D.D.C. 2015) (explaining that "[o]rdinarily, a Statement of Undisputed Material Facts consists of just that—facts, which are in turn supported by reference to testimony and documentation in the record," and that legal "contentions" have no place in such a filing).  Their failure to directly

answer Defendants' assertions in their haste to advance Plaintiff's own arguments was misguided. However, this simple "mistake in professional judgment" does not justify § 1927 sanctions. *Huthnance*, 793 F. Supp. 2d at 181.  There is no indication that Plaintiff's counsel otherwise attempted to unreasonably or vexatiously multiply the proceedings.  Indeed, after the court ordered limited discovery on the issue of Plaintiff's knowledge of the Eringer publications, Plaintiff's counsel responded to Defendants' requests for admissions within five days of their receipt.  *See* Pl.'s Opp'n at 4.  Thus, sanctions are unwarranted, as counsel's mistake was neither "singularly egregious" nor "repeated."  *Wallace*, 964 F.2d at 1220; *cf. Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137, 1138–39 (D.C. Cir. 1986) (awarding sanctions where counsel had repeatedly and steadfastly refused—both in the trial court and at several turns on appeal—to identify the disputed facts that he contended required a trial of the case).

### III.  Conclusion

In sum, Defendants have not shown that the Complaint was filed for an improper purpose or that Plaintiff's counsel unreasonably or vexatiously multiplied the proceedings.  Accordingly, Defendants' motions for sanctions, ECF Nos. 39 and 40, are denied.

This is a final, appealable order.


Dated:  September 18, 2020

_____
Amit P. Mehta
United States District Judge