## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER CHANDLER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | )   **Case No. 1:18-cv-02136-APM** |
| DONALD BERLIN, *et al*., | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| ———————————————— | ) |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE THE AMENDED COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff Christopher Chandler hereby respectfully moves this Court for an order granting leave to file the proposed Amended Complaint. Pursuant to Local Civil Rule 7(m), Plaintiff conferred with counsel for Defendants before filing this Motion, and Defendants intend to oppose Plaintiff's request. This Motion is accompanied by a Memorandum of Points and Authorities, the proposed Amended Complaint (Ex. A) and a redline comparison of the Complaint and proposed Amended Complaint (Ex. B). A proposed Order is filed herewith. Plaintiff respectfully requests an oral hearing on this motion.

Dated: September 7, 2022

Respectfully Submitted,

/s/ *Daniel P. Watkins*

Thomas A. Clare, P.C.
Megan L. Meier
Daniel P. Watkins (*pro hac vice*)
Nicholas J. Brechbill
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: megan@clarelocke.com
Email: daniel@clarelocke.com
Email: nick@clarelocke.com

*Attorneys for Plaintiff*

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that Plaintiff's Motion for Leave to File the Amended Complaint was filed using the Court's CM/ECF system and was served on all counsel of record.

September 7, 2022                                    /s/ *Daniel P. Watkins*

                                                   Daniel P. Watkins (*pro hac vice*)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTOPHER CHANDLER,                )
                                     )
            *Plaintiff*,             )
                                     )
        v.                           )          **Case No. 1:18-cv-02136-APM**
                                     )
DONALD BERLIN, *et al*.,             )
                                     )
            *Defendants*.            )
                                     )
_____     )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE THE AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Table of Authorities .................................................................................................... ii

**Introduction** ........................................................................................................... 1

**Background** ............................................................................................................ 4

**Argument** .............................................................................................................. 9

    **The Efficient Administration of Justice Requires That Mr. Chandler Be Given Leave to File the Amended Complaint.** ............................................................. 9

        A.    Amendment would not be futile because, if anything, the Amended Complaint is stronger than the original Complaint. ........................................ 9

        B.    Amendment would not cause Defendants to suffer substantial prejudice—the delay in moving to amend was caused by Defendants. ................................ 14

**Conclusion** ........................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................9

*Banneker Ventures, LLC v. Graham,*
   798 F.3d 1119 (D.C. Cir. 2015).....................................................................9

*Butler v. White,*
   67 F. Supp. 3d 59 (D.D.C. 2014)....................................................................9

*Clark v. Feder Semo & Bard, P.C.,*
   560 F. Supp. 2d 1 (D.D.C. 2008)...........................................................14, 15

*Dist. of Columbia v. Carlson,*
   793 A.2d 1285 (D.C. 2002) ..........................................................................13

*Does I through III v. Dist. of Columbia,*
   815 F. Supp. 2d 208 (D.D.C. 2011)..............................................................14

*Foman v. Davis,*
   371 U.S. 178 (1962) ......................................................................................14

*Herbert v. Lando,*
   441 U.S. 153 (1979) ......................................................................................11

*Houlahan v. Freeman Wall Aiello,*
   15 F. Supp. 3d 77 (D.D.C. 2014)..................................................................12

*James Madison Ltd. v. Ludwig,*
   82 F.3d 1085 (D.D.C. 1996)...........................................................................9

*Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100,*
   698 F.2d 250 (6th Cir. 1983) ........................................................................14

*Mazur v. Szporer,*
   No. 03-CV-00042, 2004 WL 1944849 (D.D.C. June 1, 2004) ....................13

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ......................................................................................11

*Norris v. Salazar,*
   746 F. Supp. 2d 1 (D.D.C. 2010)..................................................................15

*Oparaugo v. Watts,*
   884 A.2d 63 (D.C. 2005)...............................................................................13

*Paavola v. United States*,
    459 F. Supp. 3d 21 (D.D.C. 2020)...................................................................................13

*Phillips v. Evening Star Newspaper Co.*,
    424 A.2d 78 (D.C. 1980) ...............................................................................................10

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987)........................................................................................12

*US Dominion, Inc. v. Byrne*,
    No. 1:21-CV-02131, 2022 WL 1165935 (D.D.C. Apr. 20, 2022) ...........................10, 12

*Wengui v. Li*,
    No. 18-CV-259, 2019 WL 2288348 (D. Md. May 29, 2019) .........................................13

*Wengui v. Li*,
    No. 18-CV-259, 2020 WL 2563184 (D. Md. Feb. 4, 2020).............................................13

*White v. WMATA*,
    303 F. Supp. 3d 5 (D.D.C. 2018)......................................................................................9

*Zimmerman v. Al Jazeera Am., LLC*,
    246 F. Supp. 3d 257 (D.D.C. 2017)............................................................................11, 12

**Other Authorities**

Restatement (Second) of Torts § 571, cmt.g ...................................................................13

## INTRODUCTION

Mr. Chandler filed this lawsuit almost four years ago after learning that Donald Berlin and the companies he controls falsely accused him and his brother of money laundering, working on behalf of Russian organized crime groups, tortiously interfering with NRB's relationship with Credit Agricole, and related acts of corruption and espionage. (Compl., *passim*, ECF No. 20.)  He respectfully requests leave of Court to file an amended complaint to add one count of defamation for an additional false and defamatory report Defendants published.

For almost four years, Defendants claimed—in sworn declarations and verified discovery responses—that: (1) work concerning the Chandler brothers was limited to a document they published in 2003 (the "Pitch"), (2) they did not foresee or authorize that the Pitch would be shared with anyone other than Robert Eringer, and (3) they had been unable to produce documents concerning the work they completed for Eringer.  But Donald Berlin admitted that all three contentions are false during his deposition last month.

Berlin testified that he published two additional documents about the Chandler brothers for a journalist named Robert Eringer and Eringer's "ultimate client."  Berlin also admitted that he and Eringer coordinated to try to monetize these documents by selling them to the highest bidder.  A few months ago, Berlin produced some January 2018 emails with Eringer describing these Chandler documents as "a treasure trove" because they were potentially "helpful to [then-President Trump] in someway; or unhelpful and bad for Chris[topher] Steele and Fusion GPS."  D. Watkins Aug. 29, 2022 Decl. Ex. 8.

## Re: The BROTHERS

| | |
|---|---|
| From | **Donald Berlin** <dberlin@icioffshore.com> |
| To | **Robert Eringer** <eringer33@aol.com> |
| Sent | Saturday, January 20, 2018 at 12:14 PM |
| Encrypted | No |
| Signed | No |

R

Book writing and wonderings is definitely your side of the street - I am only good for catchy quips.

Meanwhile, let's talk over the phone when able today.

I have some potential ideas over how to better monetize this, assuming what I shared before: it's either helpful to POTUS in someway; or unhelpful and bad for Chris Steele and Fusion GPS.

I would have to get a better sense of how the puzzle box looks.

Send me your Mud Line - sorry Cell Line.

Best Regards,

Donald M. Berlin
CEO/Chairman of the Board
Investigative Consultants, Inc.

(To date, Berlin has been unable to explain any connection between the files about the Chandlers and Donald Trump or Christopher Steele.  Because none exists.)  The full extent of these communications will never be known because Berlin claims not to remember the contents of his messages with Robert Eringer that he deleted and failed to preserve in violation of his discovery obligations in this case.  A short time after sending this email, Berlin contacted one of Trump's allies, Rich Higgins— a former Pentagon official who served as Director of Strategic Planning for the National Security Council—to try to sell the disinformation about Mr. Chandler.  (Berlin Aug. 16, 2022 Tr. 47:25-51:6.)[1]

Despite testifying that he and Eringer tried to profit off of Berlin's manufactured claims about Mr. Chandler, Berlin also admitted, under oath, that the accusations he raised against Mr. Chandler

---

[1] This memorandum cites various portions of testimony from the Mr. Berlin's two-day deposition and Mr. Eringer's deposition.  The cited excerpts of these transcripts are attached as Exhibits 4-5 and 6, respectively, to the August 29, 2022, Declaration of Daniel P. Watkins.

were unverified, uncorroborated, and untrue.[2]  He testified that third parties never should have relied

on his reports because the accusations he published about the Chandlers are not accurate.[3]  With this

testimony, Mr. Berlin joins a long list of people who have acknowledged that the accusations against

Mr. Chandler are false.[4]

These damning admissions concerning Defendants' additional publications about

Mr. Chandler are complete reversals from Defendants' yearslong positions in this litigation.

Defendants repeatedly represented to this Court—and to the D.C. Circuit—that their only work for

Eringer concerning the Chandlers was publishing a single report.[5]  D. Watkins Aug. 29, 2022 Decl.

Ex. 11 (Berlin Decl. in Support of Mot. for Summ. J. (Oct. 24, 2018) ¶¶ 3-4, ECF No. 21-9 (The

Pitch "*is the only document that I created concerning Mr. Chandler*," and "I performed no

additional work for Eringer – or anyone else – concerning the Chandlers.").)   Defendants'

---

[2] D. Berlin Aug. 16, 2022 Tr. 55:4-8 ("Q You provided unverified information that had not been corroborated regarding Mr. Chandler committing various misconduct, including crimes, to Mr. Eringer, back in the early 2000s, right? A Correct."); 145:19-146:2 ("Q Mr. Berlin, yesterday you testified that the proposal, the Limited Report, and the addendum were not verified or confirmed by you?  A Correct. Q So what I'm asking you right now is particular allegations within those documents.  You already testified none of it was verified and none of it was corroborated, correct? A Correct."); 147:22-151:5 (confirming that Berlin could not testify that the accusations against Mr. Chandler are true).  *See also* D. Watkins Aug. 29, 2022 Decl. Ex. 14 at 1.
[3] D. Berlin Aug. 16, 2022 Tr. 151:6-14 ("Q If you found out that a third-party relied on these accusations that we just went through and repeated them as though they were true, what would your reaction be?  A I don't have a reaction.  I would say they shouldn't have done that.  Q Why?  A Because they're not verified as having been accurately reported.")
[4] D. Watkins Aug. 29, 2022 Decl. Exs. 1-3. *See* Peter Walker, "Chris Bryant to admit billionaire money-laundering claims were wrong: Labour MP will accept in court that Commons comments about financier Christopher Chandler, that he later tweeted, were untrue," *The Guardian* (July 27, 2022), https://www.theguardian.com/politics/2022/jul/27/chris-bryant-admit-billionaire-money-laundering-claims-wrong; Iana Dryer, "Editor Statement on Legatum Institute," *Borderlex* (July 24, 2017), https://borderlex.net/2017/07/24/editor-statement-legatum-institute/; "Christopher Chandler – Correction and Apology: 4 February 2018," *Daily Express* (Feb. 4, 2018), https://www.express.co.uk/news/clarifications-corrections/913608/christopher-chandler-legatum-russia-apology.
[5] Mr. Berlin agreed to correct his past declarations containing these misrepresentations (D. Berlin Aug. 16, 2022 Tr. 131:10-21) but he has failed to do so as of the filing of this memorandum.

representations were false, and Defendants spent years concealing the two additional documents they created and their efforts in 2018 to sell the libels at the center of this case.

Mr. Chandler's proposed amendments relate directly to Defendants' misrepresentations.[6] Specifically, Mr. Chandler seeks leave to amend his complaint, for the first time, to add one count of libel based on an additional document that Defendants published falsely accusing Mr. Chandler of money laundering and Russian espionage, among other things. The Court should grant the motion because justice so requires and the proposed amendments will not unduly prejudice Defendants.

## BACKGROUND

On September 14, 2018, Mr. Chandler filed this lawsuit against Donald Berlin and entities he owns, operates, and controls—Investigative Consultants, Inc. and Investigative Consultants, Inc. of Washington, D.C. (together, "ICI")—based on false and defamatory statements in a February 2003 report titled "INTRODUCTION AND OVERVIEW RICHARD CHANDLER LIMITED GLOBAL SCAN" (the "Pitch"). (Compl., ECF No. 20.) Berlin published the Pitch to Robert Eringer, who was a journalist at the time. Eringer then republished the Pitch to Prince Albert II—the "ultimate client" for whom the Pitch was commissioned—and several years later, in 2017, to the British media. (Eringer Tr. 21:2-4; 193:4-24; 218:9-18.)

Defendants moved to dismiss the Complaint, arguing that Mr. Chandler's claims relating to Berlin's initial publication to Eringer in 2003 were time barred and that Eringer's 2017 republication of the Pitch was not reasonably foreseeable. (Defs.' Mot. to Dismiss (Oct. 25, 2018), ECF No. 21.) Berlin submitted a sworn declaration averring under penalty of perjury that (1) the Pitch was "the only document that [Berlin] created concerning the Plaintiff"; (2) he "performed no additional work for Eringer – or anyone else – concerning the Chandlers"; and (3) he "did not give permission,

---

[6] Mr. Chandler's Proposed Amended Complaint also includes minor amendments based on newly discovered facts as reflected by **Exhibit B**, which provides a redline comparison between Mr. Chandler's original Complaint and his proposed Amended Complaint.

authorize, know, or foresee that Mr. Eringer or anyone else would disclose the [Pitch] to any third party."  (Berlin Decl. in Support of Mot. for Summ. J. (Oct. 24, 2018), ECF No. 21-9.)[7]

Relying in part on Berlin's averments, the Court granted Defendants' motion as to Mr. Chandler's claims premised on Eringer's 2017 republication of the Pitch.  (*See* Mem. Op. & Order at 1-2, 3 (Apr. 3, 2019), ECF No. 24 ("Berlin asserts that he did not 'give permission, authorize, [or] know' that Eringer would disclose the Pitch to the Prince of Monaco or any other third party).) *See* Berlin Decl., ECF No. 21-9 [hereinafter Berlin Decl.], ¶¶ 7–8.  Plaintiff offers no facts to dispute that contention.").)  The Court denied Defendants' motion as to claims arising from Berlin's 2003 publication of the Pitch to Eringer.  (*Id*. at 2.)

From the outset of this case, Defendants represented they had no documents in their possession, custody, or control relevant to the work they completed for Eringer related to Mr. Chandler.  (Defs.' July 22, 2019 Suppl. Resp. to Pl.'s First Set of RFPs at 2.)[8]  These representations were false.  Defendants had the ability to obtain the documents, as evidenced by Berlin's January 2018 correspondence with Eringer concerning their efforts to sell these very same documents because they could be "helpful to [Donald Trump]."[9]  The full extent of the coordination between Eringer and Berlin will never be known because he deleted relevant communications and chose to communicate with Eringer about facts relevant to this case over Signal—an encrypted platform that he knew would delete their messages.  (D. Berlin Aug. 16, 2022 Tr. 8:1-12:25.)

A few weeks after the Court ordered limited discovery, Plaintiff sought, unsuccessfully, to serve Eringer with a subpoena for the production of documents.  (D. Watkins Sep. 6, 2019 Decl. ¶ 10, ECF No. 34-3.)  Eringer successfully evaded service of the subpoena, and a short time later he mailed a copy of his latest book to counsel for Plaintiff.  (*Id*. ¶ 6.)  Plaintiff retained "several private

---

[7] D. Watkins Aug. 29, 2022 Decl. Ex. 11.
[8] *Id.* at Ex.12
[9] *Id.* at Ex. 8.

investigators" who spent dozens of hours attempting to locate Eringer and serve him.  But these efforts were unsuccessful.  (*Id.* ¶ 10.)

In August 2019, Defendants again moved for summary judgment on statute of limitations grounds after failing to produce key responsive documents that were in their possession, custody, and control.  (Defs.' Renewed Mot. for Summ. J. (Aug. 20, 2019), ECF No. 32.)  The Court granted Defendants' motion and dismissed the case.  (*See* Mem. Op. (Jan. 30, 2020), ECF No. 37.)  Plaintiff appealed, and the U.S. Court of Appeals for the D.C. Circuit reversed that dismissal.

The case was remanded on July 6, 2021.  Although Eringer repeatedly evaded service of Plaintiff's subpoena (in 2019, 2021, and 2022), he ***voluntarily*** invited Defendants' counsel to his home, showed Defendants' counsel hard-copy documents concerning the Chandlers (including the documents that Berlin and Eringer discussed selling to benefit Trump), and allowed Defendants' counsel to copy those documents.  (Eringer Tr. 102:1-10, 103:8-11, 103:22-104:9.)  Defendants' counsel reviewed Eringer's documents and selectively copied documents that he "chose from among the ones that [Eringer] showed [him] that dealt with Mr. Chandler."  (Eringer Tr. 238:12-16.)  Defendants' counsel produced their self-selected subset of documents from Eringer in October 2021.  (Eringer Tr. 235:18-25.)  This consisted of 91 pages of largely undated documents with missing pages and no metadata or other information about how, when, why, or by whom they were created.  Among this hodgepodge of documents, however, was another report apparently prepared by Defendants and published in October 2002—a "proposal for investigative services regarding" the Chandlers (the "Proposal").  Like the Pitch, the Proposal falsely accuses the Chandlers of engaging in illegal activities and being "front men" and "financiers" for Russian organized crime.  This was the first time Mr. Chandler had ever seen or heard of the Proposal.  Indeed, Berlin had falsely sworn under penalty of perjury the Pitch was the only document Berlin ever published to Eringer concerning the Chandlers.  (Berlin Decl. in Support of Mot. for Summ. J. (Oct. 24, 2018) ¶¶ 3-4, ECF No. 21-9.)

Defendants' discovery requests likewise falsely represented that the Pitch was the only document about the Chandlers that Defendants had ever published.  (D. Watkins Aug. 29, 2022 Decl. Ex. 12.)  (Those discovery requests were supplemented in late April and May 2022 (D. Watkins Aug. 29, 2022 Decl. Exs. 13 and 14).)

After Plaintiff learned that Eringer possessed additional relevant documents that had not been produced, Plaintiff again sought to serve Eringer with a document subpoena.  (D. Watkins Aug. 29, 2022 Decl. ¶ 3.)  Plaintiff went to great lengths to try to locate Eringer and effect service, including hiring private investigators to physically surveil him.  (*Id.*)  However, Eringer evaded service yet again.  While Plaintiff was attempting to locate and serve him, Eringer text messaged Defendants' counsel a picture of himself standing outside of Plaintiff counsel's office.



*Id.* at Ex. 9.  Defendants' counsel replied by referring to Eringer as a "smartass."  (*Id.*)  Defendants' counsel was aware of Eringer's efforts to evade service back in 2019, but it was almost three years later and ***after*** Eringer was deposed, Defendants' counsel wrote to Eringer in April 2022: "I think you should let them serve you."  *Id.*

In April 2022, Defendants produced additional documents from Eringer.  This production contained yet another report prepared by Defendants and published to Eringer of which Mr. Chandler was unaware.  This report, titled "RICHARD CHANDLER PARTIAL GLOBAL SCAN" (the "Addendum"), contains false accusations about Mr. Chandler and his brother.

The Court set a September 27, 2021 deadline for amending the complaint.  (Order (Aug. 26, 2021), ECF No. 53.)[10]  However, Mr. Chandler could not have amended his pleadings before the deadline because Defendants had falsely disclaimed the existence of—and failed to produce—the Proposal and Addendum until after that deadline had passed.  At his deposition on August 16, 2022, Berlin admitted that he knew Eringer had files on Mr. Chandler as early as January 2018.  (Berlin Aug. 16, 2022 Tr. 44:11-17, 110:22-11:2.)  In fact, Berlin and Eringer communicated with one another about how to "monetize" Eringer's "old files on The Brothers and the so-called Russia Connection" by selling them to help Donald Trump.  (D. Watkins Aug. 29, 2022 Decl. Ex. 8.)  Yet, Defendants concealed these files in 2019 during the limited discovery period even though they knew that Mr. Chandler had tried to subpoena Eringer, but was unable to, in part because Eringer was apparently in contact with Berlin about evading service.

---

[10] Seven days after the deadline passed, Defendants amended their initial disclosures to include Robert Eringer as a potential witness with "information relevant to the items discussed in the Limited Report; Plaintiff's business and personal conduct; and the limitations in the Limited Report." D. Watkins Aug. 29, 2022 Decl. Ex. 19, Defs.' October 4, 2021 Second Amended Initial Disclosures at 2.

**ARGUMENT**

**The Efficient Administration of Justice Requires That Mr. Chandler Be Given Leave to File the Amended Complaint.**

Federal Rule of Civil Procedure 15(a)(2) requires that leave to file an amended complaint be "freely give[n] when justice so requires." This "loose standard for allowing amendment," *Butler v. White*, 67 F. Supp. 3d 59, 66 (D.D.C. 2014), is readily satisfied here, as amendment is necessitated by Defendants' false representations to the Court concerning the existence of the additional defamatory publication about Mr. Chandler. Under the circumstances, amendment would not be futile or prejudice Defendants. *See White v. WMATA*, 303 F. Supp. 3d 5, 8 (D.D.C. 2018).

      **A.**      **Amendment would not be futile because, if anything, the Amended Complaint is stronger than the original Complaint.**

"Courts may deny a motion to amend a complaint as futile … if the proposed claim would not survive a [Rule 12(b)(6)] motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.D.C. 1996). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because this standard does not rise to the level of a "'probability requirement,'" *id.*, "a well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely,'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Here, Mr. Chandler has more than plausibly alleged the defamation claim he seeks to add.

To state a claim for defamation under District of Columbia law, a plaintiff must show: "that (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the statement without privilege to a third party; (3) the defendant's fault in publishing the statement [met the requisite standard]; and (4) publication of the statement caused the plaintiff special harm or the statement was actionable as a matter of law irrespective of special harm." *US Dominion,*

*Inc. v. Byrne*, No. 1:21-CV-02131, 2022 WL 1165935, at *3 (D.D.C. Apr. 20, 2022).  Plaintiff's

additional claim easily satisfies all four elements.

As to the first element (a false and defamatory statement about the plaintiff), throughout four

years of litigation, Defendants have never once disputed that the original Complaint plausibly alleged

that the accusations in the Pitch—which are similar to those in the Proposal—are false, defamatory,

and concern Mr. Chandler.  Defendants did not challenge the sufficiency of these allegations in their

first motion to dismiss.  Nor did they challenge them in their later motion for summary judgment.

Just as the original Complaint adequately pled that the challenged statements in the Pitch are false,

defamatory, and concern Mr. Chandler, the Amended Complaint adequately pleads that similar

statements about Mr. Chandler in the Proposal are likewise actionable.

As to the second element (publication to a third party), Defendants have stipulated that they

published the Pitch.  (Defs.' Supplemental Response to Request for Admission No. 2 (Apr. 27,

2022).)[11]  And Berlin admitted at his deposition that Defendants published the Proposal to Eringer in

2002, with the express understanding that the documents were prepared for Eringer's "ultimate

client"—*i.e.*, the Prince of Monaco.  (*See, e.g.*, D. Berlin Aug. 15, 2022 Tr. at 15:6-15, 113:3-115:5;

D. Berlin Aug. 16, 2022 Tr. at 174:23-175:24.)

As to the third element (fault),[12] the Amended Complaint (like the original Complaint)

plausibly alleges that Defendants acted with actual malice, which is relevant to Mr. Chandler's claim

for punitive damages.  (*See* Am. Compl. ¶¶ [64-67, 80-82, 95-98.)  Defendants did not dispute in

their motions to dismiss the original Complaint or for summary judgment that Mr. Chandler

adequately pled the necessary degree of fault.  Likewise, they cannot dispute now that the

---

[11] D. Watkins Aug. 29, 2022 Decl. Ex. 14.

[12] Because Mr. Chandler was a private person at the time the allegations were published, he only
needs to plead and prove that Defendants acted with negligence.  *Phillips v. Evening Star
Newspaper Co.*, 424 A.2d 78, 90 (D.C. 1980).

Amended Complaint also plausibly alleges fault that meets the requisite standard, especially because the record evidence of Defendant's malicious intent is overwhelming.

A libeler acts with "actual malice" by publishing a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown." *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 258 (D.D.C. 2017) (A plaintiff "can prove the defendant's subjective state of mind through cumulation of circumstantial evidence.").

Here, the record is replete with direct and circumstantial evidence that Defendants acted with actual malice. For example, at his deposition, Berlin testified that:

- The research he performed was not "intended … to be gospel," he did not "intend for third parties to repeat the contents of the Proposal, the [Pitch], and the Addendum as though the accusations in those documents were true," he does not "stand by" those statements, and he cannot testify that those statements are true (D. Berlin Aug. 15, 2022 Tr. at 116:18-117:15; D. Berlin Aug. 16, 2022 Tr. at 148:9-150:21, 194:7-15, 195:2-8) (D. Berlin Aug. 16, 2022 Tr. At 149:3-150:20); and

- He has never taken any steps to verify the information in the Proposal or the Pitch, even though he acknowledged the "inherent deficits" in the type of "open source data" on which he relied in compiling these reports (D. Berlin Aug. 15, 2022 Tr. at 107:6-17; D. Berlin Aug. 16, 2022 Tr. at 55:4-8, 145:19-146:2, 147:13-16, 147:22-25, 148:22-25).

Defendants have also refused to retract their false and defamatory accusations (*e.g.*, D. Berlin Aug. 15, 2022 Tr. at 113:3-115:1), despite knowing that Swiss authorities have confirmed Mr. Chandler's innocence (D. Watkins Aug. 29, 2022 Decl. Ex. 7), and numerous third parties, including media outlets and members of the British parliament, have retracted their false claims about Mr. Chandler (*e.g.*, D. Berlin Aug. 16, 2022 Tr. at 132:7-136:7). In fact, Berlin admitted that he feels no remorse for the harm caused by his publication of false and defamatory accusations about Mr. Chandler. Specifically, Berlin testified that he "[doesn't] care" that British media and British members of

Parliament received the defamatory accusations Defendants manufactured.  (D. Berlin Aug. 15, 2022 Tr. at 110:9-111:16.)

The prospect of financial gain also motivated Berlin to defame Mr. Chandler.  The Proposal and the Pitch quote prices ranging from about $4,500 to nearly $30,000 for various types of additional information Berlin could provide.  (D. Watkins Aug. 29, 2022 Decl. Ex. 10 (Complaint, Ex. 1 (Sept. 14, 2018), ECF No. 2-1).)  And in January 2018, Berlin and Eringer discussed various ways to "monetize" Eringer's files on the Chandlers—which included the Proposal, the Pitch, and the Addendum (collectively, the "False Reports")—by selling them to the highest bidder.  (D. Watkins Aug. 29, 2022 Decl. Ex. 8.)  In short, Defendants exhibited numerous hallmarks of actual malice.[13]

Finally, as to the fourth element (harm), the Amended Complaint plausibly alleges that Defendants made statements about Mr. Chandler that were defamatory *per se*.  Thus, Mr. Chandler does not need to plead special damages.  "To state a claim for defamation *per se*, the plaintiff must show that the defendant has falsely accused the plaintiff of particularly bad conduct … 'so likely to cause degrading injury to the subject's reputation that proof of that harm is not required to recover compensation.'"  *US Dominion, Inc*., 2022 WL 1165935, at *3.  Defendants have never disputed (nor could they) that the false statements they published about Plaintiff are defamatory *per se*.  Defendants accused Plaintiff of having ties to Russian organized crime, engaging in money laundering, and espionage, among other things.  These are serious crimes involving moral turpitude, all of which would be punishable by imprisonment.  Therefore, the statements are defamatory *per se*.  *See* Restatement (Second) of Torts § 571, cmt.g (providing a non-exhaustive list of serious crimes

---

[13] *Tavoulareas v. Piro*, 817 F.2d 762, 790 (D.C. Cir. 1987) (failure to investigate is competent evidence of actual malice); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017) (same); *Houlahan v. Freeman Wall Aiello*, 15 F. Supp. 3d 77, 81 (D.D.C. 2014) (explaining that "entertaining serious doubts as to the truth of [defendant's] publication" is proof of actual malice); *US Dominion, Inc. v. Byrne*, No. 1:21-CV-02131, 2022 WL 1165935, at *5 (D.D.C. Apr. 20, 2022) (denying motion to dismiss where plaintiff adequately pled, among other things, that defendant acted with a financial motive to make false claims).

involving moral turpitude that constitute defamation per se, including "treason, espionage, murder, burglary, larceny, arson, rape, criminal assault, perjury, selling mortgaged chattels or diseased meat, kidnapping, wife beating, malicious mischief, indecent exposure, bootlegging, operating a bawdy house, and uttering a bad check").[14]

Although Mr. Chandler does not need to allege special harm to prevail on his additional defamation claims, the harm in this case was obvious and severe.  Not only were the False Reports made to Eringer, but Eringer also foreseeably republished them to the Prince of Monaco, the so-called "ultimate client" for whom Eringer commissioned the False Reports in the first place.  (*See, e.g.*, Eringer Tr. 12:13-22.)  Under District of Columbia law, "[t]he original publisher of a defamatory statement may be liable for republication if the republication is reasonably foreseeable."  *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005).  Notably, like the question of republication itself, the question of foreseeability is "a question of fact" that is "nearly always" reserved "for the jury."  *Paavola v. United States*, 459 F. Supp. 3d 21, 39 (D.D.C. 2020) (quoting *Dist. of Columbia v. Carlson*, 793 A.2d 1285, 1291 (D.C. 2002)).

The legal test is not a subjective one of whether the Defendants personally foresaw that their accusations in the False Reports would be republished; rather, the test is an objective one of whether, in light of the relevant facts and circumstances, it was "reasonably foreseeable" that the Defendants' accusations would be republished.  *Oparaugo*, 884 A.2d at 73.  Here, there is ample evidence showing that it was reasonably foreseeable—if not entirely expected and predictable—that Eringer would share Defendants' explosive accusations with his ultimate client, the Prince of Monaco.

---

[14] *See also Mazur v. Szporer*, No. 03-CV-00042, 2004 WL 1944849, at *5 (D.D.C. June 1, 2004) (applying Illinois law and denying defendant's motion to dismiss cause of action for defamation *per se* "as to the statements … alleging [plaintiff's] connections to murder, the mafia, government corruption, and money-laundering"); *Wengui v. Li*, No. 18-CV-259, 2019 WL 2288348, at *2 (D. Md. May 29, 2019), *order vacated on other grounds by* 2020 WL 2563184 (D. Md. Feb. 4, 2020) (statements that plaintiff "is a communist spy" and "is an organized crime leader" were defamatory per se).

Indeed, the very reason that Eringer (who was a well-known journalist at the time) sought the report from Berlin "at considerable expense" was not simply to satisfy his own curiosity; rather, Eringer's self-evident intention was always to provide those reports to the Prince in an effort to establish his own bona fides as an intelligence professional.  (*E.g.*, D. Berlin Aug. 16, 2022 Tr. at 174:23-175:24; Eringer Tr. at 136:9-137:23.)  Berlin knew as much.  Eringer testified that "[Berlin] would have, of course, assumed [Eringer] was sharing that information with whoever the ultimate client was." (Eringer Tr. 218:9-15, 140:13-22, 141:15-17.)  And that is exactly what Eringer did.  (Eringer Tr. 218:9-15.)

B.      **Amendment would not cause Defendants to suffer substantial prejudice—the delay in moving to amend was caused by Defendants.**

The Supreme Court has established that "[i]n the absence of … undue delay, bad faith or dilatory motive … undue prejudice … futility of amendment, etc.—the leave sought should … be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "The key issue in considering a motion to amend is whether the non-movant will suffer any prejudice from the amendment."  *Clark v. Feder Semo & Bard, P.C.*, 560 F. Supp. 2d 1, 3 (D.D.C. 2008); *Lawson v. Truck Drivers, Chauffeurs & Helpers, Local Union 100*, 698 F.2d 250, 256 (6th Cir. 1983) (allowing amendment "in the absence of substantial prejudice"); *Does I through III v. Dist. of Columbia*, 815 F. Supp. 2d 208, 215 (D.D.C. 2011) ("Undue prejudice is not mere harm to the non-movant but a denial of the opportunity to present facts or evidence.").

Defendants will not suffer any prejudice, much less substantial or undue prejudice, if the Court grants Plaintiff's motion.  The facts described in the Amended Complaint are well known to Defendants.  Indeed, the only material changes relate to new claims based on the additional publication that Defendants concealed.  Even though discovery ended on August 19, no additional discovery is needed.  The Court has not yet set a schedule for the parties to brief dispositive motions.  Nor has the Court set a date for trial.  And Defendants cannot "assert surprise" at the proposed

14

amendments because they relate to the same events alleged in the initial Complaint and publications that the Defendants themselves intentionally concealed from the Court and Mr. Chandler.  *See Clark*, 560 F. Supp. at 3-4; *Norris v. Salazar*, 746 F. Supp. 2d 1, 4 (D.D.C. 2010) (allowing amendment because doing so would not "markedly change the course of the litigation").  Here, the only prejudice Defendants might suffer would be of their own making, and so Mr. Chandler's motion should be granted.

<u>**CONCLUSION**</u>

Because amendment is not futile and would not subject Defendants to undue prejudice, the Court should grant Mr. Chandler's Motion for Leave to File the Amended Complaint.

Dated: September 7, 2022                          Respectfully Submitted,

<u>/s/ *Daniel P. Watkins*</u>

Thomas A. Clare, P.C.
Megan L. Meier
Daniel P. Watkins (*pro hac vice*)
Nicholas J. Brechbill
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: megan@clarelocke.com
Email: daniel@clarelocke.com
Email: nick@clarelocke.com

*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that Plaintiff's Motion for Leave to File the Amended Complaint was filed using the Court's CM/ECF system and thereby was served on all counsel of record.

September 7, 2022                    /s/ *Daniel P. Watkins*
                                       Daniel P. Watkins (*pro hac vice*)