### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CHRISTOPHER CHANDLER,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Case No. 1:18-cv-02136-APM** |
| | ) | |
| **DONALD BERLIN,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

### DEFENDANTS' MEMORANDUM
### OF POINTS AND AUTHORITIES IN OPPOSITION TO
### <u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>

September 26, 2022

John P. Dean
D.C. Bar No.   362904
Steven M. Oster
D.C. Bar No. 376030

**OSTER McBRIDE PLLC**
1320 19th Street, N.W., Suite 601
Washington, D.C. 20036
(202) 596-5291 (p)
(202) 747-5862 (f)
soster@ostermcbride.com
johndean8@aol.com

*Counsel to Defendants*

### TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………....……iii

INTRODUCTION …………………………………………………………..….…. 1

PROCEDURAL BACKGROUND ……………………………………………….…2

    A. Prior Proceedings and the D. C. Circuit's Decision ………………..….……..2

    B. Proceedings After Remand ……………………………………………....…4

    C. Plaintiff's Inaccurate and Incomplete Description of the Discovery Process. …..4

        1. Mr. Berlin's Lack of Documents …………………………………….…4

        2. Previous Reports ……………………………………………………..5

        3. "Unverified" Information ……………………………………………6

        4. The January 2018 Emails …………………………………..…………7

ARGUMENT ……………………………………………………....…..…………8

    A. Rule 15(a)(2) Is Inapplicable …………………………………………………8

    B. Rule 16(b)(4) Requires The Moving Party To Act Diligently; Mr. Chandler Did Not . ……………………………………………………………………11

    C. Granting The Motion At This Late Date Will Prejudice Mr. Berlin ...…………12

    D. The So-Called "Minor Amendments" Make Major Additional Changes To Mr. Chandler's Theory of the Case And Do Not Comply With Rule 16(b)(4) ……...14

        1. Damages ……………………………………………...……………14

        2. Unexplained Alleged Republications of the Limited Report ……………15

        3. Additional Documents Supposedly Given to the British Press …………17

        4. Change in the "Special Source" Allegations ………………....………18

        5. The January 2018 Emails ……………………………..……………19

CONCLUSION …………………………………………………………….…..20

CERTIFICATE OF SERVICE ……………………………………………….21

## **TABLE OF AUTHORITIES**

## **CASES**

*A Love of Food I v. Maoz Vegetarian USA, Inc.,* 292 F.R.D. 142 (D.D.C. 2013).......... 10, 11, 12

*Akinsinde v. Not-For-Profit Hosp. Corp.,* 2018 U.S. Dist. LEXIS 237643 (D.D.C. 3/7/18) …….
…………………………………………………………………………………10, 11, 12

*American Council for the Blind v. Mnunchin,* 977 F.3d 1 (D.C. Cir. 2020)................................ 16

*Atkinson v. Holder,* 925 F.3d 606 (4th Cir. 2019) ........................................................ 10

*Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304 (1948) ................................................ 17

*Brooks v. Clinton,* 841 F. Supp.2d 287 (D.D.C. 2012) ................................................ 10

*Buruca v. District of Columbia,* 902 F. Supp.2d 75 (D.D.C. 2012) ............................................ 10

*Chandler v. Berlin,* 998 F.3d 965 (D.C. Cir. 2021) ...................................................... 3, 4

*In re Milk Prods. Antitrust Litigation,* 195 F.3d 430 (8th Cir. 1999) ............................................ 11

*Johnson v. Mammoth Recreations,* 975 F.2d 604, 608 (9th Cir. 1992) ................................ 11, 12

*Judicial Watch, Inc. v. U. S. Dep't of Commerce,* 224 F.R.D. 261 (D.D.C. 2004) ...................... 19

*Leary v. Daeschner,* 349 F.3d 888 (6th Cir. 2003) ........................................................ 11

*Lovely-Coley v. District of Columbia,* 255 F. Supp.3d 1 (D.D.C. 2017)...................................... 10

*Lurie v. Mid Atlantic Permanente Med. Group,* 589 F. Supp.2d 21 (D.D.C. 2008)..10, 11, 12, 20

*O'Connell v. Hilton Hotels of Puerto Rico,* 357 F.3d 152 (1st Cir. 2004) ................................... 10

*Owens-Hart v. Howard Univ.,* 317 F.R.D. 1 (D.D.C. 2016) ........................................................ 5

*Parker v. Columbia Pictures Indus.,* 204 F.3d 326 (2nd Cir. 2000).............................................. 10

*Richardson v. Yellen,* 323 F.R.D. 444 (D.D.C. 2018) ........................................10, 11, 12, 13-14

*Robinson v. Detroit News, Inc.,* 211 F. Supp.2d 101 (D.D.C. 2002)...................................... 10, 12

*Sosa v. Airport Sys.,* 133 F.3d 1417 (11th Cir. 1998) ................................................... 11

*St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.,* 2007 U.S. Dist. LEXIS 39606

  (D.D.C. 6/1/07) ................................................................................................... 12

*U.S. Int'l Trade Comm'n v. ASAT, Inc.,* 411 F.3d 245 (D.C. Cir. 2005) ........................................ 5

## **RULES**

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 19

Fed. R. Civ. P. 12(e) .................................................................................................... 17

Fed. R. Civ. P. 12(f) ..................................................................................................... 19

Fed. R. Civ. P. 15(a) ...................................................................................................... 10

Fed. R. Civ. P. 15(a)(2) .................................................................................................. 9

Fed. R. Civ. P. 16 ......................................................................................................... 10

Fed. R. Civ. P. 16(b) ..................................................................................................... 10

*Fed. R. Civ. P. 16(b)(4) ..................................................................... 1, 9, 10, 11, 14, 16, 17

Fed. R. Civ. P. 26(a)(1) ................................................................................................. 15

Fed. R. Civ. P. 56(d) ...................................................................................................... 3

Defendants Donald Berlin, Investigative Consultants, Inc., and Investigative Consultants of Washington, DC, Inc., (together "Defendants") respectfully request the Court to deny Plaintiff Christopher Chandler's untimely and prejudicial Motion for Leave to Amend his four-year-old Complaint. Defendants respectfully request oral argument on this motion.

## INTRODUCTION

Almost one year after the deadline for amending pleadings that was set by this Court, Plaintiff Christopher Chandler proposes amendments that both add a completely new claim for relief and radically change the theories pleaded in his original complaint. Those new amendments violate the applicable rule -- Fed. R. Civ. P. ("Rule") 16(b)(4) -- a rule that his motion does not even discuss. Allowing those amendments will cause considerable prejudice to Mr. Berlin by delaying resolution of this case and requiring him to spend additional funds on the significant discovery efforts those amendments will require. This Court should deny this motion and hold Mr. Chandler to his original allegations so that the case can proceed to summary judgment.

With discovery now completed, Defendants expect to move for summary judgment on multiple grounds, resulting in dismissal of Plaintiff's complaint in its entirety. Mr. Chandler apparently realizes his prospects of successfully opposing that motion are slim. Already, his attempt to foist responsibility upon Defendants for the publication of negative information about him in the British press has failed. Both this Court and the D.C. Circuit have ruled that Mr. Berlin could not reasonably have foreseen that publication, which occurred 15 years after he wrote the Limited Report that is the subject of this case.

The only claim in the complaint that survived the D.C. Circuit's decision is the allegation that Mr. Berlin damaged Mr. Chandler 19 years ago by delivering the Limited Report to an audience of one — Robert Eringer, and no one else. But during his deposition, Mr. Chandler

undercut that claim when he testified that, because Mr. Eringer was a "scoundrel," he did not care

at all what Mr. Eringer thought of him:

Q.  [A]s a scoundrel, Eringer often wrote things that he didn't really believe. Was that your understanding?

A.  Yes. I believe that.

Q.  And because he did so, you weren't really concerned about what he thought of you; is that correct?

MR. WATKINS: Objection to the form of the question. You can answer.

THE WITNESS: Did I – was I concerned about what Mr. Eringer thought of me? No.

*   *   *

Q.  [D]id there ever come a time when you became concerned about what Mr. Eringer thought about you?

A.  He was obviously a person of ill repute and therefore that's not the type of person – in other words, his opinion of me didn't really weigh very highly in my estimation.

*   *   *

Q.  You don't care what he thinks about you; is that fair to say?

A.  Basically yes. I don't think it has any integrity to it is what I would say.

(Chandler Dep., Ex. 1, at 287:10-289:3.)

Having realized that his original complaint is not likely to prevail, Mr. Chandler, far beyond

the deadline established by this Court, now seeks to prolong this case and its concomitant costs to

Mr. Berlin. We respectfully request the Court to deny him that opportunity.

## PROCEDURAL BACKGROUND

### A.  Prior Proceedings and the D.C. Circuit's Decision

Mr. Chandler filed this case in September 2018, alleging that Mr. Berlin defamed him in

2003 when he gave Mr. Eringer a report (the "Limited Report") about Mr. Chandler and his

brother. As Mr. Chandler's memorandum in support of his motion states, publication of a

2

defamatory statement is an element of the tort of defamation. (Dkt. 74 at 15.) [1] Nevertheless, the complaint never specifically identified a publication of the Limited Report for which Mr. Chandler sought damages. Defendants' motion for summary judgment argued that, based on Plaintiff's allegations, only two possible publications of the Limited Report were at issue: Mr. Berlin's delivery of the Limited Report to Mr. Eringer in 2003 and Eringer's alleged republication of the report to the British press in 2017. (Dkt. 21-1 at 8.) The motion argued that any recovery for the 2003 publication was barred by the statute of limitations, (*id.* at 10-11,) and that Mr. Berlin was not liable for the 2017 republication because he did not reasonably foresee it. (*Id*. at 11-18.)

Mr. Chandler never disputed that the complaint alleged only two publications of the Limited Report. Indeed, paragraph 11 of the complaint disclaimed any other publications. ("On information and belief, no one other than Berlin, ICI and Eringer possessed a copy of [the Limited Report] before November 2017." (Dkt. 20 at ¶ 11.) Moreover, as both this Court and the Court of Appeals pointed out, Mr. Chandler never responded to Defendants' summary judgment motion by seeking any discovery pursuant to Rule 56(d). (Dkt. 24 at 6, n.11; 998 F.3d at 976.)

In short, Mr. Chandler conceded that only two publications of the Limited Report were at issue and forfeited any opportunity for discovery about whether Mr. Berlin could have reasonably foreseen any republication of the Limited Report. As the result of that forfeiture, when this Court ruled that Defendants successfully demonstrated that Mr. Berlin was not liable for either of the publications, it dismissed the entire case because there were no other publications at issue. (Dkt. 38.) Mr. Chandler never argued that he should have been given an opportunity for discovery to see if any other publications occurred.

---

[1] In citing Mr. Chandler's Memorandum, we will use the page numbers assigned by the Court's electronic filing system.

The D.C. Circuit affirmed this Court's dismissal of all claims based on Mr. Eringer's alleged republication of the Limited Report to the British press. *Chandler v. Berlin,* 998 F.3d 965, 975-78 (D.C. Cir. 2021). While it reversed this Court's decision that the statute of limitations barred Mr. Chandler's claims arising out of the initial 2003 publication of the report to Mr. Eringer, *id.* at 971-75, the Court of Appeals did not identify any other alleged publications or republications of the Limited Report that remained at issue in the case.

### B.  Proceedings After Remand

After the Court of Appeals issued its mandate, this Court issued a scheduling order on August 26, 2021, to govern the proceedings on remand. (Dkt. 53.) That order set September 27, 2021, as the deadline for amending pleadings. (*Id.*) On Defendants' motion, this Court extended the deadline to October 12, 2021. (Ex. 2 (Minute Order issued September 24, 2021.)) Plaintiff's motion for leave to amend, filed September 7, 2022, missed that deadline by almost 11 months.

Since the issuance of the scheduling order, the parties have engaged in extensive discovery, including several rounds of interrogatories, document requests, requests for admissions, and four depositions (Mr. Chandler, Mr. Berlin, Mr. Eringer, and Daniel Hoffman, Plaintiff's expert).

### C. Plaintiff's Inaccurate and Incomplete Description of The Discovery Process

 Plaintiff attempts to justify the proposed amendment because Mr. Berlin supposedly made new "damning admissions" during his recent deposition. (Dkt. 74 at 9.) That did not happen. Plaintiff learned nothing during Mr. Berlin's deposition that he did not know months earlier. Plaintiff's arguments misrepresent both the law and the record and provide no grounds for this Court to ignore the deadline it established.

#### 1.  Mr. Berlin's Lack of Documents.

Mr. Chandler asserts that Mr. Berlin falsely stated in his discovery responses that he had no documents about this matter within his possession, custody, or control. (Dkt. 74 at 12.) The

only "proof" of that charge is that **Mr. Eringer** had documents about the allegations against Mr. Chandler, and voluntarily allowed Mr. Berlin's counsel to review them. Defense counsel's acquisition of those documents and their prompt production to Plaintiff's counsel is described in the Declaration of Steven M. Oster, filed herewith as Ex. 3.

Mr. Chandler utterly fails to explain why Mr. Eringer's voluntary cooperation somehow demonstrates that Mr. Berlin had any authority over Mr. Eringer or his documents. Mr. Berlin did not "control" Mr. Eringer's documents because he had "no legal right, authority or ability to obtain [them] upon demand." *U.S. Int'l Trade Comm'n v. ASAT, Inc.,* 411 F.3d 245, 254 (D.C. Cir. 2005), quoted by this Court in *Owens-Hart v. Howard Univ.,* 317 F.R.D. 1, 6 (D.D.C. 2016). Possession of documents by Mr. Eringer, a non-party to this case, does not mean those documents were in Mr. Berlin's possession, custody, or control, nor did Mr. Berlin have any obligation to produce them before his counsel received them from Mr. Eringer.[2]

### 2. Previous Reports.

Mr. Chandler is correct that Mr. Berlin's October 2018 declaration said that the Limited Report was the only report he completed about the Chandlers for Robert Eringer or anyone else. Mr. Chandler is also correct that Mr. Eringer subsequently gave counsel for Mr. Berlin two other documents about the Chandlers authored by Mr. Berlin. The first is a proposal to Mr. Eringer (the "Proposal") for a "full intelligence investigation" of the Chandlers dated October 17, 2002.[3] Mr.

---

[2] Mr. Berlin's counsel produced those documents to Mr. Chandler's counsel promptly upon receipt, even though there was not an outstanding discovery request for many of them. (Oster Decl., Ex. 3 at ¶ 7.) Mr. Chandler's counsel stated on the record that he is making no claim that Mr. Berlin's counsel acted improperly. (Eringer Dep., Ex. 4, at 236:4-22; 251:22-252:3.) Nor could he, given that twice Mr. Chandler subpoenaed Mr. Eringer but both subpoenas violated Rule 45. (Oster Decl., Ex. 3 at ¶ 9).

[3] Mr. Eringer did not accept that proposal. Mr. Berlin eventually undertook a "limited global scan" of the Chandlers, not a "full intelligence investigation."

Berlin's attorneys gave that document to Mr. Chandler's attorneys in October 2021. (Oster Decl., Ex. 3, at ¶¶ 5-7.) The second document is a follow-up report, mostly about Mr. Chandler's brother Richard (the "Supplemental Report"). It is dated March 28, 2003, one month after the Limited Report.[4] Mr. Berlin's counsel gave that document to Mr. Chandler's attorneys in April 2022, a few days after receiving it from Mr. Eringer, who understood he was producing those documents for both parties. (Oster Decl., Ex. 3, at ¶ 11.)

Mr. Chandler finds something sinister in Mr. Berlin's original statement that he authored only one report about the Chandlers, but the explanation is simple. Mr. Berlin signed his declaration more than 16 years after writing the Proposal and 15½ years after writing the Supplemental Report. (Berlin 2022 Decl., Ex. 10, at ¶ 5.) During the ensuing years, he has conducted thousands of investigations and projects. He has no files from that long ago and relied solely upon his memory about the Chandler investigation. (*Id.* at ¶ 6.) Mr. Berlin simply did not remember the other two documents when he signed his declaration in 2018. (*Id.*)[5] He accurately stated what he remembered at the time he signed.

### 3. "Unverified" Information.

Mr. Chandler's motion expresses surprise that Mr. Berlin testified that the statements in the Limited Report were unverified and were provided to Mr. Eringer with the understanding that they should not be relied upon without verification. ***That testimony, however, was entirely consistent with what Mr. Berlin has said throughout the course of this case.*** (*See, e.g.,* Dkt. 21-

---

[4] Mr. Chandler's discussion of the Supplemental Report is notable for what it doesn't say. Although he claims that the Supplemental Report "contains additional false accusations about Mr. Chandler and his brother," (Dkt. 74 at 8,) his memorandum does not identify a single such "false accusation," and his amended complaint does not allege any defamation claim arising out of the Supplemental Report.

[5] Mr. Berlin's statement that he did only one report was not material to any decision by either this Court or the Court of Appeals. Neither Court even mentioned that statement.

1 (10/25/2018 Motion to Dismiss or for Summary Judgment) at 3 (Limited Report was a summary of information obtained from various databases and other sources); Dkt. 26 (4/17/2019 Answer to Redacted Complaint) at ¶¶ 1-4 (Limited Report was collection of information obtained from databases provided to Eringer with understanding that "its contents had to be verified before they could be relied upon."); Dkt. 56 (10/12/2021 Amended Answer to Redacted Complaint) at ¶¶ 1-4 ("Mr. Berlin was not asked to verify the contents of the Limited Report and Defendants therefore deny that the Limited Report inaccurately reports the open source and other information available to them at the time the Limited Repot was drafted.")**)** Mr. Berlin's deposition testimony did nothing more than confirm these and numerous other statements about the scope of his report.

Contrary to Plaintiff's claim, however, Mr. Berlin did not "acknowledge[ ] that the accusations against Mr. Chandler are false." (Dkt. 74 at 3.) Mr. Berlin testified that he could not say the statements about Mr. Chandler were true but did not concede they were false. As he testified, he acted as a "conduit," collecting available information about the Chandlers and passing it on to Mr. Eringer with the understanding that it was available, but not verified, information. (Berlin Dep., Ex. 6, at 1:103:3-105:1; 1:109:5-17; 1:110:24-112:24; 1:116:18-117:15; 2:100:2-15; 2:182:23-184:1.)[6]

Mr. Berlin's testimony did not contradict his earlier positions, nor did it inject any new issues into this case. Nothing about that testimony justifies amending the complaint at this late date.

### 4. The January 2018 Emails.

In his quest for supposedly new and "damning" admissions from Mr. Berlin's deposition, Plaintiff has provided an incomplete and misleading description of discussions and correspondence

---

[6] Citations to Mr. Berlin's two volume deposition are in the following format: volume:page:line(s).

between Mr. Eringer and Mr. Berlin about the possibility of Mr. Eringer's sending his files on the Chandlers to representatives of then-President Trump. The discussions and correspondence occurred in December 2017 and January 2018, eight months before the filing of this case, and have no relevance to any issue before this Court.

As shown in an email exchange between Mr. Berlin and Mr. Eringer, Mr. Berlin received a call in December 2017 from Glenn Simpson of Fusion GPS, the company for whom Christopher Steele compiled his "dossier" about Mr. Trump's supposed activities in Russia. Although that exchange is important in understanding the context of their subsequent discussions, Mr. Chandler did not provide the Court with a copy of the December 2017 exchange. (Defendants' Exhibit 7 contains the December emails and Defendants' Ex. 8 contains the January emails.)

In his December 2017 call, Mr. Simpson asked Mr. Berlin for Mr. Eringer's contact information, hoping that Mr. Eringer could help him locate two retired senior CIA officers, William Lofgren and Clair George, to discuss their work regarding the Chandlers. (Ex. 7.) [7] Mr. Berlin did not comply with that request. Mr. Simpson never said why he wanted to reach Mr. George and Mr. Lofgren, and Mr. Eringer and Mr. Berlin speculated about his reasons. (*Id*.) Mr. Berlin suggested that Mr. Simpson, for some unknown reason, thought Mr. Eringer's work on the Chandlers might be relevant to the controversy surrounding the Steele dossier. (Exs. 7, 8.)

In light of the ongoing controversy about the Steele report, Mr. Berlin later wondered if Mr. Trump's allies also might be interested in Mr. Eringer's files concerning the Chandlers, which are far more extensive than just the Limited Report. He offered to make some calls to determine if any such interest existed.  (Ex. 8.) There was none, and that was the end of the episode. (Berlin Dep., Ex. 6, at 2:44:9-50:22.) Mr. Chandler claims this incident is evidence of "malice," but fails

---

[7] Mr. George died years ago and Mr. Lofgren was, and remains, seriously ill.

to explain what it reveals about Mr. Berlin's state of mind almost 15 years earlier, when he wrote the Limited Report.[8]

## ARGUMENT

Even though the deadline for amending pleadings has long passed, Mr. Chandler asks this Court to allow him to assert a brand-new cause of action based on the Proposal, a document his attorneys received 11 months ago. Remarkably, his motion fails to discuss the Rule applicable to that belated request. As shown below, Rule 16(b)(4) does not permit his amendment at this late date, both because he has not been diligent in asserting that claim and because asserting a new cause of action will prejudice Mr. Berlin.

Mr. Chandler also wants to add what he calls "minor amendments," which his motion does not discuss. As shown below, those "minor amendments" are nothing of the sort. They introduce completely new theories into this case without any attempt to show that Mr. Chandler has met Rule 16(b)(4)'s demanding requirements.

### A.  Rule 15(a)(2) Is Inapplicable.

Mr. Chandler says the purpose of the amended complaint is to "add one count of defamation" based on the Proposal.  (Dkt. 74 at 7.) He contends that he "readily satisfie[s]" the "loose standard" for amending a pleading established by Rule 15(a)(2).  (Dkt. 74 at 15.) But he relies on the wrong rule. Because the October 12, 2021, deadline for amendment of pleadings has long passed, Rule 15(a)'s "loose standard" no longer applies. Instead, as this Court has held, Rule 16(b)(4), which applies to motions to amend a scheduling order, sets forth the proper standard for evaluating this motion. This Court can grant Mr. Chandler's motion only if he satisfies Rule

---

[8]  Plaintiff also suggests Mr. Berlin acted improperly by not retaining copies of his Signal correspondence with Mr. Eringer about this incident. (Dkt. 74 at 11.) He neglects to point out that the correspondence occurred in December 2017 and January 2018, months before this case was filed. (Exs. 7 and 8.)

16(b)(4)'s demanding "good cause" standard, which says: "A schedule may be modified only for good cause and with the judge's consent." He has not even attempted to make that showing and, as shown below, any such effort would fail.

In *Akinside v. Not-For-Profit Hosp. Corp.,* 2018 U.S. Dist. LEXIS 237643 (D.D.C. 3/7/18), this Court added to the consensus of Judges in this District that Rule 15(a) does not apply after the deadline for amending pleadings expires. " 'While Rule 15(a) governs motions to amend pleadings filed within the time allotted by the scheduling order, Rule 16(b) governs motions to amend pleadings filed after the deadline provided by the scheduling order.' " *Id.* at *1 (quoting *Lovely-Coley v. District of Columbia,* 255 F. Supp.3d 1, 5 (D.D.C. 2017) (Walton, J.)). " 'Motions to amend pleadings . . . filed after a scheduling order deadline has passed are subject to the more stringent 'good cause' standard of Rule 16 . . . .' " *Akinside* at *1-*2 (quoting *Brooks v. Clinton,* 841 F. Supp.2d 287, 296 (D.D.C. 2012) (Howell, J.)).  This Court in *Akinside* also cited *A Love of Food I v. Maoz Vegetarian USA, Inc.,* 292 F.R.D. 142, 143-44 (D.D.C. 2013) (Jackson, J.), which held that, pursuant to Rule 16, "once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown."  *Accord, e.g., Richardson v. Yellen,* 323 F.R.D. 444, 446 (D.D.C. 2018) (Collyer, J.); *Buruca v. District of Columbia,* 902 F. Supp.2d 75, 79 n.1 (D.D.C. 2012) (Contreras, J.); *Lurie v. Mid Atlantic Permanente Med. Group,* 589 F. Supp.2d 21, 22-23 (D.D.C. 2008) (Lamberth, J.); *Robinson v. Detroit News, Inc.,* 211 F. Supp.2d 101, 114 (D.D.C. 2002) (Urbina, J).

Although the D.C. Circuit has not addressed this issue, at least seven other circuits have concluded that Rule 16(b), not the more lenient Rule 15(a), establishes the proper standard when a party seeks to amend its pleading after the deadline set by a scheduling order. *O'Connell v. Hilton Hotels of Puerto Rico,* 357 F.3d 152, 154-55 (1st Cir. 2004); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2nd Cir. 2000); *Atkinson v. Holder,* 925 F.3d 606, 625-26 (4th Cir. 2019);

*Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003); *In re Milk Prods. Antitrust Litigation,* 195 F.3d 430, 437-38 (8th Cir. 1999); *Johnson v. Mammoth Recreations,* 975 F.2d 604, 608 (9th Cir. 1992); *Sosa v. Airport Sys.,* 133 F.3d 1417, 1419 (11th Cir. 1998).

Requiring adherence to Rule 16(b)(4) after a deadline expires is no arbitrary technicality. Rule 16(b)'s stringent standard is an important, and necessary, case management tool:

> A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." [Citation omitted]. . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to the use of Rule 15.

*Johnson v. Mammoth Recreations, supra,* 975 F.2d at 610 (cited in *Lurie, supra,* 589 F. Supp.2d at 23.)

### B.  Rule 16(b)(4) Requires The Moving Party To Act Diligently; Mr. Chandler Did Not.

As this Court has held, "[u]nder the 'good cause' standard, a party's diligence in seeking leave to amend is the court's primary consideration." *Akinsinde,* 2018 US Dist. LEXIS 237643 at *2. " '[T]he Court's inquiry must focus on the reasons the [moving party] has given for his delay instead of the reasons for the proposed amendment.' . . . In other words, 'Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission.' " *A Love of Food I,* 292 F.R.D. at 144, quoting *Lurie,* 589 F. Supp.2d at 23. As the moving party, Mr. Chandler bears the burden of establishing that he acted diligently. *Richardson,* 323 F.R.D. at 447.

Mr. Chandler's filing of this motion, almost eleven months after the scheduling order's deadline and after discovery has closed, was anything but diligent. Although his motion is replete with inaccurate statements and half-truths about the discovery process in this case, he cannot ignore the one fact that is dispositive of his lack of diligence. His new cause of action asserts that

Mr. Berlin defamed him in the Proposal, a document he admittedly received in October 2021, eleven months ago. (Proposed Am. Complaint at ¶¶ 59, 90; Plaintiff's Mem., Dkt 74 at 12.) With discovery now closed, Mr. Chandler seeks to dramatically expand his factual allegations and claims for relief based on information in his possession for almost a year, without providing any explanation for the delay.[9]

No court has found that a party acted diligently in the face of such an unexplained, or inadequately explained, delay. *See, e.g., Richardson,* 323 F.R.D. at 447 (motion denied when filed five months after plaintiff received information that could have supported new claims); *Lurie,* 589 F. Supp.2d at 24 (no good cause when motion filed almost a year after the deadline, two years after the defendant's answer, and two weeks after the close of discovery); *Robinson,* 211 F. Supp.2d at 114 (motion denied when filed eight months after the deadline). *See also, Johnson,* 975 F.2d at 608 (no good cause when motion filed four months after deadline).

### C. Granting The Motion At This Late Date Will Prejudice Mr. Berlin.

Mr. Chandler's lack of diligence is sufficient, by itself, to deny this motion. *Akinsinde,* 2018 US Dist. LEXIS 237643 at *4, n.1; *A Love of Food I,* 262 F.R.D. at 145; *St. Paul Mercury Ins. Co. v. Capital Sprinkler Inspection, Inc.,* 2007 U.S. Dist. LEXIS 39606 at *20 (D.D.C. 6/1/07). But this Court also may consider the prejudice to the Defendants from allowing the amendment as an additional reason to deny this motion. *Akinsinde,* 2018 US Dist. LEXIS at *2.

For the four years of this litigation, the sole source of Plaintiff's defamation claim has been the Limited Report. Adding a new claim based on a separate document will require significant

---

[9] Mr. Chandler's lackadaisical attitude toward filing his claim based on the Proposal is reminiscent of his earlier apathetic response after he knew both that Mr. Eringer had published allegations about him and that Mr. Eringer stated (truthfully, as it turns out) that he had documents about those allegations. Although Mr. Chandler now claims to have suffered severe emotional damage from those allegations, at the time he was content to "carry on with our lives and leave the curiosity to others."  (Dkt. 32-6 at 2.)

additional discovery.  The proposed amended complaint alleges that Mr. Eringer gave the Proposal

to Prince Albert, but Defendants are aware of no evidence that this occurred, nor are they aware

of any evidence that Mr. Eringer gave Mr. Berlin any reason to believe that he would do so.

Although Mr. Chandler's counsel asked Mr. Eringer some questions about the Proposal at his

February 2022 deposition, four months after they received it, they never asked whether he gave

the Proposal to the Prince or whether Mr. Berlin could have foreseen any such transmittal. Neither

did Defendants, as they had no reason to believe Mr. Chandler wanted to assert any defamation

claims based on the Proposal.

As a result, Mr. Eringer's deposition must be reopened if the proposed amendment is

allowed.[10] Mr. Berlin also needs to understand what damages, if any, were caused by the Proposal,

particularly in light of Mr. Chandler's previous testimony that he does not care at all about Mr.

Eringer's opinion of him. Additional interrogatories and a further deposition of Mr. Chandler are

the only way to obtain that information.

Thus, granting the proposed amendment will lead to significant additional litigation costs

and delay in the final resolution of this case. Given his resources, those costs may not be an

important concern to Mr. Chandler, but they will have a real impact on Mr. Berlin who has been

defending this case for over four years at great expense, only to encounter this last-minute shift in

Mr. Chandler's theory of the case. Alternatively, if the Court allows the proposed amendment but

does not reopen discovery, Mr. Berlin must proceed to trial without information critical to his

defense of this new claim. Wholly apart from Mr. Chandler's demonstrated lack of diligence, the

prejudice that Mr. Berlin will suffer is sufficient to deny this motion. *E.g., Richardson,* 323 F.R.D.

---

[10] Mr. Chandler might argue that Defendants can contact Mr. Eringer to discuss these issues, but
that is not an adequate solution. Because Mr. Eringer lives in California, Defendants cannot issue
a subpoena compelling him to attend the trial. A re-opened deposition is the only way to guarantee
that Mr. Eringer's testimony on these matters will be preserved for trial.

at 447 (plaintiff moved to add new claims one day before the discovery cut-off; defendants would be prejudiced if denied the opportunity to obtain discovery on those claims).

### D. The So-Called "Minor Amendments" Make Major Additional Changes To Mr. Chandler's Theory of the Case And Do Not Comply With Rule 16(b)(4).

Although Mr. Chandler's effort to add a new cause of action based on the Proposal is the focus of his motion, the proposed amended complaint attempts to make a number of other important changes to the claims he has asserted from the outset of this case. His motion fails to discuss those changes at any length and tries to disguise their significance in a footnote, calling them "minor amendments based on newly discovered facts." (Dkt. 74 at 10, n.6.) Those amendments are anything but "minor," however. They are major changes to theories advanced from the beginning by Plaintiff and, like the amendment based on the Proposal, they fail to satisfy Rule 16(b)(4)'s "good cause" standard. In addition, the so-called "facts" upon which they are based are anything but "newly discovered."

Because Mr. Chandler has not attempted to meet his burden to show that his "minor amendments" are consistent with Rule 16(b)(4) – indeed, he has not discussed them at all – we will not discuss all of them in detail. We will highlight several of them, however, to demonstrate how Mr. Chandler has failed to show that he was diligent in seeking the "minor amendments;" and to show that, like the amendments based on the Proposal, the "minor amendments" will manifestly prejudice Mr. Berlin's efforts to defend this case

#### 1. Damages.

The original complaint sought compensatory damages of $10 million. Dkt. 20 at 27 (Prayer for Relief). Mr. Chandler has recognized, however, that the Court of Appeals' affirmance of this Court's dismissal of his claims arising out of the 2017 disclosure of the Limited Report to the British press significantly reduced his damages. For that reason, his amended initial disclosures

pursuant to Rule 26(a)(1), served on October 4, 2021, reduced his claim for compensatory damages to $900,000 for "loss of reputation, shame, humiliation, mental anguish and suffering" and just under $125,000 in "out-of-pocket fees and expenses." (Ex. 9 at 4-5.)

One of the "minor amendments" now demands compensatory damages of $12,500,000 an increase of more than 1,200% from the amount stated in the revised initial disclosures. Proposed Amended Complaint, (Dkt. 74-3 at 32.) Defendants are aware of no evidence that justifies this radical increase, and Mr. Chandler points to no evidence showing that he has met his burden of proving he was diligent in waiting until now to change his mind. Defendants are also prejudiced by this last-minute shift. Without substantial additional discovery, Defendants cannot understand the reasons for such a huge increase, especially because Mr. Chandler, in violation of Rule 26(e)(1)(a), has not supplemented his initial disclosures. At a minimum, Mr. Chandler will need to be re-deposed.

## 2.   Unexplained Alleged Republications of the Limited Report.

Paragraph 11 of the original complaint (Dkt. 20) alleges that "no one other than Berlin, ICI and Eringer" possessed a copy of the [Limited Report] before November 2017." The proposed amended complaint tells a different story. It deletes the quoted language and adds two new allegations in Paragraph 57. Completely contradicting Plaintiff's theory of the case, Paragraph 57 now alleges, without qualification: (1) that Mr. Eringer gave Mr. Berlin's report to Prince Albert and Mr. Berlin is liable for that republication; and (2) that Mr. Berlin is also "liable for all other instances Eringer republished the [Limited Report] that were reasonably foreseeable to Berlin." As discussed above, Mr. Chandler apparently has recognized that the case he originally brought will not survive summary judgement and is searching for some new theories that will allow the litigation to continue. But Rule 16(b)(4) will not allow him to do so.

Because Mr. Chandler has offered no explanation for any of the "minor amendments," his motion fails to show that he has been diligent in seeking to add any of them. What has he learned that contradicts his considered judgment that "no one" possessed a copy of the Limited Report before 2017, and when did he learn it? Mr. Chandler has decided not to tell the Court. With respect to Prince Albert, Mr. Eringer unequivocally testified that he did not give the Limited Report to the Prince and Defendants are aware of no contrary evidence. (Eringer Dep., Ex. 4, at 249:5-22.) If Mr. Chandler thinks the Proposal, with its reference to an "ultimate client" is the source of his new theory, not only is that theory unsupported in the record, but his admitted receipt of that document in October 2021 is fatal to any claim that he acted diligently. (*See* Berlin Dep., Ex. 6, at 2:174:7-175:24 (Mr. Berlin did not know the identity of Eringer's ultimate client when he prepared the Proposal, the Limited Report, and the Supplemental Report.)

With respect to the "other instances," we are left to guess. Mr. Chandler has said nothing, declining to say when those instances occurred, who received the disclosures, and why it was reasonable for Mr. Berlin to have foreseen that they would take place. By saying nothing about the "other instances," Mr. Chandler has left the Court and the Defendants in the dark at what he is talking about. Is this an effort to re-litigate Mr. Berlin's liability for the publication to the British press in 2017?[11] Any such effort is foreclosed by the D.C. Circuit's affirmance of this Court's dismissal of all claims arising out of that publication. *American Council for the Blind v. Mnunchin,* 977 F.3d 1, 5 (D.C. Cir. 2020) (lower court " 'has no power or authority to deviate from the

---

[11] The amended complaint retains most of the original complaint's claims about Mr. Eringer's alleged circulation of the so-called "dossier" in 2017 to the British press and the subsequent publicity about it.  Paragraphs 32, 57, and 89 also revive the "Eringer was a journalist" theory that the D.C. Circuit already rejected as grounds for concluding that the events of 2017 were reasonably foreseeable to Mr. Berlin when he wrote the Limited Report almost 15 years earlier. 998 F.3d at 976 ("…there is no record suggestion that Berlin shared information with Eringer for a news story."). Those rulings are the law of the case and not subject to revision by this Court.

mandate issued by an appellate court,' " quoting *Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306 (1948)). If Mr. Chandler thinks there are some "other instances" apart from the 2017 disclosures to the press, his motion fails to identify them and provides no evidence at all that he has been diligent in waiting until now to allege them.

The litigation that will result from these "minor amendments" will be seriously prejudicial to the Defendants. If the amendments are allowed, Defendants, at a minimum, must respond with a motion for a more definite statement pursuant to Rule 12(e) so they can understand what "other instances" are at issue. They also must seek leave of the Court to reopen discovery to learn the evidence (if any) supporting the new claim that Prince Albert received the Limited Report, the circumstances of any "other instances," and the basis for Mr. Chandler's claim that all those supposed republications of the Limited Report somehow were reasonably foreseeable to Mr. Berlin. If the Court does not reopen discovery, Defendants will be forced to go to trial with no idea about what new claims they must defend against.

Amended paragraphs 11 and 57 are not "minor amendments;" they are major expansions of Plaintiff's claims whose dimensions are unknown, without even an attempt by Plaintiff to satisfy the demanding standards of Rule 16(b)(4).

### 3.    Additional Documents Supposedly Given to the British Press.

Paragraph 12 of the original complaint (Dkt. 20) alleges that Mr. Eringer sent Mr. Berlin's Limited Report and Mr. Eringer's November 2004 report to the British press in November 2017. Paragraph 12 of the proposed amended complaint now alleges that Mr. Eringer sent "the documents he received from Berlin," including the Proposal and the Supplemental Report, to the British press. Mr. Berlin knows of no evidence that the British press received either the Proposal or the Supplemental Report. As with his other evidence-free allegations, Mr. Chandler has not proven he was diligent in waiting until now to insert these claims into the case. Moreover, it

appears that this "minor amendment" seeks to re-litigate the foreseeability of Mr. Eringer's alleged disclosures to the British press, prejudicing Mr. Berlin by re-opening a settled issue and requiring additional discovery to learn the reasons for these contentions.

### 4.   Change in the "Special Source" Allegations.

Paragraph 10 of the original complaint, (Dkt. 20), alleged, "[o]n information and belief," that Mr. Eringer used Mr. Berlin's February 2003 Limited Report "as the basis" for his own November 2004 report about the Chandlers and that Mr. Eringer's reference in his report to "special sources with a proven ability to access the Russian SVR's registry" referred to Mr. Berlin's report. Paragraph 10 of the proposed amended complaint drops the "information and belief" qualification and now asserts that as a fact. A similar change occurs in paragraph 49 of the amended complaint (amending paragraph 52 of the original complaint.).

Mr. Eringer, however, testified unequivocally that Mr. Berlin was ***not*** the "special source" and that he did not use Mr. Berlin's report as the basis for the November 2004 report. (Eringer Dep., Ex. 4, at 15:2-14.)[12]  In light of that testimony, there must be some new contrary evidence, but Mr. Chandler has cited none. Mr. Chandler has not said why he eliminated "information and belief," nor has he shown that he acted diligently.[13] Granting this "minor amendment" would require Mr. Berlin either to proceed to trial without knowing what new evidence supposedly

---

[12] Mr. Eringer's report does not refer to Mr. Berlin as a "special source," but as a "dataveillant," (in the transcript of his deposition as "data valent") whom Mr. Eringer relied upon only for information about business addresses in Moscow for the Chandlers. (Eringer Dep., Ex. 4, at 24:1-25:25; Eringer Report, Dkt. 20-6 at 5.) No statement about any Russian business address is a part of any claim in either the original or the amended complaint.

[13] Perhaps Mr. Chandler thinks something in his expert's report supports the amendment. That report was completed in March 2021, more than five months before this motion was filed.

contradicts Mr. Eringer's testimony or to ask to reopen discovery to learn about that new evidence.[14]

### 5.      The January 2018 Emails.

The proposed amended complaint adds two new paragraphs, Nos. 52 and 53, setting forth Mr. Chandler's incomplete account of Mr. Berlin's correspondence with Mr. Eringer about the possibility that then-President Trump's representatives might be interested in Mr. Eringer's files concerning the Chandlers. Here, too, Mr. Chandler's lack of diligence is evident, as he received those emails in May 2022.

Nothing about the facts alleged in those paragraphs has anything to do with any of the elements of the tort of defamation. If those paragraphs were part of the original complaint, Mr. Berlin would have included them in his largely successful motion to strike pursuant to Rule 12(f), as they contain "immaterial" and "impertinent" allegations, obviously intended to prejudice a jury drawn from a jurisdiction where more than 90% of the voters rejected Mr. Trump's candidacy in 2020.

Mr. Chandler appears to be making a claim of attempted defamation, but there is no such tort. The Court should not allow an amendment that forms no part of a "short and plain statement of the claims showing the pleader is entitled to relief," as required by Rule 8(a)(2), and that violates Rule 12(f) by including allegations "not relevant to the resolution of the issue at hand." *Judicial Watch, Inc. v. U. S. Dep't of Commerce,* 224 F.R.D. 261, 263 (D.D.C. 2004), quoted by this Court in its Rule 12(f) Order. (Dkt. 14 at 1.)

---

[14] Of course, if there is no new evidence, Mr. Chandler hardly has acted diligently by not seeking to amend his complaint until this late date.

**CONCLUSION**

Like the plaintiff in *Lurie*, Mr. Chandler "did not comply with the Court's scheduling order and failed to explain his tardiness with good cause." 589 F. Supp.2d at 24. There can be no serious dispute that his proposed amendments would impose extraordinary burdens on and prejudice Mr. Berlin's defense. His motion for leave to amend to assert his new defamation claim and to add his so-called "minor amendments" should be denied.

September 26, 2022                                    Respectfully submitted,

                                                     */s/ John P. Dean*
                                                     John P. Dean
                                                     D.C. Bar No.   362904
                                                     Steven M. Oster
                                                     D.C. Bar No. 376030

                                                     **OSTER McBRIDE PLLC**
                                                     1320 19th Street, N.W., Suite 601
                                                     Washington, D.C. 20036
                                                     (202) 596-5291 (p)
                                                     (202) 747-5862 (f)
                                                     soster@ostermcbride.com
                                                     johndean8@aol.com

                                                     *Counsel to Defendants*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing Opposition to Motion for Leave to Amend was filed using the Court's CM/ECF system and thereby served on counsel of record.

September 26, 2022                          */s/ Steven M. Oster*
                                           Steven M. Oster