UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER CHANDLER, | ) |
| *Plaintiff*, | ) ) ) ) |
| v. | ) **Case No. 1:18-cv-02136-APM** |
| DONALD BERLIN, *et al*., | ) ) ) |
| *Defendants*. | ) ) |

**CHRISTOPHER CHANDLER'S MEMORANDUM IN SUPPORT OF HIS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................................. 1

LEGAL STANDARD .......................................................................................................................... 3

ARGUMENT ………………………………………………………………………………..3

I. Berlin Concedes That His Accusations About Chandler Are False. ................................. 4

II. Berlin Concedes That He Published the Pitch. ................................................................. 8

III. The Negligence Standard Applies Because Chandler Is a Private Figure. ......................... 9

IV. Defendants' Accusations Against Mr. Chandler Are Libelous *Per Se*. ............................ 13

CONCLUSION ................................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 3

*Carr v. Forbes, Inc.*,
    259 F.3d 273 (4th Cir. 2001) .................................................................................... 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................. 3

*Chandler v. Berlin*,
    998 F.3d 965 (D.C. Cir. 2021) .............................................................................. 2, 9

*Cianci v. New Times Publ'g Co.*,
    639 F.2d 54 (2d Cir. 1980) ....................................................................................... 8

*Crowley v. North Am. Telecomms. Ass'n*,
    691 A.2d 1169 (D.C. 1997) ....................................................................................... 4

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967) .................................................................................................. 9

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) .................................................................................. 7

*Fridman v. Orbis Bus. Intelligence Ltd.*,
    229 A.3d 494 (D.C. 2020) ............................................................................. 9, 10, 11

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .................................................................................................. 9

*Hall v. District of Columbia*,
    867 F.3d 138 (D.C. Cir. 2017) ............................................................................. 9, 13

*Herman v. Labor Co-op. Ed. & Publ'g Soc'y*,
    139 F. Supp. 35 (D.D.C. 1956) ................................................................................. 5

*Hoffman v. Washington Post Co.*,
    433 F. Supp. 600 (D.D.C. 1977) ............................................................................... 5

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979) ................................................................................................ 13

*Indosuez Int'l Fin. B.V. v. National Reserve Bank*,
   No. 0600712/2001 (Sup. Ct. N.Y. Cnty. Filed Feb. 21, 2001) .................................................. 6

*Indosuez Int'l Fin. B.V. v. National Reserve Bank*,
   No. 0601467/1999 (Sup. Ct. N.Y. Cnty. filed Mar. 25, 1999).................................................. 6

*Internet Fin. Servs., LLC v. Law Firm of Larson-Jackson, P.C.*,
   310 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................... 7

*Jankovic v. Int'l Crisis Grp.*,
   72 F. Supp. 3d 284 (D.D.C. 2014) ......................................................................................... 10

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
   838 F.2d 1287 (D.C. Cir. 1988) ............................................................................................. 7

*Mazur v. Szporer*,
   No. 03-cv-042, 2004 WL 1944849 (D.D.C. June 1, 2004) ...................................................... 11

*Milkovich v. Lorain Journal Co.*,
   491 U.S. 1 (1990) .................................................................................................................... 4

*Moss v. Stockard*,
   580 A.2d 1011 (D.C. 1990).................................................................................................... 12

*Olinger v. American Sav. & Loan Ass'n*,
   409 F.2d 142 (D.C. Cir. 1969) ................................................................................................ 7

*Oparaugo v. Watts*,
   884 A.2d 63 (D.C. 2005)......................................................................................................... 8

*Pittsburgh Courier Publ'g Co. v. Lubore*,
   200 F2d 355 (D.C. Cir. 1952) ................................................................................................. 7

*Shapiro v. Massengill*,
   661 A.2d 202 (Md. Ct. Spec. App. 1995) ............................................................................... 13

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ........................................................................................... 9, 10

*U.S. Dominion, Inc. v. Powell*,
   554 F. Supp. 3d 42 (D.D.C. 2021) .......................................................................................... 13

*United States ex rel. Yesudian v. Howard Univ.*,
   153 F.3d 731 (D.C. Cir. 1998) ................................................................................................ 8

*United States. ex rel. Fago v. M & T Mortg. Corp.*,
   235 F.R.D. 11 (D.D.C. 2006) .................................................................................................. 9

*Waldbaum v. Fairchild Publ'ns, Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) .................................................................................. 10, 12

*Williams v. District of Columbia*,
   9 A.3d 484 (D.C. 2010) ...................................................................................................... 13

**Statutes**

18 U.S.C. § 1505 ............................................................................................................................ 14

18 U.S.C. § 1956 ............................................................................................................................ 14

Fed. R. Civ. P. 56(a) ........................................................................................................................ 3

**Treatises**

D. Elder, Defamation: A Lawyer's Guide § 5:19 (2022) ............................................................. 13

R. Smolla, 1 Rights & Liabilities in Media Content § 6.29 (2d ed.) ............................................. 8

W. Prosser *et al.*, Law of Torts § 113 (4th ed. 1971) ...................................................................... 8

## INTRODUCTION

Robert Eringer paid Donald Berlin to create a report containing "derogatory or negative information" about Christopher Chandler for Eringer's "ultimate client," Prince Albert II of Monaco. *See* Attachment 1, Decl. of Daniel P. Watkins in Supp. of Christopher Chandler's Mot. for Partial Summ. J. (hereinafter "Decl."), Ex. 1 at 1; Decl. Ex. 2, Eringer Tr. 141:15-141:16. Berlin delivered. He wrote and published a sensational dossier—which billed its contents as "reliable," Decl. Ex. 3 at 8, and coming from human sources, *see id.* at 9 ("source claims that they are befuddled")—that falsely accused Chandler of serious crimes including money laundering, bribery, and involvement in Russian organized crime. The unrebutted evidence establishes that those accusations are false. Berlin himself has admitted that his accusations are not reliable, and that he did not actually believe them and cannot vouch for their truth. Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 151:6-151:14; 138:16-138:19; 147:14-151:5, 184:12-184:13; Decl. Ex. 5, Berlin Aug. 15, 2022 Tr. 107:19-108:15. Berlin has even admitted that he lied about having human sources for his incendiary accusations. *See* Decl. Ex. 6 at 2.

Chandler respectfully moves for partial summary judgment because there is no dispute of material fact that Berlin published accusations that are false and defamatory *per se*, and because Berlin has failed to meet his burden to show that the Court should deviate from the negligence standard that applies by default in defamation cases.

## STATEMENT OF FACTS

In 2002, Eringer—who described himself as the head of Prince Albert's intelligence service in Monaco—approached Berlin about compiling an investigative report on Chandler and his

1

brother. *Chandler v. Berlin*, 998 F.3d 965, 968-69 (D.C. Cir. 2021).[1] Berlin prepared a proposal for compiling the report. Decl. Ex. 1. In it, Berlin noted that Eringer sought "any derogatory or negative information" about the Chandler brothers. *Id.* at 1. Berlin also noted that Eringer was working on behalf of an "ultimate client in this matter." *Id.* Berlin later confirmed that he prepared the report believing it was for Eringer's ultimate client, who he later learned was Prince Albert II. Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 175:1-175:24.

In 2003, Berlin published the report ("the Pitch")[2] to Eringer. *See id.* at 57:20-57:22. In his Pitch, Berlin described Chandler and his brother as "elusive, clandestine and mysterious." Decl. Ex. 3 at 7. Berlin also falsely accused Chandler of participating in a "massive money-laundering scheme," *id.* at 1, colluding with organized crime, *id.* at 3, and conspiring to tortiously interfere in the business of Russia's national bank, *id.* at 1-2. Berlin's Pitch represented that his accusations were "reliable" and came from human and non-human sources that Berlin supposedly double- and triple-checked. *See, e.g., id.* at 8 ("We checked the above information with a third source that used a number of Russian-based databases to check out the above claims … They are deemed reliable because of the advanced technology used to scrape data from disparate and obscure sources."); *id.* at 11 ("we went to a fourth source—again someone that has access to both investigative, legal, intelligence and open source information from within Russia, Switzerland, France, Monoco [*sic*], and Belgium—in an effort to confirm the information"). But Berlin admitted in his deposition that he had not even attempted to verify, confirm, or corroborate his

---

[1] "Berlin" refers collectively to the Defendants in this case, namely, Donald Berlin and the companies he owns and through which he operated at all times relevant to this case.
[2] Throughout this litigation, the parties have referred to Berlin's dossier by various names, including "the Pitch," "the Dossier," and "the Limited Report." All three terms refer to Exhibit 1 to the Complaint. *See* Attachment 1, Decl. of Daniel P. Watkins in Supp. of Christopher Chandler's Mot. for Partial Summ. J., Ex. 3.

2

accusations; that none of his accusations came from human sources; and that he cannot vouch for the truthfulness of his accusations.  Decl. Ex. 5, Berlin Aug. 15, 2022 Tr. 109:5-109:17; Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 55:4-55:8, 145:19-146:2, 147:14-151:5, 184:12-184:16; Decl. Ex. 6, Defs.' Resps. and Objs. to Pl.'s Second Set of Interrogs. at 2; Decl. Ex. 7, Defs.' Suppl. Resps. to Pl.'s First Set of Reqs. for Admis. at 1.

In 2004, Eringer republished Berlin's Pitch to Prince Albert, his "ultimate client."  Decl. Ex. 8; Decl. Ex. 2, Eringer Tr. 13:20-14:11.  It was not until 2018, however, that Chandler learned of the Pitch and discovered Berlin's role in creating it, Decl. Ex. 9, Chandler Tr. at 16:17-16:18, at which point he commenced this litigation, *see* Decl. Ex. 10, Dkt. 1.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  *Id.*  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 257.

## ARGUMENT

To succeed on a defamation claim, a plaintiff must show:

3

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm [*i.e.*, defamatory *per se*] or that its publication caused the plaintiff special harm.

*Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997).

There is no genuine fact dispute regarding most of those elements. Berlin, for instance, does not even attempt to contradict Chandler's sworn testimony—supported by documentary evidence—that the accusations are ***false***. Berlin also admits that he ***published*** the Pitch to Eringer in 2003.

Nor has Berlin met his burden to show that standard of ***fault*** should be actual malice rather than negligence. By Berlin's own admission, Chandler is not a public figure but rather an "elusive, clandestine and mysterious" person who has spent his life shunning the spotlight. That means Chandler can prevail in this case simply by showing that Berlin acted negligently in publishing the Pitch.

Finally, there is also no question that Berlin's accusations in the Pitch are ***defamatory per se*** because they accuse Chandler of criminal activity, including money laundering and conspiring with organized crime. Chandler is therefore entitled to recover presumed damages in this case.

I.   **Berlin Concedes That His Accusations About Chandler Are False.**

To recover for libel, a plaintiff must prove that the statements at issue express or imply verifiably false facts about him. *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19-20 (1990). There is no genuine dispute of material fact that Berlin's accusations about Chandler are verifiably false.

As an initial matter, Berlin concedes that his Pitch is about Chandler. *See* Decl. Ex. 11 at ¶ 65; Decl. Ex. 5, Berlin Aug. 15, 2022 Tr. 113:22-114:10. Although Berlin's Pitch does not name Chandler in every single sentence—just as a biography about a person does not name the person

4

in every single sentence—statements must be read "in context," and it is black-letter law that "the court's function is to determine whether the publication, taken as a whole, is defamatory, not whether [a number of] isolated statements might not be defamatory if published by themselves." *Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 602 (D.D.C. 1977); *see also Herman v. Labor Coop. Ed. & Publ'g Soc'y*, 139 F. Supp. 35, 37 (D.D.C. 1956) (relevant question is how ordinary readers would understand defamatory statements). So it does not matter, for example, that some of the Pitch's sentences name Sovereign Forex or Credit Agricole instead of Chandler, because the Pitch unambiguously states that Chandler and his brother control Sovereign Forex, *see, e.g.*, Decl. Ex. 3 at 11 ("History of Relationship Between Richard and Christopher Chandler and Sovereign Group and Sovereign Forex, Ltd."), and are closely connected with Credit Agricole, *see, e.g.*, *id.* at 4 ("Relationship with Credit Agricole" and "many of [the Chandler brothers'] activities center on their relationship with Credit Agricole"). These statements, in context, establish that the Pitch's accusations are about Chandler and his brother.

Nor is there any genuine dispute that the accusations are false. Take, for example, the many accusations arising from a purported connection between Chandler and Sovereign Forex, the Swiss company that was shuttered in 2002—months before Berlin published the Pitch. *See, e.g.*, Decl. Ex. 3 at 3, 7, 11-12, 19. In 2017, after Berlin's accusations exploded into public consciousness, news outlets investigated the purported connection and found no evidence of it. *E.g.*, Decl. Ex. 12; Decl. Ex. 13 at 61. The prosecutor's office in the Canton of Zurich reached the same conclusion. *See* Decl. Ex. 14. For his part, Chandler denied any connection to Sovereign Forex—or even knowing it existed. Decl. Ex. 13 at 62; Decl. Ex. 9, Chandler Tr. 231:21-232:3. And Berlin even admits he does not believe Chandler has any connection to Sovereign Forex. Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 138:16-138:19, 139:5-139:10.

5

Or consider Berlin's extended description of a legal dispute between Swiss banking giant Credit Agricole Indosuez ("CAI") and Russia-based National Reserve Bank ("NRB"). *See* Decl. Ex. 3 at 1-2, 6-11, 15. Berlin falsely linked Chandler to the dispute by asserting that he conspired with CAI to commit tortious interference against NRB and that he attended a meeting in Geneva with CAI officials as part of the conspiracy. *Id.* at 1, 6, 15. There is no evidence whatsoever that supports this account because it is completely false. Court and passport records show, for instance, that Chandler had nothing to do with the dispute between CAI and NRB, and that he was not in Switzerland at the time when Berlin claimed he was attending the meeting with CAI officials. *See* Decl. Ex. 15, Chandler Decl. at 3-4, ¶ 11; *see also Indosuez Int'l Fin. B.V. v. National Rsrv. Bank*, No. 0600712/2001 (Sup. Ct. N.Y. Cnty. filed Feb. 21, 2001) (court records showing no connection between Chandler and the dispute between CAI and NRB); *Indosuez Int'l Fin. B.V. v. National Rsrv. Bank*, No. 0601467/1999 (Sup. Ct. N.Y. Cnty. filed Mar. 25, 1999) (same). Chandler's sworn testimony confirms as much. *See* Decl. Ex. 9, Chandler Tr. 131:9-131:11, 241:1-241:7. Berlin's deposition testimony, on the other hand, confirms only that he has no basis for believing the accusations about Chandler's purported relationship with CAI. Decl. Ex. 5, Berlin Aug. 15, 2022 Tr. 107:19-108:15; Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 149:12-149:24. Again, unrebutted record evidence demonstrates that Berlin's accusations are false.

That goes for every one of Berlin's defamatory accusations. Chandler has presented undisputed evidence—including his own sworn testimony—that the accusations are categorically false. *E.g.*, Decl. Ex. 9, Chandler Tr. 131:9-131:11 ("I know that everything there, all the—all the accusations of wrongdoing are incorrect, every single one of them."); *id.* At 234:7-234:11 ("the report is patently false"); *id.* At 273:4-273:8 ("I knew that the accusations were false…. And so when reading it, it was like this isn't possible because it's just not true."). When asked whether

6

his accusations are true, Berlin demurred and acknowledged that he has no evidence that his claims are accurate. *E.g.*, Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 147:14-151:5, 184:12-184:13.

Berlin's admitted lack of knowledge about the falsity of his accusations does not rebut Chandler's evidence that they are false, and so does not establish a triable question on falsity. *See Internet Fin. Servs., LLC v. Law Firm of Larson-Jackson, P.C.*, 310 F. Supp. 2d 1, 4 (D.D.C. 2004) ("assertions of difficulties and uncertainty do not establish an issue of material fact sufficient to preclude summary judgment"). All that Berlin's testimony shows is that he published the Pitch with complete disregard for the truth of its contents and the harm it would cause Chandler.

To the extent Berlin argues that he merely repeated defamatory accusations made by others, it is black-letter law that "one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C. Cir. 1988); *Pittsburgh Courier Publ'g Co. v. Lubore*, 200 F.2d 355, 355 (D.C. Cir. 1952). Courts apply this rule of repeater liability "even though the repeater states the source" of the accusation "or makes clear that he himself does not believe the imputation." *Liberty Lobby*, 838 F.2d at 1298-99. They have held it applies even though the repeater "resorts to the customary newspaper evasion 'it is alleged.'" W. Prosser *et al.*, Law of Torts § 113 at 768 (4th ed. 1971); *see Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) ("Liability for repetition of a libel may not be avoided by the mere expedient of adding the truthful caveat that one heard the statement from somebody else."). They have applied it even when the repeater proves "that the source named did, in fact, utter the statement." *Olinger v. American Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969); *see also Pittsburgh Courier Publ'g Co.*, 200 F.2d at 355. Indeed, courts routinely apply the rule of repeater liability to re-publishers "even though [the re-publisher] attributes the libelous statement to the original publisher, and even though he expressly disavows

the truth of the statement." *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) (Friendly, J.). As the author of a leading treatise on defamation summarizes:

> Merely stating that the statement is not that of the repeater, or using the word 'alleged,' or naming the source, or identifying the information as mere 'rumor,' or expressly stating that the story is not believed by the repeater does *not* relieve the repeater of independent liability for the new publication.

R. Smolla, 1 Rights & Liabilities in Media Content § 6.29 (2d ed.).

Berlin's accusations are objectively false. Uncontroverted record evidence bears that out. And Berlin cannot avoid that conclusion by the simple expedient of telling Eringer that the accusations came from other sources and had not been verified. *See, e.g.*, Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 143:14-143:18. Consequently, Chandler is due summary judgment on the issue of falsity.

**II.     Berlin Concedes That He Published the Pitch.**

"[A] cause of action for defamation requires proof of publication of the defamatory statement to a third party." *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005). Berlin has admitted, from the outset of this case, that he published the Pitch to Eringer. He stipulated to it in his answer. Decl. Ex. 16 at 2 ("Defendants admit that Mr. Berlin gave a copy of the [Pitch] only to Eringer."). And he repeatedly admitted it during his sworn Rule 30(b)(6) deposition. Decl. Ex. 5, Berlin Aug. 15, 2022 Tr. 15:2-15:5; Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 139:10-139:19, 141:9-141:14, 145:15-145:18.

An admission in an answer is binding and properly considered by the Court at summary judgment. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 748 (D.C. Cir. 1998). Rule 30(b)(6) deposition testimony is also binding on corporate defendants. *See United*

*States ex rel. Fago v. M & T Mortg. Corp.*, 235 F.R.D. 11, 24 (D.D.C. 2006). Berlin has conceded publication and Chandler is due summary judgment on that issue.[3]

**III.     The Negligence Standard Applies Because Chandler Is a Private Figure.**

A defamation plaintiff must also show that the defendant published the statements at issue "with fault amounting to at least negligence." *Hall v. District of Columbia*, 867 F.3d 138, 148 (D.C. Cir. 2017). The precise "standard against which [D.C. courts] measure the defendant's fault in publishing turns on whether the plaintiff is a public or a private figure." *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 504 (D.C. 2020). Negligence is the default standard, but if the defendant shows that the plaintiff was a public figure when the statements were published, then the plaintiff must show that the defendant acted with actual malice. *See id.*; *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154 (1967) (public figure status determined at time of publication); *Carr v, Forbes, Inc.*, 259 F.3d 273, 278 (4th Cir. 2001) (defendant's burden to prove plaintiff is public figure). If the defendant fails to meet his burden to show that the plaintiff is a public figure, then the plaintiff need only show that the defendant acted negligently. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347-50 (1974).

Berlin cannot show that Chandler was a public figure when Berlin published his defamatory Pitch. Indeed, if ever there were a private-figure plaintiff, it is Christopher Chandler. To begin, he is manifestly not a general-purpose public figure, since he is not a well-known celebrity or household name. *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (quotation marks omitted). "Few people," the D.C. Circuit has observed, "attain the general notoriety that

---

[3] In focusing here on Berlin's 2003 publication of the Pitch to Eringer, Chandler does not concede that no other publications are relevant to this litigation. To the contrary, Chandler is entitled to recover damages, not only for Berlin's 2003 publication of the Pitch to Eringer, but also for Eringer's republications that were reasonably foreseeable. *See Chandler*, 998 F.3d at 970 (describing the District of Columbia's foreseeable republication rule).

9

would make them [general-purpose] public figures." *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). In the *Tavoulareas* case, for example, the D.C. Circuit considered whether the president of Mobil Oil Corp, William Tavoulareas, was a general-purpose public figure for purposes of his libel suit against the Washington Post and one of its reporters. The Court had no trouble concluding Tavoulareas was not a general-purpose public figure:

> A person becomes a general purpose public figure only if he or she is a well-known celebrity, his name a household word. Such persons have knowingly relinquished their anonymity in return for fame, fortune, or influence. They are frequently so famous that they may be able to transfer their recognition and influence from one field to another. Thus, it is reasonable to attribute a public character to all aspects of their lives. William Tavoulareas is a highly prominent individual, especially in business circles, but his celebrity in society at large does not approach that of a well-known athlete or entertainer—apparently the archetypes of the general purpose public figure. The standard as generally applied is a strict one; the Supreme Court has not found anyone to be a general public figure since [1967]. In view of the stringent standards applicable to this category of public figure, we have no difficulty in upholding the District Court's conclusion that the plaintiff was not a general purpose public figure.

*Tavoulareas*, 817 F.2d at 773 (internal citations omitted); *see also Jankovic v. Int'l Crisis Grp.*, 72 F. Supp. 3d 284, 300 (D.D.C. 2014) (defendant conceded that plaintiff, the head of a successful European business enterprise, was not a general-purpose public figure). If the president of Mobil Oil is so clearly not a general-purpose public figure, Chandler most certainly is not.

Chandler is also not a limited-purpose public figure since he had not voluntarily injected himself or been drawn into any particular public controversy when Berlin published the Pitch. D.C. courts apply a three-prong test to determine whether an individual is a limited-purpose public figure. *See Fridman*, 229 A.3d at 505. **First**, the court must determine whether a public controversy existed. *Id.* This requires the court to determine "whether the controversy to which the defamation relates was the subject of public discussion prior to the defamation," and "whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Id.* (quotation marks omitted). **Second**, the court must analyze

10

the plaintiff's role in the controversy. *Id.* Intermittent or tangential participation is not enough; "[t]o be a limited-purpose public figure, the plaintiff must have achieved a special prominence in the debate, and either must have been purposely trying to influence the outcome or could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Id.* (brackets and quotation marks omitted). "***Finally***, if both of the previous elements are satisfied—there is a preexisting public controversy which the plaintiff undertakes to influence—[the court must] consider whether the alleged defamation was germane to the plaintiff's participation in the controversy." *Id.*

Under this well-settled law, Chandler is not a limited-purpose public figure. For one thing, Berlin's Pitch did not touch on any preexisting public controversy. In 2003, when Berlin published the Pitch, there was no controversy—public or otherwise—about Mr. Chandler's supposed criminal history. There is a simple explanation for that: In 2003, Mr. Chandler was an anonymous businessman, *see* Decl. Ex. 13 at 59 (2018 article noting that "Chandler … until recently had almost no public profile despite more than 30 years at the top of international business"), with absolutely no criminal history, *see* Decl. Ex. 9, Chandler Tr. 274:9-274:12 ("any documents that purported any wrongdoing would not stand up to scrutiny"); *see also* Decl. Ex. 13 at 59 (Chandler "has never been arrested, cautioned or convicted of any criminal offence").

Even had there been a public controversy about Chandler in 2003, Chandler would still not qualify as a limited-purpose public figure because he never tried to influence the debate surrounding any such controversy. *See Mazur v. Szporer*, No. 03-cv-042, 2004 WL 1944849, at *4 (D.D.C. June 1, 2004) ("Courts have emphasized a plaintiff's affirmative actions in trying to 'influence' the outcome of the controversy."). Far from engaging the public's attention or channeling it toward any controversy in which he was involved around 2003, Chandler has spent

11

most of his life shunning the spotlight that sometimes comes with business success. *See* Decl. Ex. 9, Chandler Tr. 23:14-23:15. In the Pitch, Berlin describes Chandler as "elusive, clandestine and mysterious." Decl. Ex. 3 at 7. In his report incorporating Berlin's accusations, Eringer refers to Chandler and his brother as "mysterious," "'intensely private' and 'extremely low-profile,'" Decl. 8 at 3, and noted that Chandler "does keep very much to himself, is known to disappear for what is described as holidays on his own and is completely and utterly devoted to his parents." *See* Decl. Ex. 17, Eringer Report at 25. And a 2018 newspaper profile of Chandler—prompted by the fallout from the defamatory accusations in the Pitch—reported that he "until recently had almost no public profile despite more than 30 years at the top of international business," and noted that he "ha[d] given no interviews since he started his business career more than three decades [earlier]." Decl. Ex. 13 at 59, 64. Even Berlin's "research" confirmed that Chandler had not provided any interviews to the press before Berlin published the Pitch. Decl. Ex. 4, Berlin Aug. 16, 2022 Tr. 100:16-19. This pronounced, documented aversion to publicity also militates against any finding that he might be a limited-purpose public figure. *See, e.g.*, *Waldbaum*, 627 F.2d at 1298 (plaintiff may avoid becoming limited-purpose public figure by actively rejecting role in ongoing debate).

      Being the head of a successful business does not make a person any sort of public figure—particularly when the business's operations have nothing to do with any public debate. *Waldbaum*, 627 F.2d at 1299 ("Being an executive within a prominent and influential company does not by itself make one a public figure."); *see also Moss v. Stockard*, 580 A.2d 1011, 1033 (D.C. 1990) (plaintiff did not become a public figure "[m]erely by achieving some success as a basketball coach"); *see generally* D. Elder, Defamation: A Lawyer's Guide § 5:19 (2022) (summarizing caselaw showing that "private status has likewise been accorded to fairly prominent and successful businesspersons"). Nor does the notoriety Chandler acquired because of Berlin's accusations

12

make him any type of public figure for purposes of this litigation. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

The record—including Berlin's own statements in the Pitch—makes clear that Chandler was not a public figure when Berlin defamed him. Consequently, Berlin cannot meet his burden of showing that Chandler is a public figure, and negligence is the applicable standard of fault.

### IV.  Defendants' Accusations Against Mr. Chandler Are Libelous *Per Se*.

Ordinarily, a defamation plaintiff must prove special harm, *i.e.*, the loss of something having economic or pecuniary value. *Williams v. District of Columbia*, 9 A.3d 484, 491 (D.C. 2010). But a defamation plaintiff need not prove special harm if the allegedly defamatory statements are actionable as a matter of law, *i.e.*, defamatory *per se*. *U.S. Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 73 (D.D.C. 2021). "A statement that falsely imputes a criminal offense is defamatory *per se*." *Hall v. District of Columbia*, 867 F.3d 138, 149 (D.C. Cir. 2017). Whether a statement is defamatory *per se* is typically a question of law, suitable for resolution at summary judgment. *See Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995).

Berlin accused Chandler of perpetrating a host of serious crimes, including engaging in a "massive money laundering scheme," Decl. Ex. 3 at 1-2, aiding organized crime elements in obscuring their criminal activities, *id.* at 3, 12-14, conspiring to tortiously interfere in NRB's business dealings, *id.* at 1-2, 6-11—including by bribing corporate officers, *id.* at 2, 15—and leveraging relationships with powerful Russians to avoid criminal investigation, *id.* at 4. Those are accusations of criminal wrongdoing. *See, e.g.*, 18 U.S.C. § 1505 (criminalizing obstruction of justice, including endeavoring to impede a criminal investigation); 18 U.S.C. § 1956

13

(criminalizing money laundering). Because Berlin's accusations are defamatory *per se* as a matter of law, Chandler does not need to prove special damages.

## CONCLUSION

For the foregoing reasons, Plaintiff Christopher Chandler respectfully requests that this Court grant his motion for partial summary judgment: (1) that the Pitch's defamatory statements about him are false, (2) that Berlin published the Pitch, (3) that, when Berlin published the Pitch, Chandler was a private figure, so that he need only show negligence, not actual malice, to prevail in this litigation; and (4) that the defamatory statements in the Pitch are defamatory *per se*.

Dated: January 6, 2023                    Respectfully Submitted,

/s/ *Daniel P. Watkins*

Thomas A. Clare, P.C.
Megan L. Meier
Daniel P. Watkins (*pro hac vice*)
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: tom@clarelocke.com
Email: megan@clarelocke.com
Email: daniel@clarelocke.com

*Attorneys for Plaintiff*