# Exhibit 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------x
CHRISTOPHER CHANDLER, :
:
Plaintiff, :
:
v. : Case No.:
: 1:18-cv-02136-APM
DONALD BERLIN, et al., :
:
Defendants. :
-----------------------------x

Volume 2

Videotaped Deposition of:

DONALD BERLIN,

Taken on Tuesday, August 16, 2022, at 8:30 a.m. at the offices Clare Locke, 10 Prince Street, Alexandria, Virginia, before Teague Gibson, a Notary Public.

* * * * *

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

DANIEL P. WATKINS, ESQ.
NICHOLAS J. BRECHBILL, ESQ.
Clare Locke
10 Prince Street
Alexandria, VA 22314
202.628.7400
daniel@clarelocke.com
nick@clarelocke.com

ON BEHALF OF THE DEFENDANT:

STEVEN M. OSTER, ESQ.
JOHN PATRICK DEAN, ESQ.
Oster McBride PLLC
1320 19th Street, NW, Suite 601
Washington, D.C. 20036
202.596.5291
soster@ostermcbride.com
johndean8@ostermcbride.com

ALSO PRESENT: Jonathan Perry, Video Specialist

question.

A That's a hypothetical that I can't answer that.

Q You provided unverified information that had not been corroborated regarding Mr. Chandler committing various misconduct, including crimes to Mr. Eringer, back in the early 2000s, right?

A Correct.

Q And in January 2018?

A Back up a second. I --

MR. DEAN: You answered his question.

A I'm sorry.

Q So I'll ask a better question. The communications in Plaintiff's Exhibit 109 came after you submitted the proposal, the limited report and the addendum to the limited report to Mr. Eringer, correct?

A Are you asking was this e-mail drafted after that? Yes.

Q So when you're discussing Mr. Eringer's file and the Chandler brothers, that came after you provided Mr. Eringer with multiple reports on the Chandler brothers, correct?

A The two reports you're speaking about.

Q I'm talking about the -- let's call them

Q You can set those exhibits to the side. And then first is Plaintiff's Exhibit 1, then second after that I want you to place Hoffman 9 and then the third document is Hoffman 7.

A So we have Plaintiff's Exhibit 1, then Hoffman 9 and Hoffman 7.

Q Correct. So Plaintiff's Exhibit 1 is titled introduction and overview, Richard Chandler limited global scan, correct? My question is Exhibit 1 is titled introduction and overview Richard Chandler limited global scan, correct?

A Correct.

Q And page 2 of Plaintiff's Exhibit 1 is titled Richard Chandler limited global scan investigation, correct?

A No, it's titled confidential memorandum to file in bold and all capital letters, followed by Richard Chandler limited global scan investigation, followed by the date, followed by the page number.

Q This is the February 24th, 2003 limited global scan that you provided to Robert Eringer?

A Correct.

Q Please turn to Hoffman 9. What's the title of that document?

A It says Richard Chandler partial global

A No.

Q You previously described Mr. Chandler and his brother as being elusive, clandestine and mysterious; does that sound right?

A If I collected that information and reported it in my report, then I would have stated that, but remember, I'm merely a conduit from the data.

Q If Mr. Chandler had given interviews in newspapers, would your research have picked that up back in 2002 or 2003?

A It may or may not.

Q Why do you say may or may not?

A Depends which database I'm accessing and if that database would have that information.

Q As you sit here today, do you remember any interviews that Mr. Chandler gave before 2010?

MR. OSTER: I'm sorry?

A 2010? No.

Q As you sit here today, are you aware of any instance before 2010 in which Mr. Chandler publically defended himself against the accusations in any of the reports you prepared?

A I'm aware of the contents of the discovery.

that there may have been a connection that you're not sure about?

MR. OSTER: Object to the form of the question. This document -- go ahead.

A I don't know that this is -- I can't testify that the contents of this document is accurate.

Q Because?

A Many reasons. I mean, if you look at the document itself, he says here "I have been unable to determine any relationship between Sovereign Forex and its affiliated companies which were the subject of the investigation" and the Sovereign Group". He's unable. That doesn't mean that he couldn't, that means he says he's unable.

Q As you sit here today under oath, do you take the position that Mr. Chandler is associated with the Sovereign Forex company?

A I don't think that's true.

Q Why not?

A Because I don't have any personal knowledge of it.

Q It's hard to hear what you're saying?

A I'm sorry, I don't have any personal knowledge of that.

Q You don't have any personal knowledge of what?

A That he is or is not associated with Sovereign Forex.

Q Did you confirm or verify that Mr. Chandler's brother were connected to Sovereign Forex?

A When?

Q At any time?

A No. I reported what I found in the limited report and gave it to Mr. Chandler and specifically cautioned him about and emphasized that he needs to verify the information regarding Sovereign.

MR. OSTER: Did you mean to refer to Mr. Eringer?

A Yes, I'm sorry.

MR. OSTER: Not Mr. Chandler?

A I'm sorry, Mr. Eringer.

Q That was a mess. I'm going to ask the question again.

MR. OSTER: That's fine.

Q Did you confirm or verify that Mr. Chandler or his brother were connected to Sovereign Forex?

Mr. Chandler's brother controlled a company in Monaco through which they engaged in illegal activities?

A Did I verify or did I confirm?

Q Did you confirm or verify that Mr. Chandler or his brother controlled a company in Monaco through which they engaged in illegal activities?

A What I did is I collected information that I obtained from the databases, I put it in the report and I gave it to Mr. Eringer and told him when I gave to it him this is unverified data and you need to verify it. He accepted that report and told me he understood that.

Q But did you confirm or verify the accusation that Mr. Chandler or his brother controlled a company in Monaco through which they engaged in illegal activities?

A I did nothing more than what I just testified to.

Q So you didn't confirm or verify the accusation?

A No.

Q Is it your position that this accusation about Mr. Chandler and his brother controlling a

A I don't have any personal knowledge about that.

Q My question's a little different?

A I don't hear it as any different.

Q Are you testifying under oath today that the Chandler's Sovereign company was a front company for Gazprom?

A I'm testifying I do not have any knowledge for which I can truthfully state that he is or he isn't. I have no personal knowledge about that question.

Q You didn't confirm or verify the voracity of that accusation, did you?

A I reported that which I collected accurately to Mr. Eringer and told him to make certain that he verify the information and I gave him a number of recommendations that he should follow.

Q But you never verified that that accusation was true, did you?

A I can't testify to that. I don't know.

Q I said you didn't verify?

A No, you said he didn't.

Q No, I didn't. I'll ask the question again. You have to slow down and it's important to

A I'm testifying --

Q Yes or no?

A I can't answer that question yes or no. I can answer that question I have no personal knowledge.

Q So you can't testify that it's true that the Chandler's Sovereign company was a front company or Gazprom, can you?

A I can only testify what I stated.

Q That wasn't my question.

A I can't do better than that.

Q Did you verify or confirm that the Chandler's Sovereign company was a front company for Gazprom?

A I only, as I said before, collected the information that I obtained and reported it to Mr. Eringer with the statement that he needed to verify it.

Q Mr. Berlin, yesterday you testified that the proposal, the limited report and the addendum were not verified or confirmed by you?

A Correct.

Q So what I'm asking you right now is particular allegations within those documents. You already testified none of it was verified and none

of it was corroborated, correct?

A Correct.

Q So I'm having a hard time understanding why you can't -- why your testimony is changing when I'm mentioning specific accusations within those three documents that you've already said were unverified and uncorroborated?

MR. OSTER: Object to the form of the question and statement as to his testimony, go ahead.

A Unless I'm misunderstanding, all I am hearing you say is is this statement true. And I'm saying to you I don't know if the statement is true because I have no personal knowledge about any statement in that report.

Q So when I ask you if you can testify -- when I ask you can you testify that the following statement is true, if the answer's no, you have to say no, if the answer is yes, then you have to say yes?

A But if you don't know, how -- that's not a yes or no.

Q If you don't know something, then you can't testify that it's true. If I asked you is my birthday -- is it true that my birthday's on

July 9th, then you would say I can't testify to that, right?

A Right.

Q And if I said can you testify that it is true that my birthday's on July 9th, you would say no?

A Okay, no.

Q What's the difference? I'm not getting it?

A I guess the way you explain it that way, no, you're right.

MR. OSTER: You're right. That's his testimony. You are right.

Q Can you testify under oath that the following statement is true: The Chandler's Sovereign company was a front company for Gazprom?

A I can't testify under oath that the Sovereign, whatever, is what you just said. I can't testify to that. I'm hung up on this whole --

MR. DEAN: You've answered him. Wait for the next question.

Q Did you ever confirm or verify that the Chandler Sovereign company was a front company for Gazprom?

A No.

Q So you can't testify that that accusation's true?
A No.
Q Did you confirm or verify the accusations that the Chandler brothers were connected with organized crime persons in Russia?
A No.
Q Is it your position today that this accusation was accurate?
A I don't know whether it is accurate or not. I have no personal knowledge for that.
Q So you can't testify that it is true that the Chandler brothers were connected with organized crime persons --
A Or false, I can't testify.
Q I have to finish the question.
A I'm sorry, go ahead.
Q Since you didn't verify or confirm that the Chandler brothers were connected with organized crime persons in Russia, you cannot testify today that that accusation is true, correct?
A I cannot.
Q Did you confirm or verify the accusation that the Chandler's set up a series of offshore facilities to hide their money and assist Russians

in secreting their funds?

A I did not verify that.

Q Is it your position that this accusation is accurate?

A My position is is that I don't know if it is accurate or not.

Q So you --

A I don't have any personal knowledge of it.

Q So you certainly can't testify that it's accurate, correct?

A No.

Q Can you confirm or verify the accusation that Christopher Chandler or his brother agreed to tortiously interference with NRB's relationship with Credit Agricole for a fee of $10 million?

A No.

Q Is it your position that this accusation is accurate?

A My answer is the same, which is I don't have any personal knowledge of that statement so I can't testify to whether it's accurate or not.

Q You certainly can't testify that that accusation is true?

A I can't.

Q Did you confirm or verify the accusation

that the Chandler's perpetrated money laundering for Chechen organized crime elements and former high-ranking officials in the Russian government?

A No.

Q Is it your position that this accusation is accurate?

A My position is what I said before, I don't have any personally knowledge whether it is accurate or isn't accurate.

Q You wouldn't dare testify that the accusation regarding the Chandler's supposedly perpetrating money laundering for Chechen organized crime elements is true?

A No.

Q Did you confirm or verify the accusation that Richard and Christopher Chandler were suspected of a massive money laundering scheme for high-level political types in Russia and Russian organized crime groups?

A No.

Q Is it your position that this accusation is accurate?

A My position, again, is the same, which is I don't have any personal knowledge about it so I can't testify that it's accurate.

Q You certainly can't testify that it is true that Richard and Christopher Chandler were suspected of a massive money laundering scheme for high-level political types in Russia?

A No.

Q If you found out that a third-party relied on these accusations that we just went through and repeated them as though they were true, what would your reaction be?

A I don't have a reaction. I would say they shouldn't have done that.

Q Why?

A Because they're not verified as having been accurately reported.

Q This is Plaintiff's Exhibit 73.

(Exhibit No. 73 was marked)

Q And I would ask that you just review the capture URL at the bottom of the page. Is your website www.icioffshore.com/terms@html, is that one of your websites?

A Yes.

Q You can set that aside.

(Exhibit No. 74 was marked)

Q Same question for Exhibit 74. Does this resemble your website?

A What I knew was that he had engaged me to prepare a report on Mr. Chandler.

Q On behalf of an ultimate client?

A On behalf of an ultimate client.

Q And your testimony is that at the time you didn't know that the ultimate client that Eringer was working for was Prince Albert, correct?

A Correct.

Q But you knew that Mr. Eringer was working for an ultimate client?

A When you say did I know, I did not know that, but I believed that to be true that there was an ultimate client.

Q So you believed that Eringer was working for an ultimate client?

A Correct.

Q Why did you believe that?

A Well, because the opposite would be that he was just doing this for his own purpose.

Q That would be weird?

A It would be odd.

Q Why would it be odd?

A Why would anybody want to gather all this information on somebody for their own purposes?

Q So turning back to Hoffman 7. Can you

A I reported accurately what I was given.

Q I understand what your testimony is, but my question is a little different. You agree that the proposal marked as Hoffman 7 contains explosive accusations against the Chandler's?

MR. OSTER: Object to the form of the question.

A I will again state that whatever information I collected, from whatever source, I put into this proposal.

Q I understand.

A Whether that information is true, false, accurate or what have you, I can't state that. All I can state is that when I asked certain questions or made certain inquiries, I took the results of it and put it into the proposal.

Q I understand that. My question is different. We know these accusations aren't true, but do you agree that the document that's been marked as Hoffman 7 contains explosive accusations against the Chandler brothers?

A They contain accusations, certainly.

Q Is it explosive to accuse someone of laundering money on behalf of Russian Mafia characters?

A No.

Q Have you ever text messaged Mr. Eringer using the text message app?

A No.

Q Have you ever sent any or received any text messages about Mr. Chandler?

A No. Meaning using the i app you're talking about?

Q Using the text messaging app, right?

A No.

MR. WATKINS: That's all.

MR. OSTER: We are clearly done.

VIDEOGRAPHER: Off the record at 2:48 p.m. This is the end of volume two.

CERTIFICATE OF NOTARY PUBLIC

I, TEAGUE GIBSON, the officer before whom the proceeding was taken, do hereby certify that the testimony appearing in the foregoing transcript was taken by me in stenotypy and thereafter reduced to typewriting by me; that said deposition is a true record of the proceedings; that reading and signing was not requested; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

TEAGUE GIBSON, Notary Public in and for the State of Virginia.

Teague Gibson
_______________________________
My commission expires: December 31, 2023