# Exhibit 5

```
               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

-------------------------------x
CHRISTOPHER CHANDLER,          :
                               :
        Plaintiff,             :
                               :
        v.                     :   Case No.:
                               :   1:18-cv-02136-APM
DONALD BERLIN, et al.,         :
                               :
        Defendants.            :
-------------------------------x
```

Videotaped Deposition of:

            DONALD BERLIN,

Taken on Monday, August 15, 2022, at 9:00 a.m. at the offices Clare Locke, 10 Prince Street, Alexandria, Virginia, before Teague Gibson, a Notary Public.

\* \* \* \* \*

```
 1                 A P P E A R A N C E S

 2


 3   ON BEHALF OF THE PLAINTIFF:

 4          DANIEL P. WATKINS, ESQ.
            NICHOLAS J. BRECHBILL, ESQ.
 5          Clare Locke
            10 Prince Street
 6          Alexandria, VA 22314
            202.628.7400
 7          daniel@clarelocke.com
            nick@clarelocke.com
 8

 9   ON BEHALF OF THE DEFENDANT:

10          STEVEN M. OSTER, ESQ.
            JOHN PATRICK DEAN, ESQ.
11          Oster McBride PLLC
            1320 19th Street, NW, Suite 601
12          Washington, D.C. 20036
            202.596.5291
13          soster@ostermcbride.com
            johndean8@ostermcbride.com
14

15

16   ALSO PRESENT:   Jonathan Perry, Video Specialist

17

18

19

20

21

22

23

24

25
```

1    A    Correct.
2    Q    So you transmitted the limited report to
3 Mr. Eringer in the spring 2003; is that right?
4    A    It was -- I think it was in February,
5 roughly in February of 2003.
6    Q    Were there any other reports that you sent
7 to Mr. Eringer about Mr. Chandler or his brother
8 before you sent the limited report?
9         MR. OSTER:  Objection, go ahead.
10   A    I recall the proposal.
11   Q    When you say the proposal, what are you
12 talking about?
13   A    A proposal that I wrote in around, I think
14 it was, roughly, October of 2002, about 20 years
15 ago, roughly.
16   Q    If you look at Exhibit 39 or 40, do you
17 see number 26 -- for the record, which one are you
18 looking at, 39 or 40?
19   A    This is Plaintiff's Exhibit Number 39.
20   Q    Can you read that, please?
21   A    Read what?
22   Q    Number 26, on page 8 of Exhibit 39?
23   A    Okay.  The pleadings, motions, briefs and
24 declarations, affidavits and other materials filed
25 or sent by defendants in this case.

Donald Berlin
August 15, 2022

```
 1  period for data on persons, organizations,
 2  institutions and entities.  Such online databases
 3  could be public, private, proprietary, subscription
 4  based, internet or open source, to the extent they
 5  existed in that time period.  That ends paragraph 4.
 6             Paragraph 5:  It should be noted that
 7  publicly available information which is a component
 8  of open source data has inherent deficits.  For
 9  example, the sirname Chandler is very common, as is
10  their first names.  The corporate name "Sovereign"
11  is likewise quite common.  Therefore, such
12  information should not have been nor should it be
13  relied on except where confirmed by secondary
14  sources, as I would have indicated.  Mr. Eringer
15  certainly knows this.  I did not give anyone
16  permission to release or, excuse me, republish the
17  2003 report.  That's the end of paragraph 5.
18       Q    Please read paragraph 6 aloud.
19       A    Paragraph 6:  Since the 2003 report was
20  based on publically available data and I have not
21  done any research regarding the Chandler's since
22  then, I have no personal knowledge as to whether
23  Mr. Chandler or his brother lived, worked or had any
24  connection to Monaco, had any relationship with
25  Sovereign Forex or other companies with Sovereign in
```

1  their names or engaged in Russian espionage or
2  conspiracy with Credit Agricole Indosuez.  That's
3  the end of paragraph 6.
4      Q    So this declaration was submitted to the
5  court and in some of defendants filings.  Is the
6  information you just read accurate?
7      A    It was accurate when I signed it.
8      Q    What does that mean?  What does that mean?
9      A    In other words, I believed it to be
10 accurate when I signed it based on what I remembered
11 and what I recalled at the time this was accurate.
12     Q    As you sit here today, do you believe it's
13 accurate?
14     A    I would say it's fairly accurate.  I don't
15 see anything that stands out that's not accurate.
16     Q    You can set that aside.
17     A    Set it aside.
18     Q    Yeah.  To clarify for the record, there's
19 no funny business going on.  That was a proposed
20 declaration that Mr. Oster represented that you
21 would be willing to sign, that is an unsigned
22 declaration?
23     A    Okay.
24          MR. WATKINS:  There's no disagreement with
25     that whatsoever.

```
 1              MR. OSTER:  No.
 2              MR. WATKINS:  Can you hand me Plaintiff's
 3       Exhibit 93.
 4              (Exhibit No. 93 was marked)
 5       Q    I'm going to read two sentences and I want
 6   you to just tell me if they're correct:  "The report
 7   was a limited global scan.  It was limited because I
 8   did not attempt to verify, confirm or corroborate
 9   the available information I compiled.  The report
10   was confidential and not intended for disclosure to
11   others.:  Is that true?
12       A    What are you reading from?
13       Q    My question is whether what I read is
14   true?
15              MR. OSTER:  He's asking you whether those
16       two statements are true.
17       A    Yes.
18       Q    So earlier we talked about members of
19   parliament repeating the accusations, some of which
20   are included in your limited report.  Do you
21   remember we talked about that?
22       A    I didn't -- you asked me whether or not I
23   was aware that they stated that.
24       Q    Yeah.  I'm just asking if you remember
25   that part of our examination earlier today?
```

```
 1  What else would I have done differently?  I can't
 2  think of anything.
 3       Q    What would it take for you to retract the
 4  accusations in the proposal, the limited report and
 5  the addendum that you transmitted to Eringer
 6  regarding supposed misconduct that Mr. Chandler
 7  committed?
 8            MR. OSTER:  Object to the form of the
 9       question.
10       A    Well, we tried to negotiate, is that --
11            MR. OSTER:  Yeah, but you probably
12       shouldn't get into settlement discussions, if
13       that's where you're going.
14       A    Is that what you're talking about?
15       Q    No.
16            MR. OSTER:  No.
17       Q    I'm asking you?
18       A    Then I don't understand.  You're asking
19  what would it take for me to retract certain
20  information within the report.  Do you mean that
21  from a settlement perspective?
22       Q    No.  If you take the proposal, the limited
23  report and the addendum that you -- are you familiar
24  with those three documents?
25       A    Yes.
```

| | | |
|---|---|---|
| 1 | Q | They contain accusations that Mr. Chandler |
| 2 | was involved in money laundering? | |
| 3 | A | Yes. |
| 4 | Q | Corruption? |
| 5 | A | Yes. |
| 6 | Q | Had connections with Russian organized |
| 7 | crime? | |
| 8 | A | Yes. |
| 9 | Q | And other criminal misconduct? |
| 10 | A | Yes. |
| 11 | | MR. OSTER:  Object to the form of the |
| 12 | | question, go ahead.  Wait until he finishes his |
| 13 | | question before you agree with it. |
| 14 | A | Okay. |
| 15 | Q | What would it take, as you sit here today, |
| 16 | for you to retract those accusations against | |
| 17 | Mr. Chandler? | |
| 18 | A | Okay.  I understand your question now.  So |
| 19 | what it would take would be that Mr. Chandler would | |
| 20 | have to allow us to do all the searches that we had | |
| 21 | recommended doing and then he would have to submit | |
| 22 | himself to a series of questions, which we would | |
| 23 | propose to him so that we could better -- so we | |
| 24 | could do additional searches.  And then we would do | |
| 25 | all of those searches, we would try and then verify | |

1   A   No.

2   Q   Did you ask her?

3   A   Yes.

4   Q   When did you ask her?

5   A   As soon as I got served.

6       MR. WATKINS:  I think we can leave it

7   there for today.

8       MR. OSTER:  Okay.

9       MR. DEAN:  Okay.  Great.

10      VIDEOGRAPHER:  Off the record at 12:14.

11  This ends testimony for August 15th, 2022.

12      (Deposition concluded at 12:15 p.m.)

```
1                CERTIFICATE OF NOTARY PUBLIC
2

3            I, TEAGUE GIBSON, the officer before whom
4       the proceeding was taken, do hereby certify
5       that the testimony appearing in the foregoing
6       transcript was taken by me in stenotypy and
7       thereafter reduced to typewriting by me; that
8       said deposition is a true record of the
9       proceedings; that reading and signing was not
10      requested; that I am neither counsel for,
11      related to, nor employed by any of the parties
12      to the action in which this was taken; and,
13      further, that I am not a relative or employee
14      of any counsel or attorney employed by the
15      parties hereto, nor financially or otherwise
16      interested in the outcome of this action.
17
18           TEAGUE GIBSON, Notary Public in and for
19      the State of Virginia.
20
21      _____
22   My commission expires:  December 31, 2023
23
24
25
```