# Exhibit 9



# Transcript of **Christopher Chandler**

Monday, October 25, 2021

*Christopher Chandler v. Donald Berlin, et al.*

www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO (800.367.3376)
Scheduling@Trustpoint.One

Reference Number: 108710

```
 1                UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF COLUMBIA

 3    - - - - - - - - - - - - - - - X

 4    CHRISTOPHER CHANDLER,            :

 5         Plaintiff,                  :

 6              v.                     :  No.

 7    DONALD BERLIN, et al.,           :  1:18-cv-02136-APM

 8         Defendants.                 :

 9    - - - - - - - - - - - - - - - X

10                                  Washington, D.C.

11                                  Monday, October 25, 2021

12              Videotaped deposition of CHRISTOPHER

13    CHANDLER, the Plaintiff herein, called for

14    examination by counsel for Defendants in the

15    above-entitled matter, pursuant to notice, the

16    witness being duly sworn by MARY GRACE CASTLEBERRY, a

17    Notary Public in and for the District of Columbia,

18    taken at the offices of Willkie Farr & Gallagher,

19    1875 K Street, N.W., Washington, D.C., at 9:02 a.m.,

20    Monday, October 25, 2021, and the proceedings being

21    taken down by Stenotype by MARY GRACE CASTLEBERRY,

22    RPR, and transcribed under her direction.
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1   APPEARANCES:

 2

 3       On behalf of the Plaintiff:

 4            DANIEL P. WATKINS, ESQ.

 5            MEGAN L. MEIER, ESQ.

 6            Clare Locke

 7            10 Prince Street

 8            Alexandria, Virginia   22314

 9            (202) 628-7400

10            daniel@clarelocke.com

11            megan@clarelock.com

12

13       On behalf of the Defendants:

14            JOHN P. DEAN, ESQ.

15            STEVEN M. OSTER, ESQ.

16            Oster McBride

17            1320 19th Street, N.W., Suite 601

18            Washington, D.C.   20036

19            (202) 596-5291

20            jdean@ostermcbride.com

21            soster@ostermcbride.com

22
```

Trustpoint.One  Alderson
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1   APPEARANCES (Continued):

 2

 3        ALSO PRESENT:

 4             DONALD BERLIN

 5             MALCOLM PEPLOW, Videographer

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

Trustpoint.One  Alderson.   www.trustpoint.one
www.aldersonreporting.com   800.FOR.DEPO
(800.367.3376)

1  real asset.  It's not only a commercial asset,

2  although it is that, it also becomes part of your

3  identity.

4            And so when somebody comes along and

5  creates a fiction around your identity which has no

6  relationship whatsoever to who you are and casts the

7  most malicious allegations without evidence, then the

8  emotional stress is more than significant.  It's

9  gutting.

10      Q.    And when did you first experience that

11 suffering?

12      A.    The first time that I heard that these

13 allegations had been made about us.

14      Q.    And when was that?

15      A.    That would have been -- so if we're -- you

16 need to separate out here what we heard from -- so

17 the first time I heard about Mr. Berlin and his

18 dossier would have been in 2018.

19      Q.    So 2018 is the first time that

20 Mr. Berlin's transmission of the report to

21 Mr. Eringer caused you suffering?

22      A.    No.  In other words, the suffering came

Trustpoint.One Alderson.   www.trustpoint.one
www.aldersonreporting.com   800.FOR.DEPO
(800.367.3376)

```
 1      A.    Sorry, mental anguish from --
 2      Q.    From suffering.
 3      A.    Well, mental anguish is another form of
 4   suffering.
 5      Q.    So mental anguish is included within the
 6   concept of suffering; is that correct?
 7      A.    If you wish, yes.
 8      Q.    I'm sorry?
 9      A.    Yes.
10      Q.    You also say that you seek damages for
11   embarrassment.  What -- describe the embarrassment
12   you endured due to Mr. Berlin's transmission of his
13   Limited Global Scan to Mr. Eringer.
14      A.    Well, I'm a private person.  I haven't
15   sought a public profile.  I value my privacy.  When I
16   found that a copy of my passport with my photograph
17   was made publicly available without my knowledge or
18   approval, that's a problem.
19      Q.    Okay.  And when did that occur?
20      A.    Around -- well, I didn't know when it
21   occurred, but the first -- when I became aware of it
22   was 2010.
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1   support the statements in the Limited Global Scan,
 2   then you would have a different answer about punitive
 3   damages; is that correct?
 4            MR. WATKINS:  Objection as to form.  You
 5   can answer.
 6            THE WITNESS:  It depends what there was.
 7   In other words, I'm not going to speculate on what
 8   he -- on what justification he has.  In other words,
 9   ==I know that everything there, all the -- all the==
10   ==allegations of wrongdoing are incorrect, every single==
11   ==one of them.==  I don't concede that it's possible to
12   produce a document of that length and with that
13   detail without at some point becoming aware that
14   actually there's nothing here.
15   BY MR. DEAN:
16       Q.   Well, it would depend upon the sources
17   that he relied on, if any; is that correct?
18       A.   No, it's not correct.  In other words, I
19   think that there is a responsibility to ensure that
20   the sources that you're relying on are actually --
21   are trustworthy.  And clearly in this case, they
22   weren't because the information that was being
```

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1              MR. DEAN:  Okay.  Let's see.  Yeah.  We
 2   can take our break now.
 3              THE VIDEOGRAPHER:  We are off the record
 4   at 2:52 p.m.
 5              (Recess.)
 6              THE VIDEOGRAPHER:  We are back on the
 7   record at 3:02 p.m.
 8   BY MR. DEAN:
 9       Q.     Okay.  Mr. Chandler, could you turn to
10   page 19 of Exhibit 7 and that has the production
11   number 557 at the bottom.
12              MR. WATKINS:  54 --
13              MR. DEAN:  557.
14              MR. WATKINS:  557.
15              THE WITNESS:  Page 19.  Yes, I have the
16   page.
17   BY MR. DEAN:
18       Q.     And could you review the last two
19   paragraphs on that page?
20       A.     Yes.
21       Q.     And your understanding, I take it, is that
22   Mr. Eringer maliciously conflated a Swiss company
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1  with the name Sovereign with your company in Monaco
2  called Sovereign Asset Management; is that correct?
3       A.    Yes.
4       Q.    And your understanding is that Legatum was
5  able to clear up the confusion by, as the document
6  says, simply asking the Swiss authorities; is that
7  correct.
8       A.    That's correct.
9       Q.    And Legatum did so in 2018; is that
10 correct?
11      A.    That's what it says.  That sounds about
12 right.  I can't recall the exact date, but that
13 sounds about right.
14      Q.    Okay.  And who did they ask -- what Swiss
15 authorities did they ask?
16      A.    I believe they asked the Swiss prosecutor
17 who handled the original Sovereign -- the other
18 Sovereign case.
19      Q.    Now, do you know whether it was -- did
20 that prosecutor still hold the office as a prosecutor
21 in Switzerland?
22      A.    I do not know.

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1        Q.    I'm sorry.
 2        A.    Sorry.
 3        Q.    But what's your understanding of why that
 4   rhetorical question is placed in this document?
 5              MR. WATKINS:  Same objection as
 6   previously.
 7              THE WITNESS:  Well, from my perspective,
 8   the report is patently false, so you have a very
 9   lengthy detailed report that's a fiction.  So the
10   question is why would somebody knowingly produce a
11   fictional work like that?
12              Or the other way you could look at it is
13   why would someone negligently produce a report where
14   they hadn't taken the -- a report which is as damning
15   as that and hadn't taken the care to ensure that what
16   they were producing in detail actually stood up.
17   BY MR. DEAN:
18        Q.    The next sentence after that rhetorical
19   question provides an answer to the question.  Is that
20   your understanding?
21              MR. WATKINS:  And note our running
22   objection.  The document speaks for itself.
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

1  "Given that the entire story was untrue, Berlin
2  simply drafted a report that was a wholesale
3  fabrication."
4            Do you see that?
5       A.   Yes.
6       Q.   Do you agree with that sentence?
7       A.   Yes.
8       Q.   So does that change your testimony about
9  whether you believe Mr. Berlin intentionally authored
10 a false report?
11      A.   Sorry.  I don't make -- I don't see the
12 connection.
13      Q.   Well, it says that Mr. Berlin drafted a
14 report that was a wholesale fabrication.
15           Do you see that?
16      A.   Yes.
17      Q.   And -- well, let me -- let me do it a
18 different way.  If you look at the first sentence in
19 the paragraph, it says that when Eringer found no
20 actual evidence connecting the Swiss Sovereign
21 company with your company, you know, or indeed any
22 evidence of any wrongdoing on your part, that he

1   A.   I suppose he was.

2   Q.   Were you concerned about him being in such

3   a position?

4   A.   ==I suppose -- I didn't expect -- because I==

5   ==knew that the allegations were false and the nature==

6   ==of them were it was a passport copy and something==

7   ==else.==  And so when reading it, it was like this isn't

8   possible because it's just not true.  So the thinking

9   there is like, well, if we sue him, we're just going

10  to draw attention to this.

11  Q.   Did you consider the cost of the

12  underlying litigation in deciding not to sue him?

13  A.   Not that I recall.

14  Q.   Did you consider the moral necessity of

15  standing up for what's right in deciding not to sue

16  him?

17  A.   I don't think that came into it.

18  Q.   Did you consider the harm that would occur

19  if the lawsuit failed when you decided not to sue

20  him?

21  A.   No.

22  Q.   Were you concerned at all that Mr. Eringer

Trustpoint.One  Alderson.   www.trustpoint.one
www.aldersonreporting.com   800.FOR.DEPO
(800.367.3376)

```
 1   possessed documents that said false things about you?
 2      A.   No.
 3      Q.   Why not?
 4      A.   Because it wasn't -- no such documents
 5   could exist because it just wasn't true.
 6      Q.   It's not possible for documents to say
 7   false things about you to exist?
 8      A.   I said -- yes, I mean, people can write
 9   fiction, but I'm not worried about fiction.  In other
10   words, if there were real -- in other words, any
11   documents that purported any wrongdoing would not
12   stand up to scrutiny.
13      Q.   So --
14      A.   So I wasn't worried about that because it
15   just -- they wouldn't be real.
16      Q.   And you didn't think it was important to
17   get a judicial decision saying that any such
18   documents were fiction; is that correct?
19           MR. WATKINS:  Objection as to form.  It's
20   vague.  You can answer.
21           THE WITNESS:  I didn't think about that.
22   BY MR. DEAN:
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800.FOR.DEPO
(800.367.3376)

```
 1                THE VIDEOGRAPHER:  We're off the record at
 2   6:46 p.m.
 3                (Recess.)
 4                THE VIDEOGRAPHER:  We are back on the
 5   record at 6:48 p.m.
 6                MR. DEAN:  We have no redirect.  Thank
 7   you, Mr. Chandler.
 8                THE WITNESS:  Thank you.
 9                MR. WATKINS:  Plaintiff will read and
10   sign, but we have no further questions.
11                MR. DEAN:  Okay.
12                THE VIDEOGRAPHER:  This concludes our
13   deposition.  We are off the record at 6:49 p.m.
14                (Whereupon, at 6:49 p.m., the taking of
15   the instant deposition ceased.)
16
17
18
19
20
21
22
```

```
 1                CERTIFICATE OF REPORTER

 2   UNITED STATES OF AMERICA    ) ss:

 3   STATE OF MARYLAND           )

 4        I, MARY GRACE CASTLEBERRY, RPR, the officer

 5   before whom the foregoing proceedings were taken, do

 6   hereby certify that the foregoing transcript is a

 7   true and correct record of the proceedings; that said

 8   proceedings were taken by me stenographically to the

 9   best of my ability and thereafter reduced to

10   typewriting under my supervision; and that I am

11   neither counsel for, related to, nor employed by any

12   parties to this case and have no interest, financial

13   or otherwise, in its outcome.

14

15                          [Signature: Mary Grace Castleberry]

16                          _____

17                          Notary Public in and for

18                          The State of Maryland

19

20

21   My commission expires:  7/18/2023

22
```