**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHRISTOPHER CHANDLER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Case No. 1:18-cv-02136-APM** |
| | ) | |
| DONALD BERLIN, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

**CHRISTOPHER CHANDLER'S REPLY MEMORANDUM IN SUPPORT OF HIS
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ..............................................................................................................1

I. BERLIN'S ACCUSATIONS IN THE LIMITED REPORT ARE FALSE. ......................2

    A. As a Matter of Law, Berlin Is Liable for the Lies He Published. ...........................2

        1. Berlin cannot disclaim his way out of liability. ..........................................3

        2. It is legally irrelevant that Berlin claims to have sources. ..........................7

    B. Unrebutted Record Evidence Demonstrates That Berlin's Accusations Are False. .......................................................................................................................10

        1. Berlin cannot discount Chandler's sworn testimony. ................................10

        2. Independent evidence shows that Berlin's accusations are false. .............12

    C. No Material Facts Demonstrate That Berlin's Accusations About Chandler Are True. ......................................................................................................................15

II. CHANDLER IS A PRIVATE FIGURE. .........................................................................17

    A. By Pleading Facts Showing That Berlin Knowingly Published the False Accusations, Chandler Also Pleaded Facts Sufficient to Show That Berlin Negligently Published Those Same Falsehoods. ..................................................17

    B. The Fact That Chandler Was Part of a Business That Fought Corruption Does Not Make Chandler a Public Figure. ....................................................................21

        1. For purposes of private-figure analysis, Berlin is wrong to treat Chandler and his companies as the same entity. .......................................22

        2. The publications Berlin cites as proof that Chandler enjoyed a public profile regarding Russian corruption are irrelevant to the private-figure analysis because they were printed after the Limited Report. ...................23

        3. Nothing about Chandler's activities or profile makes him a public figure. .......................................................................................................23

III. THE LIMITED REPORT MAKES ACCUSATIONS ABOUT CHANDLER AND THOSE ACCUSATIONS ARE DEFAMATORY *PER SE*. ..............................................25

CONCLUSION ........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrington v. United States*,
    473 F.3d 329 (D.C. Cir. 2006) ................................................................................................11

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*,
    564 F.3d 462 (D.C. Cir. 2009) ................................................................................................11

*Carr v. Brown*,
    395 A.2d 79 (D.C. 1978) ...........................................................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................................13

*Chesapeake & Ohio Ry. Co. v. Greaver*,
    66 S.E. 59 (Va. 1909) ..............................................................................................................20

*Cianci v. New Times Publ'g Co.*,
    639 F.2d 54 (2d Cir. 1980) ....................................................................................................3, 6

*Climate Investigations Ctr. v. U.S. Dep't of Energy*,
    16-cv-124-APM, 2022 WL 3277350 (D.D.C. Aug. 11, 2022) ...............................................13

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004) ......................................................................................6

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967) .................................................................................................................23

*District of Columbia v. Chinn*,
    839 A.2d 701 (D.C. 2003) .......................................................................................................20

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) .................................................................................................10

*Foretich v. Glamour*,
    741 F. Supp. 247 (D.D.C. 1990) ...............................................................................................4

*Fridman v. Orbis Bus. Intel. Ltd.*,
    229 A.3d 494 (D.C. 2020) .......................................................................................................24

*Fuisz v. Selective Ins. Co.*,
    61 F.3d 238 (4th Cir. 1995) .....................................................................................................19

*Geleta v. Gray,*
    645 F.3d 408 (D.C. Cir. 2011) ........................................................................ 11

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ...................................................................................... 24

*Greene v. Dalton,*
    164 F.3d 671 (D.C. Cir. 1999) ...................................................................... 11

*Hale v. Scott,*
    371 F.3d 917 (7th Cir. 2004) .................................................................. 3, 6, 7

*Hoover v. Peerless Publ'ns, Inc.,*
    461 F. Supp. 1206 (E.D. Pa. 1978) ................................................................. 7

*Jackson v. Paramount Pictures Corp.,*
    68 Cal. App. 4th 10 (1998) .............................................................................. 6

*Jankovic v. Int'l Crisis Grp.,*
    593 F.3d 22 (D.C. Cir. 2010) ..................................................................... 9, 10

*Jordan v. District of Columbia,*
    20 F. App'x 2 (D.C. Cir. 2001) ..................................................................... 10

*Khodorkovskaya v. Gay,*
    5 F.4th 80 (D.C. Cir. 2021) ............................................................................. 5

*Ledford v. Gutoski,*
    877 P.2d 80 (Or. 1994) .................................................................................. 20

*Liberty Lobby, Inc. v. Dow Jones & Co.,*
    838 F.2d 1287 (D.C. Cir. 1988) ................................................................... 3, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ...................................................................................... 13

*Milkovich v. Lorain J. Co.,*
    497 U.S. 1 (1990) ............................................................................................ 5

*Mixon v. Washington Metro. Area Trans. Auth.,*
    959 A.2d 55 (D.C. 2008) ............................................................................... 18

*Moldea v. N.Y. Times Co.,*
    22 F.3d 310 (D.C. Cir. 1994) ........................................................................... 5

*Montgomery v. Risen,*
    197 F. Supp. 3d 219 (D.D.C. 2016) ............................................................ 8, 9

*Montgomery v. Risen*,
   875 F.3d 709 (D.C. Cir. 2017) ..................................................................11

*Morse v. Times-Republican Printing Co.*,
   100 N.W. 867 (Iowa 1904) ........................................................................4

*Olinger v. American Sav. & Loan Ass'n*,
   409 F.2d 142 (D.C. Cir. 1969) ..............................................................7, 8, 9

*Pagés v. Feingold*,
   928 F. Supp. 148 (D.P.R. 1996), *aff'd*, 114 F.3d 1169 (1st Cir. 1997) ...................19

*PCR Contractors, Inc. v. Danial*,
   354 S.W.3d 610 (Ky. Ct. App. 2011) ..........................................................20

*Phillips v. Evening Star Newspaper Co.*,
   424 A.2d 78 (D.C. 1980)..........................................................................10

*Pittsburgh Courier Publ'g Co. v. Lubore*,
   200 F.2d 355 (D.C. Cir. 1952) ....................................................................4

*Rushforth v. Council of Econ. Advisers*,
   762 F.2d 1038 (D.C. Cir. 1985) ................................................................10

*Sabir v. District of Columbia*,
   755 A.2d 449 (D.C. 2000)....................................................................20, 21

*Sabra v. Pompeo*,
   453 F. Supp. 3d 291 (D.D.C. 2020) ............................................................16

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ..............................................................22, 24

*Travelers Cas. & Sur. Co. v. Schur*,
   146 F. Supp. 3d 795 (E.D. Va. 2015)..........................................................19

*United States v. Gurr*,
   471 F.3d 144 (D.C. Cir. 2006) ..................................................................16

*United States v. Hoffman*,
   964 F.2d 21 (D.C. Cir. 1992) ....................................................................14

*US Dominion, Inc. v. Byrne*,
   600 F. Supp. 3d 24 (D.D.C. 2022) ............................................................4, 9

*Veg-Mix, Inc. v. U.S. Dep't of Agric.*,
   832 F.2d 601 (D.C. Cir. 1987) ..................................................................15

*Waldbaum v. Fairchild Publ'ns*,
   627 F.2d 1287 (D.C. Cir. 1980) ............................................................22, 24

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001) .................................................................5, 25

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) ....................................................................4

*Wilkerson v. Wackenhut Protective Servs., Inc.*,
   813 F. Supp. 2d 61 (D.D.C. 2011) ...............................................................16

*Ye v. Holder*,
   644 F. Supp. 2d 112 (D.D.C. 2009) ...............................................................9

**Rules**

Fed. R. Evid. 201(b) .......................................................................................15

**Other Authorities**

D. Bartlett & J. Steele, *Empire: The Life, Legend, and Madness of Howard Hughes*
   (W.W. Norton & Co. 2016) ..........................................................................24

Frederick Schauer, *The Proof* (2022) .............................................................14

R. Smolla, 1 Law of Defamation §§ 3:93, 4:88 (2d ed.) .............................3, 18

Restatement (Second) of Torts § 578 .............................................................3, 6

W. Prosser *et al.*, Law of Torts § 113 (4th ed.) .............................................3

## INTRODUCTION

Berlin's[1] opposition offers no reason to deny any part of Chandler's straightforward motion for partial summary judgment.  In fact, it offers additional reasons why Chandler's motion should be granted in full.  Not only does Berlin concede that he published the accusations about Chandler in the Limited Report, his opposition fails to refute Chandler's proof that those accusations are false and defamatory *per se*, and that Chandler is a private figure.

The gravamen of Berlin's opposition is that his accusations about Chandler were not false because they were sourced by third parties and because he invited Robert Eringer to fact-check the contents of his libelous report.  But these arguments run contrary to the undisputed facts in the record and longstanding defamation law principles.  Publishers do not have license to defame simply by attributing their charges to third parties or urging readers to conduct additional research about their targets.

Berlin does not argue that his accusations against Chandler are true.  That is because he cannot credibly do so.  A mountain of evidence shows his charges are false.  He has not produced a single witness suggesting that Chandler has been involved in any wrongdoing whatsoever.  To the contrary, Swiss prosecutors, Chandler's passport records, and statements from public officials alike all support Chandler's unrebutted testimony that Berlin's accusations are completely false.  Berlin's own opposition attaches public reports showing that, far from being some sort of criminal, Chandler heads companies that have undertaken laudable work rooting out and fighting corruption and financial mismanagement.

Berlin also contends that his accusations against Chandler are not defamatory *per se* despite the fact that he alleged that Chandler was "suspected of a massive money-laundering scheme" for

---

[1] "Berlin" refers to Defendants.

"organized crime groups" and "high-level political types in Russia." Berlin has pointed to no caselaw that supports his position or calls into question the weight of authority holding that accusations of criminal wrongdoing are defamatory as a matter of law. Because there is none.

Berlin's next argument—that Chandler failed to allege that Berlin acted negligently—fares no better. Chandler alleged that Berlin published the defamatory falsehoods with actual malice. Berlin concedes that proving actual malice is a higher burden than proving mere negligence. And he has failed to rebut the law recognizing that allegations supporting a more culpable mental state are sufficient to allow plaintiff to proceed under a less demanding theory.

Finally, Berlin argues that Chandler is not a private figure based on public reports about companies in which he invested. Chandler is legally distinct from those entities for these purposes, however, and his association with them do not make him a public figure. Moreover, the reports on which Berlin relies are irrelevant because they were all published long *after* the Limited Report.

Chandler's motion for partial summary judgment should be granted in full.

## I.     BERLIN'S ACCUSATIONS IN THE LIMITED REPORT ARE FALSE.

Throughout this litigation, Berlin has repeatedly refused to vouch for the accusations he printed in his Limited Report. *See* Dkt. 88-7 at 138:16-19, 139:5-10, 147:14-151:5, 184:12-13; Dkt. 88-8 at 107:19-108:15. Now, instead of offering competent evidence to create a genuine dispute of material fact regarding the falsity of his accusations, he resorts to arguments that are legally and factually flawed.

### A.     As a Matter of Law, Berlin Is Liable for the Lies He Published.

Berlin contends that he can escape liability because he stated he was not certain whether the statements he published were true and cited others as the sources of the false statements. Both contentions contravene black-letter law.

### 1.    Berlin cannot disclaim his way out of liability.

Berlin's first argument is that he is immune because he told Eringer that his accusations about Chandler were unverified and Eringer thus understood that the accusations might not be true. Dkt. 93 at 24-26.

That argument runs headlong into the repeater rule.[2]   The rule recognizes that "one who republishes a defamatory statement 'adopts' it as his own, and is liable in equal measure to the original defamer," even if the repeater "makes clear that he himself does not believe the imputation." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C. Cir. 1988); *see also Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004) (Posner, J.) ("Nor is a libel privileged by being labeled a 'rumor' the accuracy of which the libeler declines to vouch for.  This is implicit in the rule that republishing a libel is not privileged, even though the republisher doesn't vouch for its truth."); *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) (Friendly, J.) (repeater rule applies "even though [the repeater] attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement").   In other words, flagging derogatory information as a "mere rumor, or expressly stating that the story is not believed by the repeater, does *not* relieve the repeater of independent liability."  R. Smolla, 1 Law of Defamation § 4:88 (2d ed.).

The repeater rule is not, as Berlin suggests, mere dictum.  *See* Dkt. 93 at 27-29.  It is hornbook law.  *See* W. Prosser *et al.*, Law of Torts § 113 at 768 (4th ed.) ("republisher of defamatory statement is liable for it even though he resorts to the customary newspaper evasion 'it is alleged'"); Restatement (Second) of Torts § 578, cmt. e (repeater is "subject to liability even though he expressly states that he does not believe the statement that he repeats to be true").  And

---

[2] The repeater rule is sometimes called the republication rule.

that is exactly how D.C. courts regard it.  *E.g.*, *US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 34 (D.D.C. 2022) (recognizing repeater rule); *Foretich v. Glamour*, 741 F. Supp. 247, 253 (D.D.C. 1990) (same); *Dameron v. Washington Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) (same).

There are, at most, two ways for a repeater to avoid liability under the repeater rule, and Berlin cannot avail himself of either one.  First, a repeater can show that he republished the statement **subject to a privilege**—like the litigation privilege or the fair report privilege.  *See White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990); *Pittsburgh Courier Publ'g Co. v. Lubore*, 200 F.2d 355, 355 (D.C. Cir. 1952); *Carr v. Brown*, 395 A.2d 79, 85 (D.C. 1978).  But Berlin did not repeat the accusations subject to any privilege, and he does not argue otherwise.

Second, under some very old caselaw from other jurisdictions—which has never been adopted by the District of Columbia—a repeater might be able to avoid liability by showing that he repeated the statement **in order to fully and completely deny its truth**.  *See Morse v. Times-Republican Printing Co.*, 100 N.W. 867, 871 (Iowa 1904) ("An incidental expression of disbelief in the truth of the libel, not amounting to a full and complete denial thereof, is no defense.").  But Berlin's partial qualifiers do not come close to the type of "full and complete denial" that might exempt a statement from the repeater rule.  Indeed, the purported disclaimers were not denials at all.  Instead of telling Eringer the accusations were false, Berlin told him only that the accusations were unverified and that Eringer should verify them before relying on them further. Dkt. 93-2 at 2, ¶ 5.

The nature and content of Berlin's Limited Report also give the lie to any suggestion that Berlin somehow disavowed the truth of his accusations.  Most obviously, there would be no legitimate purpose for Berlin to give Eringer a report full of acknowledged falsehoods.  Nor would there be any legitimate reason for Eringer (or his "ultimate client," Prince Albert) to pay thousands

of dollars for such a report.  Simply by publishing the Limited Report to Eringer, therefore, Berlin warranted that his accusations met a baseline credibility threshold—that they were at least worth taking seriously.  Berlin also repeatedly emphasized that his accusations came from "reliable" sources and "quality intelligence," and that he had cross-checked several of them multiple times. *E.g.*, Dkt. 88-6 at 1, 8, 11.  So even if the District of Columbia recognized a "full and complete denial" exception to the repeater rule, it would not apply to this case.  The repeater rule governs.

Berlin's argument to the contrary rests on a misreading of the law.  It is true that for a statement to be actionable, it must "express or imply a verifiably false fact about [the plaintiff]." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001).  Under this rule, works of fiction, statements of pure opinion, and rhetorical hyperbole are not actionable because audiences would not understand them to make ***verifiable*** assertions about actual people or events.  *See Khodorkovskaya v. Gay*, 5 F.4th 80, 84-85 (D.C. Cir. 2021) (a fictional play featuring ghosts and a stuffed tiger could not be reasonably understood to make factual assertions); *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 313-15 (D.C. Cir. 1994) (explaining that the context and genre of a writing influences whether a reader understands the publication to contain verifiable assertions of fact); *see also Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (to ensure room for "imaginative expression" and "rhetorical hyperbole," statements are only actionably false if they have an explicit or implicit factual foundation).

That rule has no bearing on this case.  Even Berlin acknowledges that his accusations in the Limited Report—a piece of professional intelligence reporting—were reasonably understood as verifiable assertions about the real world.  Berlin's supposed disclaimers make that point express: his assertions were, he says, always meant to be verified by reference to real-world evidence.  Dkt. 93-2 at 2, ¶ 5.

Berlin contends that, if an audience knows a statement is unverified or that the speaker is unsure of its truth, the audience cannot reasonably understand the statement to make any false and verifiable assertions about the real word.  But that is wrong, as cases from across the country demonstrate.  Speakers routinely pair their accusations with disclaimers that the accusations are just rumors or that the speakers do not necessarily vouch for their accusations.  Courts, in turn, routinely hold that such disclaimers do not absolve the speakers of liability for the accusations, as even the mere repetition of a rumor gives it defamatory currency.  *E.g.*, *Hale*, 371 F.3d at 919 (not a defense that defendant had labeled defamatory statement as mere "rumor" when repeating it); *Condit v. Dunne*, 317 F. Supp. 2d 344, 368 (S.D.N.Y. 2004) (defendant's "emphasis on his statement 'I can't authenticate any of this' and his characterization of his statements as 'theory'" did not make his statements non-actionable); *Jackson v. Paramount Pictures Corp.*, 68 Cal. App. 4th 10, 26 (1998) (repeater liable even if he "indicates that he is merely repeating a rumor," rather than established fact).  Disclaimers and other expressions of disbelief are, at most, relevant to damages, not falsity or defamatory meaning.  *See* Restatement (Second) of Torts § 578 cmt. e.

At bottom, Berlin is not asking this Court to apply the law; he is inviting it to gut the repeater rule by creating a sweeping, new exception to it—one that immunizes any repeater who expresses even mild uncertainty about the truthfulness of the accusations he repeats.  Accepting that invitation would do more than just contravene what the D.C. Circuit and other courts have held about the repeater rule, which is that it applies even if the repeater expresses doubt, skepticism, or outright disbelief in the truth of the republished statement.  *See Liberty Lobby,* 838 F.2d at 1298; *Hale*, 371 F.3d at 919; *Cianci*, 639 F.2d at 60-61.  Berlin's sought-after exception would strike at the repeater rule's core purpose: stifling the spread of false and defamatory rumors.  *See Cianci*, 639 F.2d at 61 (narrowing the republication rule "would permit the expansion of a

defamatory private statement, actionable but without serious consequences, into an article reaching thousands of readers, without liability on the part of the republisher"); *Hale*, 371 F.3d at 919 (explaining that "[a] 'rumor' defense would be particularly unfortunate").  Creating such an exception would empower rumor-mongers and gossip-hounds to destroy people's reputations and livelihoods with impunity.

This Court should decline Berlin's invitation to overrule black-letter law.  It should hold, as a matter of law, that Berlin's tepid disclaimers do not exempt him from the repeater rule.

### 2. It is legally irrelevant that Berlin claims to have sources.

Berlin's other argument for disregarding the repeater rule is that "courts have recognized that a truthful report that someone else made a defamatory statement does not necessarily result in liability for the person who made that report."  Dkt. 93 at 26.  Courts have recognized no such thing.  Just the opposite, in fact, it is black-letter law that a repeater cannot evade liability under the repeater rule merely by showing "that the source named did, in fact, utter the statement." *Olinger v. American Sav. & Loan Ass'n*, 409 F.2d 142, 144 (D.C. Cir. 1969); *Hoover v. Peerless Publ'ns, Inc.*, 461 F. Supp. 1206, 1209 (E.D. Pa. 1978) (not a defense that defendant "simply collected information from others and passed it along, without personally vouching it").

Berlin argues that he is entitled to summary judgment because he claims that his sources really said what he attributed to them.  Dkt. 93 at 26-27.  As a factual matter, Berlin has now admitted that—contrary to what he suggests in his report, *e.g.*, Dkt. 88-6 at 8 ("second source, who is an expert on Russian matters")—he did not actually verify, confirm, or corroborate the contents of his report with ***any*** human intelligence sources.  Dkt. 88-10 at 2.  And Berlin has failed to put forward a shred of documentary evidence that his purported online sources even existed, let alone that he repeated the information in them accurately.

But even if Berlin had accurately repeated information he obtained from sources, his legal argument would still fail under the D.C. Circuit's decision in the *Olinger* case. In that case, the defendant sent a letter to the plaintiff's military superiors stating that, "Mrs. Olinger reports that Col. Olinger is unwilling to permit her to sell the property, and he will not keep the payments current on the first and second trust." *Olinger*, 409 F.2d at 143. As the court noted, the statement "was 'true' only because it was prefaced by 'Mrs. Olinger reports that ….'" *Id.* at 144. The court explained that "[t]he law affords no protection to those who couch their libel in the form of reports or repetition" and that "the repeater cannot defend on the ground of truth simply by proving that the source named did, in fact, utter the statement," the court reversed the grant of summary judgment for the defendant. *Id.* Berlin's argument here is materially indistinguishable from the *Olinger* defendants' and ought to be rejected for the same reason.

In asking this Court to disregard longstanding D.C. Circuit precedent, Berlin cites only a pair of district court decisions. Neither contradicts the *Olinger* rule or supports Berlin's novel position. In *Montgomery v. Risen*, 197 F. Supp. 3d 219 (D.D.C. 2016), for instance, the court held that the statements at issue were non-actionable, not because they were accurately repeated or repeated with an appropriate caveat, but because they were non-actionable opinions. The court said so over and over, including throughout the only page for which Berlin cites the opinion. *E.g.*, *id.* at 248 ("In addition, Risen's assertion that '[c]razy became the new normal' is also a loose, rhetorical turn of phrase, and a statement of Risen's subjective opinion."); *id.* at 249 ("But Risen's own subjective opinion that Montgomery is a con artist is also a non-actionable opinion"); *id.* at 249 ("Montgomery's argument is unavailing, however. A person's opinion concerning which events rank among the greatest hoaxes in American history is a quintessential example of a subjective opinion.").

8

The *Montgomery* decision does not even mention the repeater rule, let alone narrow the rule's scope. The closest it comes is a parenthetical—which is the only part of the opinion Berlin quotes—noting that the accuracy of a repetition is potentially relevant to actual malice, not falsity. *Id.* ("(indeed, having factually reported the statements of others from their sources, it is hard to understand how Risen could have published those statements with actual malice, either)"). Berlin is wrong, then, to suggest *Montgomery* embraces any exception to the repeater rule.

The only other decision Berlin cites for the proposition that the repeater rule exempts repetitions of defamatory falsehoods is *Ye v. Holder*, 644 F. Supp. 2d 112 (D.D.C. 2009). But the district court in *Ye* did not even regard the case as involving a repeated statement. The *pro se* plaintiff in *Ye* took issue with corrections experts' determination that he was "a security risk." *Id.* at 117. The district court regarded that official determination—which one of the defendants relayed to the plaintiff—as a freestanding fact, not a statement alleging facts. *Id.* ("Plaintiff effectively concedes the *fact* of this determination while disputing only its accuracy."). Because *Ye* involved a statement describing an official action, not the repetition of a false, defamatory statement, the decision has nothing to do with the repeater rule or any exceptions to it.

In his argument about accurately repeating and attributing the accusations, Berlin is again inviting this Court to invent the law, rather than apply it. Accepting his position would not only require this Court to disregard *Olinger* and its progeny, but would also require it to retire the venerable fair report privilege as a feature of defamation law. For generations, that privilege has "represent[ed] an exception 'to the common law rule that one who repeats or republishes a defamation uttered by another 'adopts' it as his own." *US Dominion*, 600 F. Supp. 3d at 34. But "a defendant must 'clear[] two major hurdles' to qualify for the fair report privilege." *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 26 (D.C. Cir. 2010) (quoting *Phillips v. Evening Star Newspaper*

9

*Co.*, 424 A.2d 78, 89 (D.C. 1980)).  "It must show, first, that its publication was a 'fair and accurate report' of a qualified government source, and, second, that the publication properly attributed the statement to the official source."  *Id.*  Berlin's proposed rule—that any accurate republication of anyone else's accusations is not false as a matter of law—would eliminate any need or role for the fair report privilege's "official source" requirement; so long as the publication was an accurate report of *some* source, and properly attributed its contents to that source, it would be exempt from the repeater rule.  *See Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) (making exactly this point).  That Berlin's position would require this Court to retire the fair report privilege is just one more reason for this Court to reject it.

Berlin's disclaimers are legally irrelevant to falsity, as is the fact that Berlin claims to have accurately repeated accusations he claims he obtained from unidentified sources.

### B.     Unrebutted Record Evidence Demonstrates That Berlin's Accusations Are False.

As an alternative to his arguments about the repeater rule, Berlin claims that Chandler's motion for summary judgment must be denied because Chandler has not carried his burden of showing that Berlin's accusations are false.  Berlin is mistaken.

### 1.     Berlin cannot discount Chandler's sworn testimony.

Chandler testified—repeatedly, under oath, and subject to questioning from Berlin's lawyers—that Berlin's accusations are false.  *See, e.g.*, Dkt. 88-12 at 131:9-11, 231:21-232:3, 241:1-7.  That evidence, on its own, is sufficient to carry his burden at summary judgment, since it is unrebutted.  *See Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1043 (D.C. Cir. 1985) (unrebutted declaration "would be fully adequate to support the court's grant of summary judgment"); *Jordan v. District of Columbia*, 20 F. App'x 2, 3 (D.C. Cir. 2001) ("district court properly granted summary judgment on the basis of appellee's unrebutted affidavit").

To get out from under it, Berlin asserts that Chandler's sworn deposition testimony is not cognizable at summary judgment because it is "conclusory."  Dkt. 93 at 30.  While Berlin is correct that a party's "conclusory" testimony is not competent evidence at summary judgment, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999), he is mistaken about the meaning of "conclusory," a term that does not apply to a witness's testimony about whether he did or did not do something.

Sworn testimony is "conclusory" only if it asserts facts or conclusions (1) that are outside the witness's personal knowledge, *and* (2) for which the witness offers no supporting facts.  *See, e.g.*, *Geleta v. Gray*, 645 F.3d 408, 412 (D.C. Cir. 2011); *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  So, for example, in the *Greene* case, a witness's testimony that an employer hired an applicant with "less experience" was deemed conclusory because it was not clear that the witness had any personal knowledge about the applicant's experience.  *Greene*, 164 F.3d at 675. Likewise, in the *Montgomery* case, the witness's testimony that his software "did work" and "did predict actual terrorist incidents" was conclusory because both of those statements reflected subjective evaluations that hinged on considerations the witness never identified.  *Montgomery v. Risen*, 875 F.3d 709, 714 (D.C. Cir. 2017).

Conversely, testimony is not conclusory if—like Chandler's testimony in this case—it reflects facts known personally to the witness.  *See, e.g.*, *Geleta*, 645 F.3d at 412 (plaintiff's testimony about his own job responsibilities was not conclusory and did not require further factual background); *Arrington*, 473 F.3d at 338 (*Greene* "easily distinguishable" from case where plaintiff testified about his own experience); *see also Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 466 (D.C. Cir. 2009) (refusing to consider claim because affiant demonstrated no "personal knowledge" of the matter).  Chandler knows, personally, that Berlin's accusations about him are false.  Indeed, no one else can testify more authoritatively about that

topic.  Berlin is simply wrong, therefore, that Chandler's testimony about his own conduct is not competent evidence that Berlin's accusations are false.

### 2.  Independent evidence shows that Berlin's accusations are false.

Chandler's unrebutted testimony is independently sufficient to meet his burden of showing falsity at summary judgment.  But Chandler has also offered an array of other evidence corroborating his testimony that Berlin's accusations about him are false.  That includes:

- Information about his passport showing that he was not present at a clandestine meeting Berlin accused him of attending for purposes of receiving an illicit bribe, *see* Dkt. 88-18;

- Press reports confirming the absence of evidence corroborating the accusations in the Limited Report, *see, e.g.*, Dkt. 88-16 at 3 ("This newspaper has been unable to corroborate any of the sensational claims."); Dkt. 88-16 at 4 ("Eringer has never produced evidence to suggest the Chandlers were involved in any unlawful activity" and "No evidence of wrong-doing [by Chandler] was found."); Dkt. 88-16 at 62 ("Despite extensive inquiries in the UK, France and Switzerland, it was not possible to confirm the most serious claims.");

- A letter from a government investigator declaring that he uncovered no evidence of any connection between Chandler and the companies the Limited Report accuses of unlawful activity, *see* Dkt. 88-17; and

- Public retractions by people who had previously repeated the accusations in the Limited Report, explaining that they had subsequently learned that the accusations were false, *see, e.g.*, Dkt. 88-15.

Just as tellingly, when given the opportunity, Berlin has repeatedly refused to stand behind his accusations from the Limited Report.  When asked if the Limited Report is accurate, he has only responded "I don't know whether it is accurate or not" and that he "can't testify that [the accusations are] accurate."  *See* Dkt. 88-7 at 138:16-19, 139:5-10, 147:14-151:5, 184:12-13; Dkt. 88-8 at 107:19-108:15.  His refusal to vouch for his own accusations is further proof of their falsity.

Berlin's response to all that is to insist that some of Chandler's additional evidence is lacking because it should contain more background details and further explanation.  Dkt. 93 at 31-32.  But that is not the standard.  Rather, Chandler need only proffer competent evidence

demonstrating the absence of a genuine issue of material fact on the issue of falsity. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At that point, the burden shifts to Berlin to produce some evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Chandler's additional evidence—especially when considered together with his unrebutted testimony, but also on its own—carries his burden. Take, for instance, the letter he produced from the Chief Prosecutor of the Swiss Canton of Zurich, confirming: (1) that there was no connection between Sovereign Forex and Chandler's company, Sovereign Asset Management; and (2) that, according to the prosecutor's findings, the Chandlers were not involved in the Canton's investigation of Sovereign Forex. Dkt. 88-17. Berlin attempts to minimize the letter by noting that the prosecutor did not say exactly what documents he reviewed, may have missed something, or might not have spent time looking through older files. Dkt. 93 at 31. All of that is rank speculation. If Berlin thinks the prosecutor overlooked important evidence supporting Berlin's accusations, it was Berlin's burden to come forward with that evidence. But Berlin's speculation that the prosecutor's search could or should have turned up additional records does not create a genuine dispute of fact about the letter's substance, which rebuts Berlin's accusations about Chandler. *See Climate Investigations Ctr. v. U.S. Dep't of Energy*, 16-cv-124-APM, 2022 WL 3277350, at *2 (D.D.C. Aug. 11, 2022) ("mere speculation that more records should exist does not create a genuine dispute of fact that the search was inadequate").

Berlin also attempts to wave away Chandler's citation to the records in two New York lawsuits involving Credit Agricole Indosuez ("CAI") and the National Reserve Bank of Russia ("NRB"). Dkt. 93 at 31. Berlin accused Chandler of having a hand in the conflict between those two entities and of committing various forms of misconduct as part of that role. *E.g.*, Dkt. 88-6 at

10 (alluding to a plan to have Chandler "commit tort[i]ous interference between NRB and GazProm" on behalf of CAI).  In his Limited Report, Berlin spent several pages describing the conflict and the litigation, noting that it was "all apparently the result of a clandestine plan by CAI to use one of its major customers (Chandlers and Sovereign Fourex) to effect this conspiracy." Dkt. 88-6 at 12.  Given the allegation that Chandler was at the center of the dispute, one would expect him to have been featured—or at least mentioned—in the years-long litigation between NRB and CAI concerning the very conflict to which Chandler allegedly contributed.  But Chandler's name appears nowhere in the voluminous records of those cases, which corroborates Chandler's unrebutted testimony that he in fact had nothing to do with the dispute.  Dkt. 88-2 at 6.

Berlin argues that Chandler's evidence about the CAI-NRB litigation is not proof Chandler was not involved in the conflict between those two entities.  That is incorrect.  Especially with regard to a years-long dispute featuring a massive record, the fact that there is no mention of him as playing any part in the conflict is evidence that Chandler was not connected with the conflict— and certainly not a central player in it, as Berlin falsely claimed.  *See, e.g.*, *United States v. Hoffman*, 964 F.2d 21, 24 (D.C. Cir. 1992) (absence of evidence linking person to a crime is evidence that person is not linked to the crime); Frederick Schauer, *The Proof* 157 (2022) (explaining that "the absence of evidence can be evidence of absence when it follows actual efforts to prove presence").  Indeed, because clearing up Berlin's accusations requires Chandler to disprove a series of counter-factual statements, the absence of evidence will often be the best evidence Chandler has available, apart from his own testimony.

Berlin also faults Chandler for not attaching as an exhibit all the records from the CAI-NRB litigation that *do not* mention his name.  Public court filings are readily accessible to Berlin, yet Berlin chose not to attach them because they do not mention Chandler.  In any event, this Court

can take judicial notice of the fact that those public court filings do not mention Chandler.  *See* Fed. R. Evid. 201(b); *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987).

Finally, Berlin denies that Chandler's passport records prove anything relevant to this case. Dkt. 93 at 31-32.  He is mistaken.  One of Berlin's defamatory accusations is that Chandler attended a meeting with CAI officials in early July 2002 in Geneva, Switzerland "to discuss a second, more intensive campaign to harm NRB in its relationships with key customers."  Dkt. 88-6 at 16.  It is obviously probative of the falsity of that accusation—which charges Chandler with a specific instance of conspiring to tortiously interfere with NRB—that Chandler was not even in Switzerland in July 2002.  *See* Dkt. 88-18 at 4-5, ¶ 11.

Chandler has presented ample competent evidence that more than suffices to prove his innocence and his case on falsity.  Indeed, a significant part of Berlin's brief is dedicated to discussing efforts taken by Chandler's company to root out corruption and introduce "higher corporate governance standards" in Russia.  Dkt. 93 at 36.  This additional evidence corroborates Chandler's testimony and shows the falsity of Berlin's accusations that Chandler was ***complicit*** in corruption, money laundering, and related financial wrongdoing.

### C.    No Material Facts Demonstrate That Berlin's Accusations About Chandler Are True.

Berlin, by contrast, has failed to identify any competent evidence that his accusations about Chandler were true.  In fact, he mentions just two documents that, in his view, establish a genuine fact dispute on the issue of falsity.  Neither does so.

First, Berlin cites to what Eringer says are notes from an interview that Eringer's former associate, Piers Erskine, supposedly conducted with Ivo Hoppler, the former Chief Public Prosecutor of the Canton of Zurich.  Dkt. 93 at 31.  Even assuming those double-hearsay notes

could be rendered admissible—they cannot[3]—the document does not actually corroborate Berlin's accusations against Chandler.  Just the opposite, it notes that Hoppler "cannot prove" that "the Chandler brothers were behind the Sovereign [Forex] operations," meaning his belief that the Chandlers were involved was pure speculation.  Dkt. 93-5 at 3.  Hoppler's admittedly unsubstantiated speculation that Chandler was involved with Sovereign Forex is not evidence competent to oppose Chandler's express and unequivocal denials based on his own personal knowledge.  *See Sabra v. Pompeo*, 453 F. Supp. 3d 291, 308 (D.D.C. 2020) ("unsubstantiated speculation, whether in the form of a [party's] own testimony or other evidence submitted by a [party] to oppose a summary judgment motion, do[es] not create genuine issues of material fact"); *Wilkerson v. Wackenhut Protective Servs., Inc.*, 813 F. Supp. 2d 61, 67 (D.D.C. 2011) ("Personal belief, speculation, and hearsay … are simply insufficient to defeat a motion for summary judgment.").

Second, Berlin cites "Monaco police files" as proof that his accusations might be true.  Dkt. 93 at 32.  The sum total of the evidence in the files are two notes about Chandler, both of which simply reproduce accusations Eringer made in 2002 as the head of the so-called Monaco Intelligence Service.  *See* Dkt. 93-7 at 4, 7.  Those accusations, in turn, repeated statements Berlin made in the Proposal he gave Eringer in advance of the Limited Report.  In short, Berlin's only purported proof supporting his accusations traces back to Berlin's own false statements, as relayed through Eringer.  That is not independent evidence that Berlin's accusations are true; it merely establishes that Berlin's false accusations were repeatedly republished.

---

[3] In a footnote, Berlin characterizes the interview notes as business records.  *See* Dkt. 93 at 31 n.17.  But interview notes only qualify as business records if both the interviewer and the interviewee were acting in the regular course of business.  *See United States v. Gurr*, 471 F.3d 144, 151-52 (D.C. Cir. 2006).  There is no indication—much less evidence—Hoppler was acting in the regular course of his business as a prosecutor during his supposed interview with Erskine.

Because Chandler carried his burden of identifying competent evidence showing that the accusations against him are false, and because Berlin has implicitly conceded falsity by steadfastly refusing to stand by the truth or his claims and by pointing to no competent rebuttal evidence, there is no material factual dispute that would preclude summary judgment for Chandler on falsity.

## II.   CHANDLER IS A PRIVATE FIGURE.

Berlin also opposes Chandler's motion for summary judgment that he is a private figure. If Chandler is designated a private figure, he can prevail in this case by showing that Berlin negligently published false statements about him, rather than having to prove that Berlin published the false statements with actual malice.  Berlin makes two arguments in response.  First, he asserts that Chandler's status as a private figure is moot because Chandler has not pled facts that could support a negligence theory.  Second, according to Berlin, even if Chandler has not forfeited his right to proceed on a negligence theory, he cannot proceed on such a theory because Chandler is, in fact, a limited-purpose public figure for purposes of statements about corruption and criminality in Russia.  Both arguments fail.

### A.   By Pleading Facts Showing That Berlin Knowingly Published the False Accusations, Chandler Also Pleaded Facts Sufficient to Show That Berlin Negligently Published Those Same Falsehoods.

Berlin's first response to Chandler's private-figure motion is to argue that, because the private-figure designation is only significant in cases where the plaintiff is entitled to pursue a negligence theory, and because Chandler has forfeited the right to pursue a negligence theory by failing to plead facts that could support such a theory, there is no reason for the Court to grant Chandler's motion on the private-figure question.  Dkt. 93 at 32-33 (cross-referencing Dkt. 93 at 2-14).  Berlin's argument that Chandler has not pursued a negligence theory is based on his belief that Chandler's complaint alleges exclusively that Berlin ***knowingly*** published false facts.  Dkt. 93

at 10-13, 33.  Knowledge is a different and more culpable mental state than mere negligence, Berlin continues, so that, in pleading only that Berlin acted knowingly, Chandler has necessarily not pleaded that Berlin acted negligently.  Dkt. 93 at 10, 12, 33.

Berlin's argument is logically flawed because it treats negligent as meaning inadvertent or unintentional.  ***That is not what negligent means.***  In tort law, negligence is not a mental state; it is a breach of a duty.  In defamation law, more specifically, to plead that someone ***negligently*** published a false statement is to plead facts showing that they breached their duty to exercise at least ordinary care in ascertaining the statement's truth.  *See* R. Smolla, 1 Law of Defamation § 3:93 ("Negligence principles in defamation cases may be couched in the language of a 'duty to care.'").  Whether the publisher breached his duty inadvertently, recklessly, knowingly, or purposefully is immaterial; negligence is established by the breach of the duty itself, regardless of the defendant's mental state—which is why the tort of negligence does not include a *mens rea* element.  *See, e.g.*, *Mixon v. Washington Metro. Area Trans. Auth.*, 959 A.2d 55, 58 (D.C. 2008) (setting out the four elements of negligence, none having to do with the defendant's mental state).

To plead that someone ***knowingly*** published a false statement is just to plead a more culpable breach of the same duty involved in a negligent publication.  Someone who negligently publishes a false statement does so without demonstrating ***enough*** care for the truth.  Someone who knowingly publishes a false statement, by comparison, does so without demonstrating ***any*** care for the truth.  By definition, then, any knowingly false statement will also be a negligently-made false statement, because someone who has demonstrated no care for the truth will always have thereby also demonstrated insufficient care for the truth.

Berlin does not address that point.  He fails to cite any cases holding that a defendant who knowingly published a false statement is not also thereby liable for negligently publishing the same

false statement.  There are, by contrast, cases from around the country expressly stating that charging someone with having published a statement with actual malice—that is, knowing it to be false or with reckless disregard for its falsity—subsumes a charge of negligently publishing the false statement.  *See* Dkt. 89-2 at 10 (listing cases).  Berlin tries to paint these cases as setting forth a rule that only applies to malice of the recklessness variety but not the knowing kind.  Dkt. 93 at 10-12.  But the caselaw expressly and unequivocally refutes that made-up distinction, recognizing that "negligent defamation is subsumed in proof of intentional defamation." *Fuisz v. Selective Ins. Co.*, 61 F.3d 238, 244 n.3 (4th Cir. 1995); *see also, e.g.*, *Travelers Cas. & Sur. Co. v. Schur*, 146 F. Supp. 3d 795, 801 (E.D. Va. 2015) ("knowing defamation subsumes negligent defamation"); *Pagés v. Feingold*, 928 F. Supp. 148, 153-54 (D.P.R. 1996), *aff'd*, 114 F.3d 1169 (1st Cir. 1997) (where defendant intentionally and maliciously disseminated defamatory matter for extortionate purposes sufficient to fulfill the constitutional malice standard, *a fortiori* negligence was proved).

Berlin, by contrast, cites no authority for the proposition that there is a material distinction between knowing falsehoods and reckless ones.  Instead, he cites the *Dominion* case for the unremarkable proposition that a defamation plaintiff can show actual malice either by showing that the defendant knew his defamatory statement was untrue or that he acted with reckless disregard for the statement's truth.  Dkt. 93 at 10-11.  It is not clear why Berlin thinks it helps him to point out that defamation law does not materially distinguish between knowledge and reckless disregard.

The only other cases Berlin cites to support his asserted dichotomy stand for the basic proposition that a person cannot negligently commit an intentional tort.  Of course, that is right: pleading facts showing a less culpable mental state will not satisfy a plaintiff's obligation to plead facts showing a more culpable one.  But Berlin fails to cite any cases showing the opposite—that

pleading facts showing a more culpable mental state does not sufficiently plead facts showing a less culpable one. And, in fact, tort cases from around the country refute that proposition.[4]

Especially against that backdrop, the cases Berlin cites are unhelpful to him. He cites *District of Columbia v. Chinn*, 839 A.2d 701, 708 (D.C. 2003), for the proposition that "it is impossible to negligently commit assault and/or battery[,] as the states of mind are separate and incompatible." That proposition does nothing to prove his point about facts showing a *more* culpable mental state somehow being inadequate to prove the defendant also acted with a *less* culpable mental state.

The only other decision Berlin cites is *Sabir v. District of Columbia*, 755 A.2d 449 (D.C. 2000), which is unhelpful to him for essentially the same reason as *Chinn*. The issue in *Sabir* was that the plaintiffs pleaded that police "negligently caused the assault and battery, arrest and detention of plaintiffs." *Id.* at 452. Because assault and battery require intent, a more culpable mental state than mere negligence, the Court explained, the plaintiffs had pleaded "a nonexistent cause of action." *Id.* That is what led the court to affirm the directed verdict for the plaintiffs in that case, as the Court said expressly. *Id.* at 452-53.

The part of *Sabir* that Berlin focuses on is the paragraph noting that the plaintiffs in that case had belatedly attempted to proceed on a simple negligence theory in place of the one (nonexistent) cause of action set forth in the complaint. *Id.* at 453. The court found the plaintiffs' attempt unavailing because their complaint failed to plead facts necessary to make out a negligence

---

[4] *E.g.*, *Ledford v. Gutoski*, 877 P.2d 80, 85 (Or. 1994) (battery, while an intentional tort, has a lesser included tort of negligently inflicted injury, which is automatically adequately pleaded whenever the plaintiff properly states a claim for battery); *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 618 (Ky. Ct. App. 2011) (negligent misrepresentation is a lesser-included tort of fraudulent misrepresentation); *Chesapeake & Ohio Ry. Co. v. Greaver*, 66 S.E. 59, 60 (Va. 1909) (claim for intentional trespass automatically states a claim for negligent trespass).

claim.  Specifically, they failed to specify a negligent act and failed to characterize the breach of duty which might have resulted in negligence liability.  *Id.*  And so the court found that, because they had failed to plead facts supporting particular elements of negligence, they could not belatedly proceed on a negligence claim.  *Id.*

*Sabir* does not help Berlin's case. There is no allegation that Chandler's claim fails to plead all the elements necessary for defamation.   And *Sabir* does not stand for the proposition that pleading a *more* culpable mental state means a plaintiff cannot proceed on a theory involving a *less* culpable mental state.  Indeed, what got the plaintiffs in *Sabir* into trouble was precisely their failure to plead a more culpable mental state.   At most, then, *Sabir* stands for the irrelevant proposition that a plaintiff who fails to plead the requisite elements of two torts cannot proceed on either of them.

There is no support for Berlin's argument that a plaintiff who pleads facts showing that the defendant knowingly published falsehoods has not thereby also pleaded that the defendant negligently published those same falsehoods.  The Court should reject Berlin's invitation to create this new law.

**B.    The Fact That Chandler Was Part of a Business That Fought Corruption Does Not Make Chandler a Public Figure.**

Alternatively, Berlin argues that Chandler is a limited-purpose public figure because he was part of an investment fund that invested in Russia and because the fund played a role in rooting out corruption in Russia's business community.  But the law refutes the proposition that merely helping manage a company that takes notable stands is enough to make a person a public figure. For purposes of the law, Chandler is not his companies.  And even if, by virtue of his connection with his companies, Chandler personally has some sort of public reputation today, he did not have that reputation in early 2003, when Berlin published his Limited Report.

1. **For purposes of private-figure analysis, Berlin is wrong to treat Chandler and his companies as the same entity.**

Much of Berlin's opposition consists of quotes describing how Sovereign Limited, the investment firm co-founded by Chandler and his brother, spent years fighting to root out corruption in Russia.  Dkt. 93 at 33-36.  Just one of the quotes mentions "the Chandlers," and none of them names Chandler individually.  Every other statement to which Berlin points refers to efforts by Sovereign, the company, or by other people who are not Chandler.  *E.g.*, Dkt. 93 at 34 (describing "Sovereign's activism"); Dkt. 93 at 35 (describing how "Sovereign's 'attempts to modernize the management of [Gazprom] became more active'"); Dkt. 93 at 36 ("Sovereign played a significant role in corporate governance reform in Russia for a decade").  Berlin even attributes conduct to the Chandlers that the source material expressly attributes to Sovereign.  *Compare, e.g.*, Dkt. 93 at 34 ("The Chandlers found, however, that Novolipetsk's management was 'diverting profits away from shareholders and tax authorities.'"), *with* Dkt. 93-8 at 54 ("Sovereign learned that the company's management was diverting profits away from shareholders and tax authorities.").

As Berlin recently pointed out, Chandler is not his companies; he is legally distinct from them.  *See* Dkt. 86-2 at 15-16.  The law is unequivocal on this point.  For purposes of public figure analysis, the fact that a person is an executive at an influential company does not by itself make the person a public figure.  *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1299 (D.C. Cir. 1980).  To become a public figure as the head of a business enterprise, a person must take on a personal profile in connection with decisions at that enterprise.  *Id.*; *see also Tavoulareas v. Piro*, 817 F.2d 762, 773-74 (D.C. Cir. 1987).  The bare fact that Sovereign played a notable role fighting Russian corruption—which is all Berlin shows—does not make Chandler a public figure.

**2. The publications Berlin cites as proof that Chandler enjoyed a public profile regarding Russian corruption are irrelevant to the private-figure analysis because they were printed after the Limited Report.**

Berlin's public-figure argument also relies almost exclusively on publications that post-date the Limited Report.  *See* Dkt. 93-7 (2020 pamphlet published by Chandler's brother); Dkt. 93-11 (pamphlet published by Legatum more than a decade after the Limited Report).  The few newspaper clippings Berlin includes that pre-date the Limited Report do not mention Sovereign or Chandler.  *See* Dkt. 93-8.  There is, in short, no evidence that anyone outside what Berlin calls the "emerging markets community" knew, ***at the time the Limited Report was published***, about Sovereign's anti-corruption work.

This is fatal to Berlin's public-figure argument because whether a person is a public figure is determined as of the time he was defamed.  *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154 (1967).  That Berlin has produced no evidence pre-dating the publication of the Limited Report to suggest that Chandler—or even Sovereign—was known in connection with fighting Russian corruption means he has failed to carry his burden of showing that Chandler enjoyed any sort of public profile at the time the Limited Report was published.  That is doubly so given all the evidence Chandler has presented establishing that he enjoyed no such public profile until quite recently.  *See* Dkt. 88-2 at 12 (collecting evidence).

**3. Nothing about Chandler's activities or profile makes him a public figure.**

Berlin also identifies no evidence that Chandler engaged in any of the activities or behaviors that can make a business leader a public figure.  According to the D.C. Circuit and the D.C. Court of Appeals, a business leader might become at least a limited-purpose public figure if he: (1) makes speeches; (2) testifies before Congress; (3) publishes articles; (4) makes use of continuing access to the media; (5) becomes an activist and projects his own image beyond the

dollars and cents aspects of marketing; (6) steps into the public spotlight regarding a particular debate; or (7) achieves special prominence in a public debate. *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 505 (D.C. 2020); *Waldbaum*, 627 F.2d at 1296-97; *Tavoulareas*, 817 F.2d at 773-74.

The record is devoid of evidence showing Chandler did any of that. It is not simply that he never actively "thrust [himself] to the forefront" of any major controversies—although that fact suffices to make him a private figure. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974); *Waldbaum*, 627 F.2d at 1292. It is that he spent most of his life actively rejecting the spotlight, and doing so with remarkable success. *See Waldbaum*, 627 F.2d at 1294-95, 1298 (plaintiff may avoid becoming limited-purpose public figure by actively rejecting role in ongoing debate); *see also* Dkt 88-7 at 100:16-19; Dkt. 88-16 at 59, 64 (evidence of Chandler actively avoiding the spotlight before Berlin's accusations became public knowledge in 2017).

That is what distinguishes Chandler from Howard Hughes, to whom Berlin compares Chandler for purposes of private-figure analysis. Dkt. 93 at 38. Hughes was famously a film tycoon who directed and wrote multiple pictures; a world-record-setting daredevil pilot; a man who bought two airlines and named one of them after himself; a winner of the Congressional Gold Medal and someone who testified before Congress on multiple occasions, in front of galleries packed with reporters; an inductee into the National Aviation Hall of Fame; and romantically involved with several celebrities at various points in his life. *See generally* D. Bartlett & J. Steele, *Empire: The Life, Legend, and Madness of Howard Hughes* (W.W. Norton & Co. 2016). He was, unlike Christopher Chandler, a world-famous celebrity and household name.

III.   **THE LIMITED REPORT MAKES ACCUSATIONS ABOUT CHANDLER AND THOSE ACCUSATIONS ARE DEFAMATORY *PER SE*.**

Berlin's final argument is that he is not liable because he has "ma[de] no 'accusations'" about Chandler that are defamatory.  Dkt. 93 at 38.  Under D.C. law, a statement is defamatory "if it tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community."  *Weyrich*, 235 F.3d at 627.  Berlin accused Chandler of laundering money, conspiring to tortiously interfere with massive business institutions, taking bribes in exchange for illicit conduct, and consorting with and aiding organized crime.  *See* Dkt. 88-2 at 13-14 (summarizing accusations in Limited Report and explaining why they are defamatory *per se*).  These statements are defamatory as a matter of law because they accuse Chandler of being a criminal and they make Chandler appear "odious, infamous, or ridiculous."

Berlin's argument that the Limited Report does not make accusations rests, not on the content of the statements in his Limited Report, but on the fact that the statements were supposedly accompanied by a disclaimer that they had not yet been verified.  As described above, however, that disclaimer bears on damages, not whether the statements are actionably defamatory.  The repeater rule means Berlin is liable for the statements' content, irrespective of the disclaimer.

<u>CONCLUSION</u>

For the reasons set forth above and in Chandler's opening brief, the Court should grant Chandler's motion for partial summary judgment and rule: (1) Berlin's statements about Chandler are false, (2) Berlin published them to a third party, (3) Chandler is a private figure, and (4) Berlin's accusations are libelous *per se*.

Dated: March 7, 2023                     Respectfully Submitted,

                                         /s/ *Daniel P. Watkins*

                                         Thomas A. Clare, P.C.
                                         Megan L. Meier
                                         Daniel P. Watkins (*pro hac vice*)
                                         Nicholas J. Brechbill
                                         CLARE LOCKE LLP
                                         10 Prince Street
                                         Alexandria, Virginia 22314
                                         Telephone: (202) 628-7400
                                         Email: tom@clarelocke.com
                                         Email: megan@clarelocke.com
                                         Email: daniel@clarelocke.com
                                         Email: nick@clarelocke.com

                                         *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that Christopher Chandler's Reply Memorandum in Support of His Motion for Partial Summary Judgment was filed using the Court's CM/ECF system and thereby was served on all counsel of record.

March 7, 2023

/s/ *Daniel P. Watkins*
Daniel P. Watkins (*pro hac vice*)