UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER CHANDLER,** | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No. 1:18-cv-02136-APM |
| **DONALD BERLIN,** *et al.*, | ) ) ) |
| *Defendants*. | ) ) ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR RECONSIDERATION**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. ("Rule") 54(b), Defendants Donald Berlin, Investigative Consultants, Inc., and Investigative Consultants of Washington, D.C., Inc., respectfully ask the Court to reconsider portions of its rulings in the September 5, 2023, order denying their motion for summary judgment, (Dkt. 102) (the "Summary Judgment Order"), and the September 5, 2023, order granting Plaintiff's motion for leave to amend the Complaint. (Dkt. 103) (the "Amendment Order".) Defendants seek reconsideration on the following grounds:

1. In allowing Plaintiff to pursue claims arising out of alleged republications of Mr. Berlin's report, the Court made a clear error of law in interpreting the opinion of the D.C. Circuit in this case.

2. The Court's orders appear to accept two of Plaintiff's factual claims as undisputed, even though the record contains evidence disputing those claims.

      3. The Court misunderstood Defendants' argument concerning Robert Eringer's alleged understanding that Mr. Berlin's report was false. That argument was based on the allegations in Plaintiff's complaint and did not rely upon any claim that the evidence concerning Mr. Eringer's belief was undisputed.

Rule 54(b)'s standard for reconsideration of a non-final order is well-established.  The Rule says an interlocutory order "may be revised at any time before entry of a final judgment adjudicating all the claims and all the parties' rights and liabilities." In *Leach v. District of Columbia,* 2023 WL 2645707 (D.D.C. March 27, 2023) this Court recognized that Rule 54(b) permits reconsideration " 'as justice requires.' " *Id.* at *1 (quoting *Capitol Sprinkler Inspection, Inc., v. Guest Servs., Inc.,* 630 F.3d 217, 227 (D.C. Cir. 2011) (citation omitted). This Court more fully described the proper standard as follows:

> Justice may require revision when the Court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."

*Leach,* 2023 WL 2645707 at *1 (quoting *Singh v. George Wash. Univ.,* 383 F. Supp.2d 99, 101 (D.D.C. 2005) (citation omitted.) *See Bayshore Community Hospital v. Azar,* 325 F. Supp.3d 18, 22 (D.D.C. 2018); *Washington Tennis & Education Foundation, Inc., v. Clark Nexsen, Inc.* 324 F. Supp. 3d 128, 135 (D.D.C. 2018). Reconsideration is also appropriate

> when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.

*Bernier v. Trump,* 299 F. Supp. 3d 150, 156 (D.D.C. 2018) (internal quotation marks and citations omitted.) As shown below, Defendants' requests for reconsideration satisfy these standards.

## I. THE COURT OF APPEALS' OPINION PRECLUDES PLAINTIFF FROM SEEKING DAMAGES FOR ANY REPUBLICATION OF MR. BERLIN'S REPORT TO PRINCE ALBERT; THIS COURT'S CONTRARY RULING IS A CLEAR ERROR OF LAW.

The Summary Judgment Order rejected Defendant's argument that "plaintiff is foreclosed . . . from seeking damages for Eringer's republication of the Pitch to his 'ultimate client,' Prince Albert." (Dkt. 102 at 12.) That order recognized the Court of Appeals has precluded Plaintiff from recovering any damages for Mr. Eringer's alleged republication in 2017, but said "the Circuit did not consider whether any *other* republication might qualify as a distinct harm and therefore give rise to additional damages." (*Id.* at 13, original emphasis.) We respectfully submit that the Court's interpretation of the Court of Appeals' opinion was a clear error of law.

Prior to the Court of Appeals' opinion, both the parties and this Court understood that Plaintiff's complaint alleged only two publications of Mr. Berlin's report, *i.e.,* Mr. Berlin's 2003 transmittal to Mr. Eringer and Mr. Eringer's supposed republication of that report in 2017.[1] The record of Defendants' original 2018 summary judgment motion confirms that no republications other than the 2017 republication are at issue in this case. Defendants noted that Plaintiff's complaint never identified any specific publication of the Limited Report for which Mr. Chandler sought damages and argued that Plaintiff alleged only two publications: the 2003 delivery of the report to Mr. Eringer and Mr. Eringer's supposed republication of the report to the British press. (Dkt. 21-1 at 8.) Plaintiff never disputed that those were the only publications at issue. When it

---

[1] The Summary Judgment Order incorrectly says that Count One of Plaintiff's complaint is based on Defendants' initial publication to Mr. Eringer in 2003, while Count Two is based on Mr. Eringer's 2017 republication. Dkt. 102 at 1. The complaint does not allege separate counts based on the 2003 publication and the 2017 republication. Instead, Count One (entitled "The First 34 Pages of the Pitch") alleges Mr. Berlin defamed Plaintiff in the 34 pages of the Limited Report attached to the complaint (Dkt. 20, ¶¶ 60-73,) while Count Two (entitled "The Additional Pages of the Pitch") speculates that there are additional pages that contain defamatory statements about Mr. Chandler. (Dkt. 20, ¶¶ 74-88.) Plaintiff has been unable provide evidence that the additional pages exist or if they do, that they contain any defamatory statements.

-3-

decided Defendants' motion, this Court agreed. "Plaintiff pleads that Defendants are legally responsible for two libelous publications: (1) the 2003 publication of the Pitch that Defendants "privately sent" to Eringer and (2) the 2017 republication of the Pitch that Eringer sent to members of the British media." Dkt. 24 at 6. The Court of Appeals took the same view. "Chandler sued Berlin . . . for both his sale of the report to the client in 2003 and for that client's supplying the report to the media in 2017." *Chandler v. Berlin,* 998 F.3d 965, 967 (D.C. Cir. 2021).

When Plaintiff responded to Defendants' motion, he had every opportunity to develop evidence and present argument about whether there had been any other republications that Mr. Berlin reasonably expected. As the Court of Appeals noted, Mr. Berlin "declared under penalty of perjury that he did not authorize Eringer to disclose the report to **any third party,** let alone the British press in 2017." 998 F.3d at 976 (emphasis added.) (*See* Berlin Declaration, Dkt. 21-9.) In response, Plaintiff "never sought to depose Berlin or conduct other discovery to pin down what Berlin knew in 2003 about Eringer and his plans regarding the report." 998 F.3d at 976.[2]

The Court of Appeals, therefore, evaluated the only two publications alleged in the record before it – the 2003 private delivery of the Report to Mr. Eringer and the 2017 republication to the British press. It concluded: 1) that Plaintiff's claim for damages from the 2003 publication could go forward; and 2) that based on Plaintiff's failure to produce sufficient evidence that Mr. Berlin reasonably foresaw republication of his report, no claims arising out of any subsequent publications of the report were viable. "The question here . . . is whether Chandler has a timely

---

[2] This Court made the same observation. "Notably, Plaintiff did not file a Rule 56(d) declaration stating that he needed to take discovery on this issue, which presumably would have included a deposition of Berlin." Dkt. 24 at 6, n.3.

claim for the **initial harm** Berlin allegedly caused by his 2003 publication, **not for any harm caused by subsequent publications."** 998 F.3d at 975 (emphasis added.)

That holding, which established the law of the case, did not authorize Plaintiff on remand to present claims about the reasonable foreseeability of any other publications or republications not before the Court. Rather, the Court of Appeals limited Plaintiff's claim, allowing him to seek recovery only for the "initial harm" (if any) caused when Mr. Eringer received the report in 2003. Thus, the Court of Appeals barred any claim by Plaintiff arising out of any other publication or republication of the report. Plaintiff has failed to explain how his claims about subsequent publications to Prince Albert are consistent with that limitation.

Although this Court permitted Plaintiff to amend the complaint to allege republication of the Limited Report to Prince Albert, Plaintiff has not amended the complaint and, indeed, declined the opportunity to do so at the September 20th status conference. Consequently, the operative complaint that Defendants must defend continues to be the redacted complaint. (Dkt. 20.) Because the Court of Appeals has ruled that the only viable cause of action asserted in that complaint is the claim for the "initial harm" caused by the 2003 publication, we respectfully submit that this Court erroneously concluded that the redacted complaint, by itself, permits Plaintiff to claim damages from any alleged republication of the Limited Report. (Dkt. 103 at 5.) Furthermore, if Plaintiff now decides to amend the complaint in light of our argument, any such amendment would be too late. The sources of Plaintiff's argument that Mr. Eringer supposedly republished the Limited Report to the Prince are the Proposal and Mr. Eringer's deposition testimony. This Court already has ruled that Plaintiff was not diligent in seeking amendments based on those sources. (Dkt. 103 at 3-4.) Consequently, Rule 16(b) prohibits him from using them as the basis for any amendment.

## II. THE COURT APPEARS TO HAVE ACCEPTED SOME OF PLAINTIFF'S ALLEGATIONS AS UNDISPUTED, EVEN THOUGH THERE IS SIGNIFICANT CONTRARY EVIDENCE.

Defendants also ask the Court to reconsider or to clarify several statements in the Court's opinions that appear to say that some allegations in the complaint have been established. Those statements are:

1. "Eringer had prepared a dossier based on information from the Pitch. . . ." (Dkt. 102 at 1.)

2. "Eringer used [the Pitch] to create his own write-up regarding the Chandlers…." (Dkt. 102 at 3.)

3. "Eringer also apparently used the Pitch to publish other statements about Plaintiff . . . ." (Dkt. 102 at 3, n. 2.)

4. "Eringer's republication of the Pitch to his 'ultimate client,' Prince Albert." (Dkt. 102 at 12.)

5. "Plaintiff's Complaint includes allegations regarding a 2004 republication of information in the Pitch by Eringer to Prince Albert. . . . Discovery has borne out that such a republication occurred." (Dkt. 102 at 13.)

6. Defendants "cannot claim surprise now that discovery has borne out an alleged republication." Dkt. 103 at 5 (referring to Plaintiff's claim that "Eringer shared the Pitch with Prince Albert." (*Id.* at 4.)

These statements appear to hold that two of Plaintiff's allegations have been established as undisputed facts: (1) that Mr. Eringer gave Mr. Berlin's report to Prince Albert; and (2) that Mr. Eringer used Mr. Berlin's report as the source for his 2004 memorandum to the Prince. (Dkt. 20-6). Although those are two of Plaintiff's contentions, evidence in the record shows substantial disputes about both of them. Plaintiff never sought summary judgment on those issues and any holding that those facts are undisputed would be "outside the adversarial issues presented to the Court by the parties." (*Leach, supra,* 2023 WL 2645707 at *1.)  We therefore ask the Court to clarify that those contentions should not be taken as established facts at this stage of the case.

### A. Eringer Flatly Denied Republication of the Limited Report to Prince Albert.

Plaintiff's Statement of Material Facts Not in Dispute (Dkt. 88-1) does not claim as an undisputed fact that Mr. Eringer republished Mr. Berlin's report to Prince Albert. Mr. Eringer's testimony directly contradicts any such claim.

> Q. Did you give this document Exhibit No.1 [the Limited Report] to Prince Albert?
> A. No.

(Dkt. 80-4 at 7:5-7) (p. 249 of the transcript.)

Defendants included that testimony in Exhibit 4 to their Opposition to the motion for leave to amend, (Dkt. 80-4 at 7), and cited it in that Opposition, (Dkt. 80 at 20), as well as in their Sur-reply, (Dkt. 83-1 at 10, n.9), and their Memorandum in Opposition to Plaintiff's summary judgment motion. (Dkt. 94 at 24, n.10). We therefore request the Court clarify that whether or not Mr. Eringer gave the Limited Report to Prince Albert is a disputed issue of fact.

### B. Mr. Eringer Denied Mr. Berlin's Report was "the Source" for any Allegedly Defamatory Statement in Mr. Eringer's Report.

As with the alleged transmittal of Mr. Berlin's report to Prince Albert, Plaintiff's Statement of Material Facts Not in Dispute, (Dkt. 88-1), does not claim as an undisputed fact that Mr. Berlin's report was the source of Mr. Eringer's 2004 report to Prince Albert. Mr. Eringer's testimony also contradicts that assertion.

Mr. Eringer's report says "the substance" of his report came from "a report from special sources with a proven ability to access the Russian SVR's registry." (Dkt. 20-6 at 5.) Plaintiff alleges Mr. Berlin was that "special source" (Dkt. 20, ¶ 10,) but Mr. Eringer denied it without qualification. He identified the "special sources" as the "Oracle System," a group of retired CIA officers and sources in Russia with whom those officers remained in contact and testified that he

had the information about Mr. Chandler from Oracle before he asked Mr. Berlin to prepare the Limited Report. (Eringer Dep., Ex. 1, at 14:22-19:22; 40:5-43:3; 55:1-58:14.)

Mr. Eringer's report discusses information from a "dataveillant" about two addresses in Moscow for the Sovereign Group. (Dkt. 20-6 at 15.) Mr. Eringer testified that Mr. Berlin was the "dataveillant," not one of the "special sources," and that the addresses were the only information from Mr. Berlin that he used in compiling his own report. (Eringer Dep., Ex. 1, at 23:16-24:4; 39:9-43:3; 57:14-19.) Mr. Chandler's complaint in this case does not assert that he was defamed by Mr. Berlin's report about the Moscow addresses.

Because there is substantial evidence in the record refuting Plaintiff's claim that Mr. Berlin was a "special source" referred to in Mr. Eringer's report, and because Plaintiff did not contend Mr. Berlin's status as a "special source" was an undisputed fact, we request the Court clarify that whether or not Mr. Berlin was the source for Mr. Eringer's report is a disputed issue of fact.

### III. THE COURT MISINTERPRETED DEFENDANTS' ARGUMENT CONCERNING MR. ERINGER'S ALLEGED REQUEST FOR A FALSE REPORT.

Defendants sought summary judgment based on the complaint's allegations that Mr. Eringer hired Mr. Berlin to create a false report. We argued that, if those allegations were true, the Limited Report could not be defamatory because its audience (Mr. Eringer) would not have believed it communicated true information about Plaintiff. In denying summary judgment on this ground, the Court stated: "According to Defendants, because Eringer believed that the information in the Pitch was fabricated and thus false, . . . its statements were not capable of defaming Plaintiff." (Dkt. 102 at 5.) The Court noted there is a "genuine dispute of material fact as to whether Eringer understood the Pitch's allegations of criminal wrongdoing were false." (*Id.* at 6.)

-8-

Defendants respectfully request the Court to consider that it misunderstood their argument. Their motion did not argue that Mr. Eringer actually believed Mr. Berlin's report to be false; Defendants contended only that Plaintiff's complaint **alleged** Mr. Eringer asked Mr. Berlin for a fake report. Indeed, Defendants acknowledged that Mr. Eringer testified he believed statements in the report:

> Mr. Berlin reiterates that the complaint's allegation that he and Mr. Eringer agreed he would produce a phony report is completely false. Accordingly, it is not surprising that the record contains abundant evidence contradicting the complaint, including the deposition testimony from Mr. Eringer that Mr. Chandler cites. The point of this motion, however, is that any dispute about the truth of the complaint's allegations is immaterial. If Mr. Chandler proves his claim, he necessarily will prove that the Limited Report's only audience did not believe it and, therefore, that the report is not defamatory as a matter of law. On the other hand, if Mr. Chandler does not prove the only accusation of fault he has leveled against Mr. Berlin, he will have failed to prove a different essential element of his claim. Mr. Eringer's deposition testimony provides him no escape from this dilemma, and, therefore, does not create a disputed issue of material fact.

(Dkt. 94 at 20, citations and footnote omitted.)

*See also* Dkt. 86-2 at 13 ("Let there be no doubt. Mr. Berlin absolutely and unequivocally denies the charges that he intentionally produced a false report and that Mr. Eringer hired him to do so"); Dkt. 94 at 9 ("**Based on Plaintiff's fault allegations**, the Limited Report was not defamatory.") (Section heading; capitalization altered; emphasis added.)

Defendants filed a Rule 56 summary judgment motion because they supported their argument with documents outside the complaint. We used those documents primarily to refute any potential argument that the complaint did not actually allege a scheme by Mr. Eringer and Mr. Berlin to create a fake report. Thus, Defendants pointed to Mr. Chandler's response to an interrogatory asking for the factual basis for his attorneys' claim that Mr. Eringer hired Mr. Berlin

to create a false report. That response repeated, almost verbatim, the core allegations of the complaint, thereby confirming that the complaint alleged an intentionally deceptive scheme.[3] (Dkt. 94 at 10-11; Dkt. 20, ¶¶ 3-6.)

Because a statement is defamatory only if the audience reasonably believes it communicates actual facts about the plaintiff, Defendants argued that proof of Plaintiff's claim that Mr. Eringer wanted a false report also would show that giving the report to Mr. Eringer did not defame Plaintiff. If Plaintiff was correct about the scheme, then Mr. Eringer did not believe the Limited Report. In the alternative, Plaintiff's failure to prove the scheme would mean that he was unable to prove knowing deception by Mr. Berlin, which Defendants asserted was the only fault by Mr. Berlin alleged in the complaint. (Dkt. 86-2 at 12-15, citing *Khodorkovskaya v. Gay*, 5 F.4th 80 (D.C. Cir. 2021); *Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013); *Close It! Title Servs. v. Nadel,* 248 A.3d 132 (D.C. 2021).) Defendants' focus was the futility of Plaintiff's allegations of knowing falsehood, not whether Mr. Eringer in fact believed Mr. Berlin. (Dkt. 86-2 at 13; Dkt. 94 at 12-13) (arguing Plaintiff "pleaded himself out of court.")

Defendants recognize the Court's Order held that the complaint also states a claim that Mr. Berlin's preparation of the Limited Report was negligent. (Dkt. 102 at 8-10.) Although Defendants respectfully disagree with that ruling, this motion does not seek reconsideration of that decision. Instead, Defendants request the Court to grant partial summary judgment dismissing the complaint's claim that Mr. Eringer hired Mr. Berlin to prepare a false report. This will remove the claim of knowing falsehood from the case.

---

[3] Defendants also cited the statements of Plaintiff's attorney and of Legatum, Plaintiff's representative (discussed by the Court, (Dkt. 102 at 5-7,)) to show there was no dispute that Plaintiff alleged a fraudulent scheme in which Mr. Eringer knew he was receiving a false report.

## CONCLUSION

For the reasons stated above, Defendants respectfully request the Court to reconsider the Summary Judgment Order and the Amendment Orders and to hold:

1. Plaintiff may not seek damages for any republication of Mr. Berlin's report;

2. Whether Mr. Eringer gave the Mr. Berlin's report to Prince Albert is a disputed issue of fact;

3. Whether Mr. Berlin's report was the source of Mr. Eringer's subsequent publications is a disputed issue of fact;

4. Plaintiff's claim that Mr. Eringer and Mr. Berlin agreed that Mr. Berlin would write a false report is dismissed with prejudice.

October 3, 2023

Respectfully submitted,

*/s/ John P. Dean*

John P. Dean
D.C. Bar No.   362904
Steven M. Oster
D.C. Bar No. 376030

**OSTER McBRIDE PLLC**
1320 19th Street, N.W., Suite 601
Washington, D.C. 20036
(202) 596-5291 (p)
(202) 747-5862 (f)
soster@ostermcbride.com
johndean8@aol.com

*Counsel to Defendants*