# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER CHANDLER,    )
                            )
          *Plaintiff,*      )    **Case No. 1:18-cv-02136-APM**
                            )
            v.            )
                            )
DONALD BERLIN, *et al.*,    )
                            )
          *Defendants.*    )

## CHRISTOPHER CHANDLER'S SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT THAT HE IS A PRIVATE FIGURE

Megan L. Meier (DC Bar No. 985553)
Daniel P. Watkins (*pro hac vice*)
Mark Thomson (DC Bar No. 1048004)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 318-3655
Email: megan.meier@mwpp.com
Email: daniel.watkins@mwpp.com
Email: mark.thomson@mwpp.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION.............................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT...................................................................................................................... 3

   I.    The Public Controversies Berlin Has Identified Are Extraordinarily Broad.. 3

   II.   Chandler Never Came Close to Attaining "Special Prominence" in the
       Controversies Berlin Identified. ............................................................................ 4

     A.   Chandler almost never appeared in the news, let alone "thrust himself to the
          forefront" of any of Berlin's international, public controversies. .................... 5

     B.   This case is materially distinguishable from every case in which D.C. courts
          have deemed businesspeople public figures......................................................... 7

     C.   Berlin's purported evidence falls well short of meeting his burden. ............ 15

   III.   The Court Need Not Address Whether Berlin's Defamatory Statements Were
       Germane to Chandler's Participation in the Public Controversies Berlin Has
       Identified. ............................................................................................................ 21

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advantage Health Plan, Inc. v. Knight*,
  139 F. Supp. 2d 108 (D.D.C. 2001).................................................................. 20

*Ayala v. Washington*,
  679 A.2d 1057 (D.C. 1996) ........................................................................ 5, 16

*Bruno & Stillman, Inc v. Globe Newspaper Co.*,
  633 F.2d 583 (1st Cir. 1980)........................................................................... 3

*Clyburn v. News World Commc'ns, Inc.*,
  903 F.2d 29 (D.C. Cir. 1990) .......................................................................... 6

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967)....................................................................................... 18

*Dameron v. Wash. Mag., Inc.*,
  779 F.2d 736 (D.C. Cir. 1985).......................................................................... 5

*Deripaska v. Assoc. Press*,
  282 F. Supp. 3d 133 (D.D.C. 2017).............................................................. 12, 13

*Fells v. SEIU*,
  281 A.3d 572 (D.C. 2022) ................................................................................ 1

*Foretich v. Cap. Cities/ABC, Inc.*,
  37 F.3d 1541 (4th Cir. 1994) ........................................................................... 2

*Fridman v. Orbis Bus. Intel. Ltd.*,
  229 A.3d 494 (D.C. 2020) ........................................................ 2, 6, 10, 11, 13, 21

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)..................................................................................... 1, 5

*Gleklen v. Democratic Cong. Campaign Comm.*,
  199 F.3d 1365 (D.C. Cir. 2000)...................................................................... 19

*Greer v. Paulson*,
  505 F.3d 1306 (D.C. Cir. 2007)...................................................................... 19

*Hutchinson v. Proxmire,*
  443 U.S. 111 (1979) ........................................................................................ 14, 20

*Jankovic v. Int'l Crisis Grp.,*
  822 F.3d 576 (D.C. Cir. 2016) ................................................ 2, 3, 5, 6, 8, 13, 16, 21

*Lohrenz v. Donnelly,*
  350 F.3d 1272 (D.C. Cir. 2003) .................................................................... 5, 6

*McBride v. Merrell Dow & Pharms. Inc.,*
  717 F.2d 1460 (D.C. Cir. 1983) .................................................................... 1, 6

*Moss v. Stockard,*
  580 A.2d 1011 (D.C. 1990) .............................................................................. 21

*Pearce v. E.F. Hutton Grp., Inc.,*
  664 F. Supp. 1490 (D.D.C. 1987) .................................................. 13, 14, 15, 16, 20

*Salem Media Grp., Inc. v. Awan,*
  301 A.3d 633 (D.C. 2023) ........................................................................ 5, 6, 17

*Tavoulareas v. Piro,*
  817 F.2d 762 (D.C. Cir. 1987) ........................................... 2, 3, 6, 11, 12, 13, 15, 16

*Waldbaum v. Fairchild Publ'ns,*
  627 F.2d 1287 (D.C. Cir. 1980) ............................... 2, 3, 6, 9, 10, 13, 14, 15, 16, 18

*Wolston v. Readers Digest Ass'n, Inc.,*
  443 U.S. 157 (1979) ................................................................................ 5, 16, 20, 21

## Rules

Fed. R. Civ. P. 56(e) .............................................................................................. 19

Fed. R. Evid. 801 .................................................................................................. 20

## Other Authorities

1 R. Smolla, Law of Defamation § 2:35 (2d ed.) ...................................................... 5

Restatement (Second) Agency § 2 cmt. c (1958) .................................................... 20

## INTRODUCTION

In 2002, Robert Eringer paid Donald Berlin[1] to try to find dirt on Christopher Chandler. The next year, Berlin produced a report (the "Limited Report") that characterized Chandler as "elusive" and "mysterious."[2] Eringer, in turn, acknowledged that Chandler was "intensely private," and "extremely low-profile."[3] This litigation has borne out those descriptions. At summary judgment, Berlin failed to identify a single newspaper clipping that mentioned Chandler before Berlin defamed him. Not one.

Chandler is a private figure because, until Berlin's false and defamatory dossier made him a target of the British press a few years ago, almost no one knew he existed. Chandler never "placed himself in the public spotlight,"[4] never "achieved a 'special prominence' in [any public] debate,"[5] and never "thrust himself to the forefront of [any] public controvers[ies]."[6] He didn't give public speeches, testify before government, hold press conferences, make use of the media, publicly hobnob with celebrities, write or publish articles, or undertake activities that would attract the spotlight to him.

Because Chandler had no public presence when Berlin published his defamatory Limited Report, Berlin's quest to designate Chandler as a public figure has focused exclusively on Chandler's role as a principal at Sovereign Asset Management. But Chandler isn't Sovereign, and a person does not become a public figure simply by

---

[1] This brief uses "Berlin" as a shorthand to describe all of the defendants in this action.
[2] Dkt. 88-3 at 7.
[3] Dkt. 88-11 at 4.
[4] *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 338-39 (1974).
[5] *Fells v. SEIU*, 281 A.3d 572, 583 (D.C. 2022).
[6] *McBride v. Merrell Dow & Pharms. Inc.*, 717 F.2d 1460, 1466 (D.C. Cir. 1983).

occupying a prestigious position at a successful or even high-profile business.[7]  Besides, through summary judgment, Berlin failed to put forward any competent evidence that Sovereign itself achieved special prominence in a public controversy.

For those reasons, as elaborated below, this Court should hold that Chandler is a private figure, meaning he can recover in this action by showing that Berlin was negligent in publishing the Limited Report.

## LEGAL STANDARD

Whether a defamation plaintiff is a public figure is a highly fact-intensive inquiry that asks how a reasonable person would understand the totality of the facts. *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 505 (D.C. 2020); *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1292 (D.C. Cir. 1980).  Ultimately, though, it's a question of law for the court to decide. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016).

"The term 'public figure' can be broken down into two categories: general purpose public figures and limited-purpose public figures." *Fridman*, 229 A.3d at 504.  "A person becomes a general purpose public figure only if he or she is 'a well-known celebrity,' his name a household word.'" *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (internal quotation marks omitted).  No one—not even Berlin—contends that Chandler is, or ever has been, a general-purpose public figure.  (Dkt. 93 at 43-48.)

Thus, the only issue here is whether Chandler is a limited-purpose public figure. The law presumes he is not, and so Berlin bears the burden of proving otherwise. *See Foretich v. Cap. Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th Cir. 1994); *Bruno & Stillman, Inc v.*

---

[7] *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1299 (D.C. Cir. 1980).

*Globe Newspaper Co.*, 633 F.2d 583, 592 (1st Cir. 1980). To carry that burden, Berlin must: (1) identify a public controversy in existence when he made the defamatory statements; (2) show that Chandler attained "special prominence" in the public debate over that controversy; and (3) show that the defamatory statements were germane to Chandler's participation in that controversy. *Tavoulareas*, 817 F.2d at 772-73; *Waldbaum*, 627 F.2d at 1296-97.

## ARGUMENT

Berlin cannot carry his burden of showing that Chandler is a limited-purpose public figure because Chandler never attained anything approaching "special prominence" in the sweeping public controversies Berlin previously identified.

## I. The Public Controversies Berlin Has Identified Are Extraordinarily Broad.

At summary judgment, Berlin identified three "public controversies": (1) "corrupt corporate management and shareholders' rights in Russia"; (2) "struggles to control Gazprom and Novolipetsk Steel"; and (3) "reform of the Russian economy." (Dkt. 93 at 33.)

Berlin's broad framing of the relevant controversies is consequential because, "where a controversy is defined broadly, that is balanced by the next step [in the limited-purpose-public-figure analysis], which requires that courts determine whether the plaintiff 'thrust himself to the forefront of the public controversy at issue.'" *Jankovic*, 822 F.3d at 586. "A broad controversy will have more participants, but few can have the necessary impact" to qualify as public figures for purposes of that controversy. *Waldbaum*, 627 F.2d at 1297 n.27.

**II.    Chandler Never Came Close to Attaining "Special Prominence" in the Controversies Berlin Identified.**

At summary judgment, Berlin could not show that Chandler attained special prominence in any of the controversies Berlin identified.  He couldn't even point to a single news item mentioning Chandler at all.  That distinguishes this case from *every single case* in which a federal or state court in D.C. has found a plaintiff to be a public figure.

Nor could Berlin point to specific actions Chandler took to train the public's attention on him and thrust himself to the forefront of the controversies.  When courts in D.C. have found businesspeople to be limited-purpose public figures, they've unfailingly emphasized the many ways in which those businesspeople actively sought out public attention for themselves, not just their businesses.  Chandler, by contrast, spent a lifetime spurning the limelight.

That left Berlin to argue that Chandler is a public figure because he was one of the principals at a company that joined with other companies in using their status as shareholders to engage in anti-corruption and good-governance work in Russia in the 1990s and early 2000s.  That argument fails because, as a matter of law, Chandler is not his indirect business interests, and he is not automatically chargeable with their conduct.  What's more, Berlin doesn't even have competent evidence that Sovereign itself was especially prominent—in Russia or elsewhere—during the 1990s or early 2000s.  Try as he might, Berlin can't get past this second step of the limited-purpose-public-figure inquiry.

**A.    Chandler almost never appeared in the news, let alone "thrust himself to the forefront" of any of Berlin's international, public controversies.**

To qualify as a limited-purpose public figure, a plaintiff "must have achieved a 'special prominence' in the debate" over the relevant public controversy. *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 649 (D.C. 2023).   And, almost without exception,[8] the plaintiff must attain this "position in the limelight" through "'purposeful action of his own.'" *Lohrenz v. Donnelly*, 350 F.3d 1272, 1280 (D.C. Cir. 2003) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)).   He must "thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved,"[9] "invite attention and comment" from society,[10] "engage the public's attention in an attempt to influence [the] outcome" of a public dispute,[11] and "thrust himself into the vortex of th[e] public issue."[12]   Whichever way the inquiry is framed, courts consistently emphasize three things: (1) deliberate conduct by the plaintiff, (2) that purposefully or foreseeably calls attention to him, personally, (3) in a way that vaults him, not just into a corner of the public consciousness, but to the forefront of an ongoing, public debate.

---

[8] The D.C. Circuit once found that a plaintiff qualified as an "involuntary, limited-purpose public figure." *Dameron v. Wash. Mag., Inc.*, 779 F.2d 736, 737 (D.C. Cir. 1985).   It has never again done so.   The *Dameron* decision—and the entire notion of involuntary, limited-purpose public figures—has been roundly panned by courts and commentators. *See* 1 R. Smolla, Law of Defamation § 2:35 (2d ed.) (collecting authorities).   For present purposes, it suffices to note that Berlin has not argued that Chandler is an involuntary, limited-purpose public figure, and that any argument to that effect would fail for the same reasons Berlin's voluntary-limited-purpose-public-figure argument fails. *See Dameron*, 779 F.2d at 742 (plaintiff was an involuntary, public figure because his "name and likeness were often used" in reports about a plane crash).
[9] *Wolston v. Readers Digest Ass'n, Inc.*, 443 U.S. 157, 165 (1979).
[10] *Jankovic*, 822 F.3d at 585.
[11] *Ayala v. Washington*, 679 A.2d 1057, 1064 (D.C. 1996) (quoting *Gertz*, 418 U.S. at 352).
[12] *Gertz*, 418 U.S. 352.

D.C. courts have identified several types of deliberate conduct that can combine to create the requisite "special prominence." They include making speeches,[13] testifying at government hearings,[14] holding press conferences,[15] writing and publishing articles or mass mailings,[16] giving press interviews,[17] publicly hobnobbing with celebrities and powerful politicians,[18] regularly and continually utilizing access to the media or other effective channels of communication,[19] and undertaking some activity that was likely to draw the spotlight to the plaintiff, personally.[20]

Through summary judgment, Berlin identified no such evidence regarding Chandler. Berlin did not point to any evidence of speeches by Chandler, or government testimony, or press conferences, or articles or mass publications, or interviews, or reports of Chandler hobnobbing with celebrities or politicians, or a history of Chandler regularly using the media or other communication tools, or, in general, any other conduct that naturally called attention to Chandler, personally. Most telling of all, Berlin could not identify a single article even mentioning or alluding to Chandler. No D.C. court has *ever* held that a plaintiff was a public figure absent evidence that the press had reported on the plaintiff, personally, before the defamatory statements were made.

Berlin knew when he wrote the Limited Report that Chandler had no significant

---

[13] *Tavoulareas*, 817 F.2d at 774.
[14] *Id.*; *McBride*, 717 F.2d at 1466.
[15] *Waldbaum*, 627 F.2d at 1300.
[16] *Jankovic*, 822 F.3d at 587; *Tavoulareas*, 817 F.2d at 774.
[17] *Lohrenz*, 350 F.3d at 1278; *Fridman*, 229 A.3d at 509.
[18] *Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 33 (D.C. Cir. 1990).
[19] *Tavoulareas*, 817 F.2d at 774; *Salem Media*, 301 A.3d at 650.
[20] *Lohrenz*, 350 F.3d at 1281-82.

public profile, which is part of the reason he was forced to manufacture false and defamatory allegations out of nothing.  The Limited Report itself describes Chandler as "elusive" and "mysterious."  (Dkt. 88-3 at 7.)  And when, after receiving the Limited Report, Eringer prepared his own write-up on Chandler, it described Chandler as "intensely private," and "extremely low-profile."  (Dkt. 88-11 at 4.)

Berlin's summary-judgment filings failed to show that Chandler had *any* prominence in public controversies, let alone "special prominence."  And those filings also failed to show that Chandler involved himself publicly in *any* notable controversies, let alone that he thrust himself to the very "forefront" or "into the vortex" of such controversies.  After five years of litigation and more than a year of painstaking discovery involving hundreds of thousands of pages of documents, Berlin failed to point to a single news report showing that Chandler, himself, was a well-known participant in any of the public controversies Berlin identified.  This isn't just a case where the evidence narrowly fails to surmount the bar for public-figure status; the summary judgment record contained *no competent evidence whatsoever* that, before Berlin published his Limited Report, Chandler was a person of "special prominence."  This is fatal to Berlin's argument that Chandler is a public figure.

**B.    This case is materially distinguishable from every case in which D.C. courts have deemed businesspeople public figures.**

D.C. courts have, on a few occasions, addressed the circumstances under which a businessperson can qualify as a public figure.  Comparing the summary judgment record in this case with most of those only highlights the shortcomings in Berlin's contention that Chandler is a public figure.

**1.** *Jankovic* **is distinguishable because Chandler never published front-page articles about himself, never gave interviews to the press, and did not maintain a close relationship with a head of state.**

*Jankovic v. International Crisis Group*, 822 F.3d 576 (D.C. Cir. 2016), concerned allegations about Philip Zepter, the creator of an internationally successful cookware company. When the International Crisis Group wrote a report linking him to the regime of ousted Serbian president Slobodan Milosevic, Zepter sued for defamation. *Id.* at 582. In holding that Zepter was a public figure, the D.C. Circuit emphasized that Zepter, personally, had assumed an active and public role in Serbian politics. The court observed that Zepter:

- "was an outspoken supporter, financial backer, and advisor to [Serbia's new prime minister, Zoran Djindjic]," *id.* at 587;

- "paid over $100,000 to a lobbyist to support Prime Minister Djindjic's effort to improve relations between the United States and Serbia," *id.*;

- conducted numerous "interviews with members of the Balkan press," in which he acknowledged advising Djindjic and paying for the lobbyist, *id.*;

- wrote an open letter "to the Serbian people, entitled 'My Answer to Them,' which was published on the front pages of two Serbian newspapers," *id.*; and

- publicly announced his intention to "enter [the] political arena," declaring that he "w[ould] enter to win," *id.*

"It is little wonder," the court concluded, "that a prominent businessman's close ties to Prime Minister Djindjic achieved 'special prominence' in the debate about reform in Serbia." *Id.*

The only similarity between Zepter and Chandler is that they are both successful businessmen. Apart from that, the two could not be more different for purposes of the public-figure analysis. Berlin presented no evidence that Chandler engaged in anything

like the activities that led the D.C. Circuit to deem Zepter a public figure. There is no evidence in the record of Chandler personally and publicly advising foreign leaders, personally and publicly paying money to aid those leaders' lobbying efforts, giving interviews with the press about his political involvement, writing open letters that appeared on the front pages of major newspapers, or publicly announcing his intentions to enter politics. Zepter was a public figure because he made himself a noisy and prominent presence in national politics. If that's the bar for limited-purpose-public-figure status, Chandler is manifestly a private figure.

2. **_Waldbaum_ is distinguishable because Chandler didn't give interviews, hold press conferences, take actions that generated "considerable comment on him" in the press, or "become an activist" who projected his own image "far beyond" the business aspects of his company.**

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980), concerned Eric Waldbaum, the controversial president and CEO of Greenbelt Consumer Services, the second largest supermarket cooperative in the United States. "Waldbaum was known as a leading advocate of certain precedent-breaking policies" in the co-op industry, and, during his tenure at Greenbelt, he shaped "many of the cooperative's controversial actions." *Id.* at 1299-1300. In holding that Waldbaum was a public figure for purposes of an article critical of Greenbelt, the D.C. Circuit observed that he:

- took "actions [that] generated considerable comment on both Greenbelt and [himself] in trade journals and general-interest publications," *id.* at 1290;

- "held several meetings, to which press and public were invited," to publicly discuss his running of Greenbelt, *id.*;

- "had prior dealings with the media," including engaging with the media through press conferences, *id.* at 1300; and

- acted as editor of Greenbelt's monthly newspaper, "insist[ing] that he, as

president, approve all information placed in it for the shareholders," *id.* at 1299.

Through his high-profile and pathbreaking decisions, the D.C. Circuit concluded, Waldbaum "became an activist, projecting his own image and that of the cooperative far beyond the dollars and cents aspects of marketing." *Id.* at 1300. Chandler is not remotely close to that, which is why, at summary judgment, Berlin couldn't point to any evidence showing that the press had even mentioned Chandler, or that Chandler convened meetings so the press and public could hear his thoughts, or that Chandler had any dealings with the media, or that Chandler effectively ran a regular, widespread publication to disseminate his views. Waldbaum was a public figure because he was publicly recognized as a wave-making executive at the head of one of the largest and most visible ventures in the industry. That is not Chandler.

     **3.**    ***Fridman*** **is distinguishable because there aren't hundreds of pages of news articles discussing Chandler and his ties to notorious political leaders, and because Chandler hasn't given scores of personal interviews on a wide range of subjects.**

*Fridman v. Orbis Business Intelligence Ltd.*, 229 A.3d 494 (D.C. 2020), involved a trio of Russian oligarchs implicated in the so-called Steele Dossier. The D.C. Court of Appeals held that the oligarchs were public figures for purposes of the debate over Russian oligarchs' involvement with Russia's government and its global activities and relations. *Id.* at 508-09. Among other things, the court pointed out that:

- the plaintiffs' status as Russian oligarchs and their ties to Vladimir Putin had been discussed in "hundreds of pages of news articles" that were part of the record, *id.* at 508;

- "there were thousands of internet search hits for each appellant" that pre-dated publication of the Steele Dossier, *id.*;

- News articles "detail[ed] meetings each [plaintiff] ha[d] had with President

Putin," *id.*;

- The record contained numerous "personal interviews the [plaintiffs] ha[d] willingly given to the media … spann[ing] a wide range of subjects, from discussions of appellants' hobbies and interests to statements regarding their businesses and connections to the Kremlin," *id.*; and

- Plaintiffs and their business had been involved "in litigation [about their status as oligarchs] over a decade before [the Steele Dossier," which "show[ed] that they ha[d] been participating in a debate on the world's stage for quite some time," *id.*

The record from summary judgment contains nothing remotely close to that. Berlin did not point the court to any evidence of Chandler's public ties to a notorious world leader; didn't identify any internet search hits for Chandler pre-dating publication of the Limited Report; and didn't find any news coverage of or interviews with Chandler on any subject.

    **4.** ***Tavoulareas* is distinguishable because Chandler isn't the head of one of the largest and most prominent companies on earth, isn't the subject of hundreds of pages of news clippings, hasn't made speeches, testified to Congress, or written directly to an audience of more than a quarter-million people.**

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987), concerned statements about William Tavoulareas, the president and CEO of Mobil Oil—one of the largest companies in the world—and his role in the oil industry. The D.C. Circuit held that Tavoulareas was a limited-purpose public figure because he had spent years actively cultivating his status as a fixture in the news. *Id.* at 773-75. In reaching that conclusion, the court pointed to:

- a "500-page 'Public Figure Index'—a collection of news clippings and the like [about Tavoulareas]—attest[ing] to the undisputed fact that Tavoulareas was outspoken in defending the oil industry's performance, in blaming the oil crisis on government regulation and interference with the free market, and in advocating rejection of efforts to further regulate or alter the oil industry," *id.* at 773-74;

- the fact that Tavoulareas "made speeches, testified before Congress, published articles, and through Mobil's publicity apparatus enjoyed continuing access to the media," *id.* at 774; and

- the fact that Tavoulareas had written directly to Mobil's shareholders, "an audience of more than a quarter-million people, a group larger than the circulation of most daily newspapers," *id.* at 774-75.

The record in this case is the opposite of the record in *Tavoulareas*. There is no "500-page 'Public Figure Index'" about Chandler. At summary judgment, Berlin could not identify even a single press clipping mentioning Chandler. Nor is there any evidence that Chandler made speeches, testified to government bodies, published articles, engaged with the media, or wrote directly to an audience of more than a quarter-million people. For those reasons among others, *Tavoulareas* provides no support for Berlin's contention that Chandler is a public figure.

     **5.**     ***Deripaska*** **is distinguishable because there is no evidence Chandler was a world leader's "closest confidante," that he was the subject of many articles, or that he boasted to the reporters about his prominent association with the Russian government.**

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017) , concerned negative press coverage of Oleg Deripaska, another Russian oligarch. In holding that Deripaska was a public figure for purposes of debates about Russian oligarchs acting on behalf of the Russian government, this Court explained that:

- Deripaska was "no stranger to news coverage related to his role as a Russian oligarch and one of Putin's closest confidantes," *id.* at 142;

- There were "many articles cited that reference[d] Deripaska on" his "role in advancing Russian interests internationally," *id.*;

- Deripaska "[wa]s widely known as 'Putin's oligarch,' and ha[d] boasted to reporters: 'I don't separate myself from the state,'" *id.*; and

- "Deripaska ha[d] been the subject of more than a decade of media coverage on

topics related to his wealth and his relationship with the Russian government," *id.*

Again, the record from summary judgment is nothing like the record in *Deripaska*. It contained no evidence of any media coverage of Chandler, no articles referencing him in connection with Russia, and no publication indicating that he was "widely known" or publicly connected to a notorious international figure. Like *Jankovic*, *Waldbaum*, *Fridman*, and *Tavoulareas*, the *Deripaska* decision just shows how far away this case is from any of the ones where D.C. courts have deemed a businessman to be a public figure.

**6.** ***Pearce* is the D.C. case most closely analogous to this one, and the plaintiff-businessman there was deemed to be a private figure.**

*Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490 (D.D.C. 1987) , is the case most nearly on point to this one. The plaintiff there was John Pearce, who managed brokerage offices for E.F. Hutton Group. After E.F. Hutton Group pled guilty to fraud in a federal proceeding, it commissioned an independent probe, which resulted in a report naming Pearce as one of the individuals responsible for the fraud. *Id.* at 1493. Pearce sued for defamation, arguing that the report had falsely stated that he should have known his actions were illegal and violated the firm's policies and guidelines. *Id.* at 1494.

This Court had no problem concluding that Pearce's participation in the controversy over the fraud "was not such as would make him a limited-purpose public figure." *Id.* at 1507. His "role in the public debate [over the fraud] was negligible," the Court explained, and his name never came up in the public debate until the defamatory report issued. *Id.* While the report itself created a controversy about Pearce and caused him to become a more prominent figure, the Court correctly held that was irrelevant, because the controversy wouldn't have arisen but for the report's statements about

Pearce. *Id.* A defendant, the court reiterated, "cannot bootstrap himself into the protection of the actual malice standard by pointing to the controversy over the plaintiff that he himself created by his publication." *Id.* (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)).

The Court also emphatically rejected the defendants' argument that, because there was a public debate involving the offices Pearce managed, Pearce was necessarily a public figure. *Pearce*, 664 F. Supp. at 1507-08. As the Court explained:

> The fact that plaintiff managed those offices … does not mean plaintiff became the focus of attention. Mentioning the name of plaintiff's branch office is not the equivalent of broadcasting plaintiff's name. In another context, the D.C. Circuit Court noted that "[b]eing an executive within a prominent and influential company does not by itself make one a [limited-purpose] public figure."

*Id.* (quoting *Waldbaum*, 627 F.2d at 1299).

In all those respects, *Pearce* is on all-fours with this case. Just like in *Pearce*, there was no evidence in the summary judgment record here that Chandler's name came up in connection with any public controversy before the Limited Report. Just like in *Pearce*, it's irrelevant that the Limited Report subsequently stirred up public interest in Chandler. And, just like in *Pearce*, it's irrelevant whether businesses with which Chandler was affiliated were, themselves, participants in some public controversy. The bottom line in *Pearce* was that the "plaintiff was an anonymous figure until [issuance of the] Report." *Pearce*, 664 F. Supp. at 1508. Just so here, as Berlin's and Eringer's own statements make clear. (Dkt. 88-2 at 7; Dkt. 88-11 at 3.)

Chandler is unlike any of the businesspeople D.C. courts have deemed public figures. For that purpose, he is more like John Pearce. Indeed, Chandler's case for being

a private figure includes at least one favorable consideration that Pearce's did not: Chandler spent his life spurning public attention. (*See, e.g.*, Dkt. 88-2 at 7; Dkt. 88-11 at 3.) And it is well-established that, when a plaintiff affirmatively shuns the limelight, that is strong evidence he is a private figure. *Waldbaum*, 627 F.2d at 1294-95, 1298. The caselaw in D.C. regarding businesspeople thus confirms what is clear from a straightforward application of the relevant legal standards: Christopher Chandler is a quintessential private figure.

### C. Berlin's purported evidence falls well short of meeting his burden.

Because Chandler lacks the characteristics that can make a person a public figure, Berlin's entire public-figure argument at summary judgment rested on Chandler's association with Sovereign, a financial firm that invested in Russian companies in the 1990s and early 2000s and where Chandler and his brother used to be principals. The argument went something like: Even before Berlin published the Limited Report, people knew Chandler was a principal at Sovereign, and Sovereign was a prominent figure in the Russian economy in the 1990s and early 2000s.

That argument fails as a matter of law and fact. It fails as a matter of law because of the rule that a plaintiff does not become a public figure simply by being a principal at an important business. And it fails as a matter of fact because, at summary judgment, Berlin was unable to support it with any competent evidence.

### 1. It is legally irrelevant that Chandler was one of the principals at Sovereign.

"Being an executive within a prominent and influential company does not by itself make one a public figure." *Tavoulareas*, 817 F.2d at 773; *Waldbaum*, 627 F.2d at 1299. And

*Pearce* makes clear that, just because a plaintiff managed a business entity that became the focus of public attention "does not mean [the] plaintiff became the focus of attention." 664 F. Supp. at 1507. Even if there were record evidence of a publication mentioning Sovereign in connection with the controversies Berlin's identified, therefore, it wouldn't be the equivalent of publicly mentioning Chandler's name. *Id.* at 1507-08. There is no transitive property of public-figuredom.

It's true, of course, that a principal at a prominent business can be a public figure. Often, for instance, a principal at such a business ends up, personally, at the forefront of a public controversy because of his role in the business's public activities. *See Tavoulareas*, 817 F.2d at 773. But a principal who successfully stays out of the limelight (like Chandler) isn't a public figure just because his company makes waves.

By the same token, being the principal of a successful business typically increases a person's newsworthiness. But newsworthiness is not the same as public prominence, and the latter, not the former, is the touchstone for whether a plaintiff is a public figure. *See Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167-68 (1979); *Jankovic*, 822 F.3d at 585. If newsworthiness (or importance) sufficed to make someone a public figure, every executive at every influential company would be a public figure, and the D.C. Circuit has repeatedly affirmed that is not the case. *Tavoulareas*, 817 F.2d at 773; *Waldbaum*, 627 F.2d at 1299. Thus, even when, "[b]y virtue of his position, [a plaintiff] potentially affected a matter of public concern," he "cannot be considered a public figure" when he "did nothing to assume a public role regarding that concern." *Ayala v. Washington*, 679 A.2d 1057, 1064 (D.C. 1996). Chandler is not a public figure just because Sovereign did

laudable and important work.

Finally, being the principal of a successful business often means a person has extra access to media. But just "having some access to the media is insufficient. It is the 'regular and continuing access to the media that is one of the accoutrements of having become a public figure.' In other words, '[t]rivial or tangential participation is not enough.'" *Salem Media Grp., Inc.*, 301 A.3d at 649. The fact that Chandler could have called up a gaggle of reporters to share his thoughts on Sovereign or Russia does not mean he was a public figure, because public-figure status demands more than the mere potential for prominence. The plaintiff, personally, must have attained actual public prominence, and the record at summary judgment lacked any evidence that Chandler came anywhere near that until Berlin published his false and defamatory Limited Report.

2. **Berlin has produced zero competent evidence that Sovereign—to say nothing of Chandler—attained special prominence in debates about Russian business in the 1990s and 2000s.**

Even if the law countenanced Berlin's attempts to transform Chandler into a public figure merely by virtue of his connection to Sovereign (it does not), Berlin would still be grasping at straws. That's because, at summary judgment, he failed to identify any competent evidence showing that Sovereign, itself, was especially prominent in the 1990s and 2000s.

The only competent evidence Berlin produced bearing on Sovereign's public prominence in the 1990s and early 2000s were a handful of newspaper articles from the 1990s. Those articles cut against Berlin's case, though. They covered a few business controversies in which, according to Berlin, Sovereign played a central role. But not one

of the articles mentions Sovereign (let alone Chandler), even as they mention several other investment firms connected to the controversies they describe. The logical conclusion is that it was those *other* investment firms — not Sovereign — that were among the "few" participants in those controversies who had the "necessary impact" to qualify as public figures for purposes of the controversies. *See Waldbaum*, 627 F.2d at 1297 n.27.

Berlin's primary evidence of Sovereign's prominence in the 1990s and early 2000s was a promotional pamphlet that Chandler's brother wrote and published in 2020. One section of the pamphlet describes Sovereign's work in Russia in the 1990s and 2000s "to promote good corporate governance in challenging environments." (Dkt. 93-8 at 54.) The section then describes steps Sovereign took to improve corporate governance in Russia during that time, claiming that those steps garnered public attention. (*Id.* at 54-56.) The section mentions Chandler twice, once to note that he and his brother "were the principals of Sovereign Asset Management from 1986 to 2006," and once in a quote attributed to Jim Dannis, an executive at Salomon Brothers, which reads, "By taking principled and well-publicised positions regarding corporate governance at Novolipetsk Metal, the Chandlers advanced the level of dialogue and understanding regarding shareholder rights in Russia." (Dkt. 93-8 at 54-55.)

Neither the existence nor the contents of the pamphlet help Berlin. The pamphlet's existence shows only that, in 2020, people were writing publicly about Chandler, Sovereign, and Russia. But that's irrelevant to whether Chandler is a public figure for purposes of this litigation because the relevant question in a defamation action is whether the plaintiff was a public figure *at the time of the defamation*. *See Curtis Publ'g Co. v. Butts*,

388 U.S. 130, 154 (1967).  The pamphlet was published almost two decades after Berlin published the Limited Report, three years *after* publication of the Limited Report's false and defamatory contents embroiled both Chandler brothers in baseless public controversy.  The existence of the pamphlet does not show that people were writing about Chandler or Sovereign when Berlin first published the Limited Report in 2003.

The pamphlet's contents are also unhelpful to Berlin because he seeks to use them for their truth—for example, to prove that the Chandler brothers really did take "well-publicised positions" in Russia in the 1990s.  That makes the pamphlet's contents "sheer hearsay," which "'counts for nothing' on summary judgment."  *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Gleklen v. Democratic Cong. Campaign Comm.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)); Fed. R. Civ. P. 56(e).  Because the pamphlet's unsworn, untested, and unsubstantiated claims about Sovereign's public standing do not fit within any recognized exception to the hearsay rule, they are not competent evidence at this stage of the litigation.

The last piece of evidence Berlin identified at summary judgment to show that Sovereign attained special prominence by 2003 was an article published by Legatum Limited, which Chandler chairs, in 2018.  (Dkt. 93-11.)  The article details several consequential developments in Russia in the 1990s and early 2000s, attributing them, at least in part, to Sovereign.  Just like the 2020 pamphlet, though, the 2018 article does nothing to help Berlin's case.

First, the existence of the 2018 article is not proof that, in 2003, people were writing about Sovereign's work in Russia.  Legatum only published the 2018 article in response

to the onslaught of media coverage generated by Eringer's dissemination of the Limited Report.  Treating the 2018 article as evidence that Chandler is a public figure would thus be precisely the type of bootstrapping the Supreme Court and this Court have repeatedly denounced.  *Hutchinson*, 443 U.S. at 135; *Pearce*, 664 F. Supp. at 1507.  "[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."  *Hutchinson*, 443 U.S. at 135 (citing *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167-68 (1979)).

Second, the contents of the 2018 article are inadmissible hearsay.  Berlin argued that the contents of the 2018 article were admissible because, he claimed, Chandler "regards Legatum as his representative," such that the article is admissible under Rule 801(d)(2) of the Federal Rules of Evidence.  (Dkt. 93 at 42 n.19.)  That argument confuses the relationship between Chandler and Legatum.  Chandler is the chair of Legatum.  It is he who is Legatum's agent, not the other way around.  *See* Restatement (Second) Agency § 2 cmt. c (1958); *Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108, 111 (D.D.C. 2001).  As Berlin previously emphasized in this litigation, Chandler and Legatum are not the same thing.  (Dkt. 86-2 at 15-16.)  And Chandler, not Legatum, is the plaintiff in this action.  Consequently, the exception to the hearsay rule for statements by a party opponent doesn't apply to the 2018 article published by Legatum, and the article's contents are not competent evidence at summary judgment.

Even if the 2018 article were competent evidence at summary judgment, moreover, it never actually says anything about Sovereign's public profile in Russia (or elsewhere) in the 1990s and 2000s.  To be sure, it states that what Sovereign did was important and

even historic. As noted earlier, though, those aren't the same things as prominence, which is the touchstone for purposes of public-figure analysis. *See Wolston*, 443 U.S. at 167-68; *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016).

Berlin's entire public-figure argument in this case at summary judgment was that, because Sovereign was a prominent figure in debates about Russia's business sector in the 1990s and 2000s, Chandler must also have been. That argument fails as a matter of fact, since Berlin put forward no competent evidence showing that Sovereign was a prominent figure in such debates. And it fails as a matter of law since Chandler is not chargeable with Sovereign's public acts. Berlin has not identified ***any*** evidence showing that Chandler assumed "special prominence," in "the limelight," and "at the forefront" of any of the remarkably broad public controversies Berlin identified. His argument that Chandler is a public figure should be rejected for that reason.

## III. The Court Need Not Address Whether Berlin's Defamatory Statements Were Germane to Chandler's Participation in the Public Controversies Berlin Has Identified.

Only when the defendant can show that the plaintiff assumed a position of special prominence for purposes of influencing a preexisting public controversy should the court consider "whether the alleged defamation was germane to the plaintiff's participation in the controversy." *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 505 (D.C. 2020) (citing *Moss v. Stockard*, 580 A.2d 1011, 1031 (D.C. 1990)). Here, because Berlin failed to show that Chandler assumed a position of any prominence—let alone special prominence—in connection with any of the wide-ranging public controversies Berlin identified, there is no need for the Court to address whether Berlin's defamatory statements were germane

to Chandler's participation in those controversies.

## CONCLUSION

This Court should hold that Christopher Chandler is a private figure for purposes of this defamation action.

Dated: December 11, 2023

Respectfully Submitted,

*/s/ Mark Thomson*
Megan L. Meier (DC Bar No. 985553)
Daniel P. Watkins (*pro hac vice*)
Mark Thomson (DC Bar No. 1048004)
MEIER WATKINS PHILLIPS PUSCH LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 318-3655
Email: megan.meier@mwpp.com
Email: daniel.watkins@mwpp.com
Email: mark.thomson@mwpp.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of the Court and served upon counsel of record through the CM/ECF system

By: */s/ Mark Thomson*
Mark Thomson