# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER CHANDLER, )
)
    *Plaintiff*, )
)
v. )
) **Case No. 1:18-cv-02136-APM**
DONALD BERLIN, *et al.*, )
)
    *Defendants*. )
)
)

## PLAINTIFF'S SUPPLEMENTAL BRIEF
## REGARDING ERINGER'S REPUBLICATIONS INTELLIGENCE SERVICES

At Monday's pre-trial hearing, the Court invited supplemental briefing on whether the jury should hear evidence that Robert Eringer republished Defendants' false allegations of criminal wrongdoing to the CIA and the French intelligence service. Foreseeable republications are evidence of damages, such that a plaintiff need not foreseeable republications as separate counts or otherwise allege them specifically in a complaint. *See Pickford v. Talbott*, 225 U.S. 651, 655 (1912) (defendants' republication constitutes "a ground for allowing increased damages against them"); *Shepard v. Nabb*, 84 Md. App. 687, 700 (1990) (reaffirming rule that evidence of republication is admissible, among other reasons, "to establish additional damages from the circulation"); *Weaver v. Beneficial Fin. Co.*, 199 Va. 196, 201 (1957) ("evidence of a republication bears on the quantum of damages," even as it can also sometimes be grounds for a new cause of action).[1]

This rule makes sense: because would-be plaintiffs are often not in a position to know what private republications occurred until after they receive discovery, and because defamatory allegations

---

[1] *See also, e.g., McLoughlin v. Golf Course Superintendents Ass'n*, No. 85-cv-4499-R, 1991 WL 80177, at *2 (D. Kan. Apr. 8, 1991) ("The court believes [evidence of a foreseeable republication] is a matter of proof in establishing damages and not a claim which must be separately alleged."); *Bukky v. Seufer*, Ct. App. Case No. 7-182, 1980 WL 352155, at *2 (Ohio Ct. App. 1980) (admitting evidence of republication even though that particular instance of republication "was never raised in the pleadings").

1

may be foreseeably republished after a complaint has been filed, a rule requiring amendment of the complaint for every republication would require defamation plaintiffs to repeatedly and continually amend their complaint each time they learn of a new republication. In defamation cases where a false news story goes viral on social media, it would require plaintiffs to file complaints including millions of tweets, retweets, posts, and comments, and to continue amending their complaint every time the defendants' false allegations were foreseeably retweeted, reposted, or repeated in comments after the complaint was filed. Thankfully for courts, clerks, plaintiffs, and dockets across the country, that is not the law.

Here, Defendants argue that they have been unfairly surprised and cannot possibly defend against Eringer's republications of their false allegations because they do not know what damages Plaintiff seeks from those republications. In addition to the fact that the law does not require amendment of a complaint for every additional republication uncovered during discovery, *see supra*, this argument fails for three reasons.

***First***, Plaintiff does not know and will not testify about precisely how the CIA and French intelligence service viewed his reputation after Eringer repeated Defendants' false allegations of criminal wrongdoing to them. But because Defendants' false allegations are defamatory *per se*, the law—and common sense—***presumes*** that Plaintiff suffered reputational harm from those republications. *See Chandler v. Berlin*, 691 F. Supp. 3d 118, 128 (D.D.C. Sept. 5, 2023); *Chandler v. Berlin*, No. 18-CV-02136 (APM), 2024 WL 670385, at *1-4 (D.D.C. Jan. 10, 2024); *Carey v. Piphus*, 435 U.S. 247, 262 (1978); *US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 30 (D.D.C. 2022); *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019); *see also Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990); *Ingber v. Ross*, 479 A.2d 1256 (D.C. 1984).[2]

---

[2] *See also* W. Prosser, Handbook of the Law of Torts § 112, at 765 (4th ed. 1971) ("proof of actual damage will be impossible in a great many cases where, from the character of the defamatory words and the circumstances of publication, it is all but certain that serious harm has resulted in

2

***Second***, Defendants cannot credibly claim to be surprised by Eringer's republications of their false allegations of criminal wrongdoing against Plaintiff. Defendants had actual knowledge that their work was being completed for Eringer's "ultimate client." And months before this litigation was filed, in December 2017 and January 2018, Defendant Donald Berlin emailed his "friend" Eringer to ask if Eringer still had his file on the Chandlers and proposed ways for Eringer to "monetize" the file by selling it to a third party, and they discussed that over Signal as well. ECF 128-1 at 1. Eringer confirmed that he still had his file on the Chandlers. *Id*. Eringer's file included his documents republishing Defendants' false allegations of criminal wrongdoing to the CIA. *See* Ex. 1 (describing documents from Eringer's Chandler files reflecting exchange with Tyler Drumheller of the CIA). Yet, despite knowing that Eringer had his Chandler file and having recently communicated with him over email and Signal, Defendants did not produce Eringer's file and they intentionally withheld Eringer's contact information when they provided their initial disclosures, saying that Eringer's "address" was "unknown" and that his phone number would be "provided once confirmed." Ex. 3, Defs.' Sept. 9, 2021 Am. Initial Disclosures at 2. Throughout this litigation, Eringer coordinated with Berlin and the Defendants' counsel and joked with them about evading service of Plaintiff's subpoena—even sending them a photograph of him standing outside of Plaintiff's counsel's office. ECF 129-1. Defendants' counsel also prepared Eringer for his deposition and went to Eringer's house where he photographed pages from Eringer's file on the Chandlers. *Id.*; ECF 125-1 at 231:5-12, 236:13-23. In other words, Defendants had actual—or at least constructive—knowledge and possession of Eringer's republications long before Plaintiff did. There is nothing unfair about holding them to account for damages the republications caused.

---

fact"); F. Harper & F. James, The Law of Torts § 5.30, at 468 (1956) ("Libel and slander work their evil in ways that are invidious and subtle.").

***Third***, even if Defendants were somehow surprised by Eringer's deposition testimony that he had republished their false allegations to the CIA and the French intelligence service, Plaintiff's deposition testimony had ***already*** accounted for those then-unknown-to-him harms: the harm Plaintiff experienced because Berlin sent the report to Eringer included the humiliation from the harm of the "covert" actions being taken "behind [his] back," and having "this constant sense that, oh, okay, now people are going to treat me differently." Ex. 2, Chandler Dep. Tr. 25:17-26:14. To the extent that Defendants wanted details about Plaintiff's reaction to learning about Eringer's specific republications to the CIA and the French intelligence service, they could have asked to reopen his deposition. They chose not to.[3]

## CONCLUSION

In sum, Plaintiff is entitled to presumed damages for the foreseeable republication of allegations that are defamatory *per se*, and the law does not require endless amendments of a complaint to allege each republication that comes out in discovery, or that happens after a complaint is filed. The Defendants have had ample notice of Eringer's foreseeable republications and will not be prejudiced by having to defend them at trial. This Court should allow the jury to hear evidence of Eringer's republications of Defendants' false allegations of criminal wrongdoing to the CIA and the French intelligence service.

---

[3] Defendants likewise elected not to seek discovery from Prince Albert II because Mr. Chandler's damages in this case are deeply personal. This further demonstrates that Defendants made the strategic choice not to issue third party discovery requests and instead rely on argument from counsel and their cross examination of Plaintiff at trial.

4

Dated: July 3, 2024

Respectfully Submitted,

/s/ *Daniel P. Watkins*

Megan L. Meier
Daniel P. Watkins (*pro hac vice*)
Mark R. Thomson
Amy McCann Roller
Meier Watkins Phillips Pusch LLP
919 18th Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 318-3655
Email: megan.meier@mwpp.com
Email: daniel.watkins@mwpp.com
Email: mark.thomson@mwpp.com
Email: amr@mwpp.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed using the Court's CM/ECF system and thereby was served on all counsel of record.

July 3, 2024                                  /s/ *Daniel P. Watkins*

                                              Daniel P. Watkins (*pro hac vice*)